**FILED - GR**
October 11, 2022 3:56 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: KB   SCANNED BY: _KB/10-12_

**1:22-cv-748**
**Phillip J. Green**
U.S. Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| Lane Myers, | |
| Plaintiff, | **RESPONSE TO MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11** |
| v. | |
| Christopher Wren, Nicholas Smith, and Unknown Freriks, | |
| Defendants. | |

Defendants have filed a Motion for Sanctions under Fed. R. Civ. P. 11. The Motion should be denied because Defendants have not shown that this lawsuit is being presented for an improper purpose. To the contrary, this lawsuit alleges, among other claims, that Defendants have violated Plaintiff's First Amendment right to free speech by improperly enforcing an unconstitutional Park Ordinance against him. Defendants' refusal to acknowledge this and resolve this matter expeditiously, as Plaintiff has been attempting to do from the beginning, is what is needlessly occupying Court resources—not Plaintiff's meritorious lawsuit. Further, Plaintiff intends to amend his Complaint to add claims pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and a First Amendment retaliation claim.

### I.      Factual Background

This lawsuit arose because Ethan Wright was knowingly riding his motorized bicycle on the Dragon Trail in Newaygo County in clear violation of posted laws. Mr. Wright's unlawful and self-serving behavior caused him to collide with Plaintiff on the Dragon Trail. Upon standing up and walking past each other, Plaintiff realized Mr. Wright was in violation of the law and informed Mr. Wright as much. Mr. Wright began to discuss why he disagrees with the law making motorized bikes illegal. Plaintiff began recording the conversation.[1] At the end of the conversation Mr. Wright rode away on his motorized bicycle and called 911 alleging Plaintiff was chasing him and yelling at him. Plaintiff did neither. The evidence, including GPS data, heart rate data, the testimony of Mr. Wright himself on the police bodycam, and Mr. Wright's 911 call, shows that Plaintiff was 16 minutes behind Mr. Wright over a distance of 5 miles. Upon arriving at Sandy Beach Park, Plaintiff encountered Mr. Wright and Sgt. Freriks of the Newaygo County Sheriff. Plaintiff informed Sgt. Freriks of the video of his conversation with Mr. Wright and requested that he investigate to gather the facts. Sgt. Freriks told the Plaintiff he was free to go and was not required to provide his personal information because he was not accused of any crime or violations. Sgt. Freriks then spoke with Mr. Wright but not once during his investigation into why Mr. Wright called 911 did he ask a single question related to the Plaintiff or his alleged actions or interactions with Mr. Wright. This is visible on the police bodycam footage. Deputy Kalinowski, who was also on the scene, did not ask Mr. Wright about the allegations of Plaintiff chasing or threatening him, but spent 5 minutes calling Plaintiff a crazy lunatic, defaming Plaintiff, and invading Plaintiff's privacy. This is on the police bodycam footage. Then, based not on an investigation but on the deputies' bias against Plaintiff, and after Plaintiff declined to provide his personal information, the deputies unlawfully provided Plaintiff's personal

---

[1] Plaintiff has provided the video footage of the conversation to Defendants and their counsel and will be introducing it as evidence.

information to Defendant Smith and other Newaygo County officials. As the defense has acknowledged, Plaintiff was not detained, searched, or arrested because no crime occurred. Plaintiff was not accused of any unlawful behavior, or if he was, it was a violation of the unlawful Park Ordinance.

Plaintiff believes there is overwhelming objective evidence to support his claim and to disprove the defense's claims. Although the TRO was denied, Plaintiff believes the Court did not correctly interpret the facts alleged in it, and believes that upon further scrutiny the Court will find that his claims have merit. Defendants have had over 50 days to settle this case without court intervention.

Plaintiff notes that Defendants' version of the facts differs significantly from Plaintiff's version, and from the video footage, which is objective evidence. Defendants claim that Plaintiff chased Mr. Wright and yelled and swore at Ms. Bailey. However, the evidence shows that Plaintiff never chased[2] Mr. Wright. Plaintiff merely followed Mr. Wright down a one-way trail—there is no other way to exit the forest other than down the trail. Defendants appear to propose that Plaintiff should have, instead, struck out into the woods, off-trail, in order not to "chase" Mr. Wright. If traveling the same direction as someone down a one-way trail is "disruptive" conduct in violation of the Park Ordinance, then anyone who rides the Dragon Trail should be banned from Newaygo County Parks. Furthermore, the allegation that Plaintiff "chased" Mr. Wright is unsupported by evidence other than Mr. Wright's affidavit, which directly contradicts the other evidence in this case, including the recording of Mr. Wright's 911 call, Mr. Wright's statements to the police officers who were present, the video footage,

---

[2] Merriam-Webster defines "chasing" as "pursuit" or "the act of following quickly in order to capture or catch up with." Plaintiff never pursued or attempted to capture or catch up with Mr. Wright.

Plaintiff's heart rate and GPS data, the time at which Plaintiff arrived at Sandy Beach Park relative to Mr. Wright, and Plaintiff's affidavit. (Exhibit A)

The video footage further shows that Plaintiff never yelled or swore at Ms. Bailey. However, even if Plaintiff did use the word "fuck" in his statements regarding Mr. Wright, this language is not sufficient to violate the Park Ordinance, which in any event is unconstitutionally vague, overbroad, and restrictive of free speech, as discussed below. These factual discrepancies are sufficient to create material questions of fact that will survive summary judgment.

## II.    Procedural Background

Plaintiff filed a pro se Complaint on August 16, 2022 claiming violations of his First, Fourth, Fifth, and Fourteenth Amendment rights. (Doc. 1.) Plaintiff also filed a Motion for Temporary Restraining Order (TRO) and Preliminary Injunction. (Doc. 2.) The Court denied Plaintiff's Motion for TRO on August 22, 2022, finding that Plaintiff had not shown irreparable harm and that Plaintiff was unlikely to succeed on the merits of his claims. A Rule 16 Scheduling Conference is set for October 4, 2022. Defendants have not moved to dismiss this lawsuit.

## III.    Legal Standard for Rule 11 Sanctions

Fed. R. Civ. P. 11(b) provides that:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Fed. R. Civ. P. 11(c) provides for sanctions in the event of a violation of Rule 11(b), and states that, "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." "The sanction may include nonmonetary directives." Fed. R. Civ. P. 11(c)(4).

### IV.    <u>Rule 11 Sanctions are Not Warranted</u>

Defendants have failed to show that this lawsuit is being presented for an improper purpose. First, Plaintiff's communications to Defendants and other public officials in Newaygo County, as set forth in the Exhibits to Defendant's Motion, are all either (1) directly regarding this lawsuit and the merits of Plaintiff's claims or (2) involving other business that public officials and residents of Newaygo County are concerned with. The alleged "demands and threats" related to this litigation include "threats" to add additional Defendants and claims to this case and "threats" to attend a Parks and Recreation Committee meeting. These are not threats. These are communications with opposing counsel related to this case and attempts to expedite and streamline resolution of this dispute. Furthermore, Plaintiff is permitted to attend the Parks and Recreation Committee meeting pursuant to the Michigan Open Meetings Act, Act 267 of 1976.[3]

These communications with Defendants and their counsel are not evidence that Plaintiff's lawsuit lacks merit. To the contrary, Plaintiff initiated these communications because his lawsuit is meritorious, and Plaintiff believes that the County Defendants are wasting public resources by attempting to defend against it rather than settling his claims immediately. Since before initiating this lawsuit, Plaintiff has been attempting an out-of-court resolution of this matter. Defendants did not attach to their Motion Plaintiff's numerous communications with public officials

---

[3] The Act provides, in part, that "all persons must be permitted to attend any meeting except as otherwise provided in this act" and that "a person must not be excluded from a meeting otherwise open to the public except for a breach of the peach actually committed at the meeting."

attempting to resolve this matter prior to filing a lawsuit. What Defendants construe as "threats" have been Plaintiff's attempts to settle this matter without the Court's involvement. However, if Newaygo County officials are determined to enforce the Park Ordinance against him, he will continue to argue that it is unconstitutionally vague and overbroad in violation of the First Amendment as well as the other constitutional violations he asserts. (Exhibit B)

Nor have Plaintiff's numerous Facebook posts been an attempt to harass anyone. The Facebook posts attached to Defendants' Motion are posts on Plaintiff's own Facebook page. Are Defendants arguing that Plaintiff should be sanctioned because he is publishing materials related to this lawsuit—some of which are public records through this case in any event—on social media? Plaintiff is free to communicate with whomever he wishes about this lawsuit using his own Facebook page or any other channels of communication, and to suggest otherwise is ridiculous.

Defendants have shown no evidence, nor even argued, that any pleading or motion that Plaintiff has filed has been presented for an improper purpose. Defendants' arguments are limited to Plaintiff's communications with individuals outside the courtroom. Such communications do not provide a basis for Rule 11 sanctions. Plaintiff's position has been consistent both inside and outside the courtroom—he was illegally banned from Newaygo County Parks, and public officials continue to double down on their unlawful actions. There is no improper purpose or motivation behind the lawsuit. Plaintiff is simply calling out public officials for failing to act in the best interests of Newaygo County citizens, which he is well within his rights to do, regardless of the existence of this lawsuit.

Defendants admit that this lawsuit has merit when they state that they will no doubt incur "significant attorney's fees" to "address the legal issues in this court" if the Court does not

dismiss Plaintiff's claims. If Plaintiff's claims truly lacked merit, Defendants would not need to address any legal issues nor incur significant attorney's fees, because the case would conclude in short order. The Motion is an attempt by Defendants to avoid addressing the merits of Plaintiff's constitutional claims.

Even if the Court determines that sanctions are appropriate with respect to Plaintiff's communications with defendants and public officials outside of this lawsuit, an appropriate sanction would be to order Plaintiff to refrain from any such communications while this lawsuit is pending. Such a sanction would comply with Rule 11(c)'s directive that "a sanction imposed under this rule must be limited to what suffices to deter repetition of the [complained-of] conduct." Such a nonmonetary directive would accomplish Defendants' goal in seeking sanctions. Defendants have not articulated any basis for monetary sanctions because none exists.

### V. Plaintiff's Claims are Meritorious and Not Frivolous

Although a Rule 11 Motion is not the proper vehicle for arguing the legal merits of a claim, Plaintiff will briefly address Defendants' attacks on the merits of his claims herein.[4]

Defendants contend that Plaintiff's First Amendment claim challenging the Park Ordinance pursuant to which Plaintiff was banned from Newaygo County Parks lacks merit. The Ordinance is as follows:

No person shall:
(b) Engage in any violent, abusive, loud, boisterous, vulgar, lewd, wanton, obscene, or otherwise disorderly conduct tending to create a breach of the peace, or disturb or annoy others, while on any Commission property.
(c) Interact in a violent, abusive, loud, boisterous, vulgar, lewd, wanton, obscene, or otherwise disorderly manner towards Commission Staff, park customers, or other members of the public on Commission property.

---

[4] Plaintiff will not attempt to address the full merits of all of his claims in this Motion, as a Rule 11 Motion is not the proper procedural vehicle to do so. Should the Court desire further briefing of the merits of Plaintiff's claims in connection with this Motion, Plaintiff will provide such. Plaintiff intends to submit an Amended Complaint raising an additional First Amendment retaliation claim and *Monell* claims.

Defendants argue that the Ordinance does not violate the First Amendment because "a municipality enjoys considerable flexibility to establish laws governing personal conduct for the enjoyment of public places or restricting access to public areas." *See Embry v. City of Cloverport*, No. 3:02CV-560-H, 2004 WL 191613, at *2 (W.D. Ky. Jan. 22, 2004). Defendants further argue that this Ordinance "unquestionably passes intermediate scrutiny," as is required for content-neutral regulations on public fora. Defendants further argue that the government may protect public fora from "excessive noise." *See Ward v. Rock Against Racism*, 491 U.S. 789, 806 (1984).

"The state may [] enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983). For the following reasons, it is far from clear that the Ordinance is content-neutral, narrowly tailored, or that it leaves open ample alternative channels of communication.

First, the Ordinance is not content-neutral on its face. To the contrary, it prohibits "vulgar," "boisterous," "wanton," and "obscene" conduct and "interactions," which appears to be a prohibition of certain expression and conduct based on its content. Such prohibitions are not "content-neutral."

Nor is the Ordinance narrowly-tailored. It prohibits a broad range of "interaction" and conduct, including that which is "loud" or "boisterous." Defendants have not explained how prohibiting loud or boisterous behavior or expression is narrowly-tailored to serve a significant government interest, because they cannot. People play music, gather with friends and family, throw parties, and play games in the park. Some of these activities must, by necessity, include

conduct, expression, or interactions that could be defined as "loud" or "boisterous." The Ordinance also prohibits conduct that would tend to "disturb or annoy others" but does not define what that standard is. *See Leonard v. Robinson*, 477 F.3d 347 (2007) (statute defining "disorderly person" violated free speech guarantee, prohibition against cursing violated free speech rights, and prohibition against "disturbance or contention" was overly broad as applied to speech); *see also See Sandul v. Larion*, 119 F.3d 1250 (1997) (the only type of language denied First Amendment protection is "fighting words" and free speech may best serve its purpose by inviting dispute, inducing unrest, or even stirring people to anger). No one has alleged that Plaintiff was "excessively noisy," nor does the Ordinance explicitly ban excessive noise. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984) (referring to case that upheld ordinance prohibiting "loud and raucous sound trucks" based on governmental interest in protecting citizens from "unwelcome noise"); *Rock Against Racism*, 491 U.S. at 796 (repeated complaints of excessive noise justified restriction on musical performance and did not violate free speech).

Lastly, the Ordinance clearly does not leave open ample alternative channels of communication, as evidenced by its enforcement against Plaintiff. If Plaintiff's communications with Mr. Wright about the prohibition against electronic bicycles on the Dragon Trail violates the Ordinance, then how shall anyone communicate with individuals who violate the prohibition against electronic bicycles? If the Ordinance requires a certain tone of voice or word choice, it clearly violates the First Amendment. The evidence shows that Plaintiff and Mr. Wright were two adults on a bike trail engaged in a civil, consensual conversation in which Mr. Wright voluntarily participated. Mr. Wright could have ridden away at any time. Instead, he chose to remain and speak with Plaintiff, and to debate the merits of the prohibition against electronic

bicycles, as the video shows. If Plaintiff violated the Ordinance during that interaction, the Ordinance does not leave open ample alternative channels of communication. In fact, no one thus far has articulated exactly how Plaintiff violated the Ordinance, and that is because any attempt to do so will reveal that (1) Plaintiff did nothing to violate the Ordinance and it has been impermissibly enforced against him in retaliation for his protected speech and (2) the Ordinance is unconstitutional on its face and as applied.

The case relied upon by Defendants and this Court, *Embry v. City of Cloverport*, No. 3:02CV-560-H, 2004 WL 191613 (W.D. Ky. Jan. 22, 2004), supports Plaintiff's position. In that case, the court overruled an ordinance that established a curfew for individuals to use Cloverport's public areas. The court in that case stated that "the right of intrastate travel is a fundamental one" and therefore restrictions "must be narrowly tailored to achieve a compelling goal." *Id*. at *2. The court found the ordinance overly broad because it prohibited conduct that was "neither criminal nor disruptive," and provided examples of alternative ordinances that could be established instead, which would be "more acceptable because they do not broadly proscribe or threaten to proscribe legitimate activity." *Id*. at *3. The court further described the ordinance as "so broad and vague that an ordinary citizen could never quite know what reason for wandering about town law enforcement officials might accept" and found that the City had never "established any consistent guidelines" for enforcement of the Ordinance. *Id*. at *4. This analysis applies perfectly to the Ordinance at issue here. The Ordinance Plaintiff has allegedly violated could be enforced to prohibit conduct that is neither criminal nor disruptive, such as music or boat motors, or even heated conversations. The Ordinance threatens to proscribe legitimate activity, such as communicating with other park users about park rules, which could certainly "disturb or annoy" the individual who was violating the park rules, as occurred here.

Furthermore, Defendants have not shown that they have established any consistent guidelines for enforcement of the Ordinance, and it appears that enforcement is entirely arbitrary. The arbitrary nature of the enforcement is further supported by the absence of any process for appealing a determination that one has violated the Ordinance. (Exhibit C)

For an Ordinance to not be found unconstitutionally overbroad and vague, it must "(1) define the offense with sufficient clarity such that an ordinary person would understand what conduct is prohibited and (2) establish standards that allow non-arbitrary enforcement." *Embry*, 2004 WL 191613, at *4 (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The Ordinance does neither. It does not define the stated offenses with sufficient clarity such that an ordinary person could understand what conduct is prohibited. For example, what constitutes "loud" conduct? Is there a certain decibel level above which an individual violates the Ordinance? If so, an individual who revs her boat motor on Hardy Pond likely violates the Ordinance. Is "boisterous" conduct such as playing games prohibited? And what constitutes "vulgar" conduct or interactions? An ordinary person has no notice as to what conduct is permissible under the Ordinance, and therefore has no way to modify or adjust their behavior to comply with it. Likewise, the Ordinance does not establish standards that allow non-arbitrary enforcement. Conduct that "tends to disturb or annoy" someone may, to someone else, be perfectly acceptable. This is the case here, where Plaintiff's communications to Mr. Wright were solely regarding Mr. Wright's use of an electronic bicycle on the Dragon Trail. If Plaintiff's communication with Mr. Wright regarding his use of a prohibited electronic bicycle on the Dragon Trail would tend to "disturb or annoy" Mr. Wright, and thus would violate the Ordinance, then how should one go about communicating to a trail user that his conduct of riding a prohibited electronic bicycle is endangering other trail users and destroying the trail? If Plaintiff does not stand up for the ability

of trail users to ride the trail free from the threat of electronic bicycles—which are prohibited for a reason, including that they endanger riders on non-motorized bicycles—then who will? Defendants' ill-considered Motion shows that they have not thought through the merits and implications of Plaintiff's claims.

This is the irony of Defendants' position in this case—Plaintiff's "conduct" and "interactions" that led to improper enforcement of the unconstitutional Ordinance against him was Plaintiff's attempt to preserve public safety and communicate with other trail users about rules that are specifically designed to maintain public safety on the Dragon Trail. (Exhibit D). For this, Plaintiff has been labeled a "crazy lunatic." Mr. Wright literally knocked Plaintiff off his bicycle by coming around a corner on the Dragon Trail at an uncontrolled speed—which is precisely why electronic bicycles are prohibited. Were Plaintiff a smaller person the collision could have physically harmed him. It is unsurprising that Plaintiff was, in fact, disturbed and annoyed by Mr. Wright's use of an electronic bicycle and his refusal to acknowledge that electronic bicycles are prohibited. When Plaintiff admonished Mr. Wright for riding an e-bike, Mr. Wright attempted to explain why e-bikes are not that bad and should be allowed—despite the clear signage indicating that they are prohibited.

Defendants appear to be prioritizing Mr. Wright's emotionally-driven reaction to Plaintiff's clear and direct communications[5] regarding the rule against e-bikes, over the actual public safety threat posed by Mr. Wright's decision to ride an e-bike. Unlike the Ordinance at issue here, the rule against e-bikes is objective and clearly enforceable based on non-arbitrary standards. Safe use of the Dragon Trail, in compliance with applicable rules, benefits all trail users. (Exhibit E)

---

[5] Even if some of Plaintiff's communications with Mr. Wright could be characterized as confrontational, neither the law nor the public interest supports a prohibition against an individual verbally confronting another individual regarding obviously unlawful behavior.

This Court should not be swayed by the warped perspective that Defendants bring to this case, likely as a result of Mr. Wright's disingenuous and unsupported Affidavit and his emotional reaction to what, from Plaintiff's perspective, was a reasonable and civil discourse regarding trail rules. What has actually happened is that Plaintiff—who had no ability, or duty, to restrict or monitor his communications with Mr. Wright in accordance with the Ordinance, due to the Ordinance being unconstitutionally vague, overbroad, and restrictive of free speech—is being improperly punished because Mr. Wright, who violated a Park rule in a manner that placed other trail users in physical danger, claims to be a victim. Plaintiff was acting in the public interest and prioritizing the safety of trail users when he communicated to Mr. Wright that e-bikes are not allowed and engaged Mr. Wright in a conversation about the reasons why. Banning Plaintiff from the Dragon Trail has the effect of undermining public safety on the trail, not supporting it. Defendants now act against the public interest by continuing to assert that Mr. Wright did nothing wrong, and that Plaintiff was in the wrong. As this Court is well aware, "emotional safety" cannot, and should not, take precedence over physical safety.

It is unsurprising that Plaintiff is frustrated by these misguided perspectives of his actions. If citizens are prohibited from communicating with other members of the public regarding rules that are designed for the safety and well-being of all users of outdoor recreation areas, such areas will quickly become even more chaotic and dangerous than they already are. Plaintiff's communications to Mr. Wright served to reinforce order and safety on the Dragon Trail, not undermine it. The public is harmed, not benefitted, by Plaintiff's removal from Newaygo County Parks. It was Mr. Wright who should have received a citation for violating a Rule in a manner that placed other members of the public, including Plaintiff, in physical danger. Plaintiff has attempted to communicate these obvious conclusions to Defendants prior to filing

this lawsuit, to no avail. Now Plaintiff has been forced to bring this lawsuit to reinstate his ability to use the Dragon Trail, which should never have been taken from him in the first place, because he did nothing other than exercise his right to free speech. Defendants should immediately restore Plaintiff's ability to access Newaygo County Parks and the Dragon Trail.

In conclusion, Plaintiff has not violated Rule 11, sanctions are unwarranted, and the Court should deny Defendants' Motion.

Respectfully submitted,

Lane Myers

Dated Oct 11th ,2022          By: _____

Lane Myers (Pro Se)

1583 Grange Rd

Trenton, Michigan 48183