UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LANE MYERS<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER WREN, NICHOLAS SMITH and UNKNOWN FRERIKS,<br><br>    Defendants. | Case No: 1:22-cv-00748<br><br>Hon. Paul L. Maloney<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**\*Oral Argument Requested\*** |

| | |
|---|---|
| Lane Myers<br>Pro Se<br>1583 Grange Rd<br>Trenton, MI 48183<br>(313) 587-1880 | Michael D. Homier (P60318)<br>Leslie A. Dickinson (P78850)<br>FOSTER, SWIFT, COLLINS & SMITH, P.C.<br>Attorneys for Defendants<br>1700 E. Beltline Ave NE, Suite 200<br>Grand Rapids, MI 49525<br>(616) 726-2200 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

    This lawsuit arose because Plaintiff verbally harassed, yelled at, and chased down another park visitor, Ethan Wright, for riding an electric mountain bike on a public park trail in Newaygo County (the "County"). Admittedly, Mr. Wright probably should not have been riding an electric mountain bike on the trail. But the real concern was Plaintiff's over-the-top, menacing, and irrational conduct. As a result of his actions, the County Parks Department prohibited Plaintiff from entering county park property. Like his ambush of Mr. Wright, it is now abundantly clear from Plaintiff's behavior over the last several months that Plaintiff's sole goal of filing this

1

lawsuit is to harass and berate County employees and force the County to waste taxpayer dollars in defense of this frivolous lawsuit. Plaintiff has hounded County employees (including those not a party to this lawsuit), officials, and its attorneys and their staff with dozens of text messages, emails, and social media posts/comments with threats, demands, and other nonsensical messages in a clear effort to harass and intimidate the County and its employees and officials. As the Court has already identified in its Order denying Plaintiff's motion for a temporary restraining order (ECF No. 7), Plaintiff's claims are meritless, and preliminary injunctive relief is not warranted.

## FACTUAL BACKGROUND

**I.      Plaintiff's Ban from the County Parks.**

On August 5, 2022, Ethan Wright was riding his electric mountain bike on the Dragon Trail (Michigan's Dragon at Hardy Dam) on County Park property. (**Exhibit A**, Affidavit of Ethan Wright). He was approached by Plaintiff, also riding a bike, who yelled at Mr. Wright that e-bikes were not allowed on the trail. Out in the woods on the trail and all alone, Mr. Wright was taken aback by Plaintiff's hostility over a relatively minor matter. Concerned for his safety, Mr. Wright decided to ride down the trail to get away from Plaintiff.  Plaintiff proceeded to chase Mr. Wright for over 5 miles on the trail while continuing to berate him, to the point that Mr. Wright called the police. Id. Mr. Wright arrived at the Sandy Beach County Park office, afraid, upset, and in tears, and informed Park Manager Theresa Bailey that he was being chased and that he had called the police. Id. Ms. Bailey contacted Defendant Parks Director Nicholas Smith and informed him of the incident. (**Exhibit B**, Statement of Ms. Bailey). While waiting for police to arrive, Plaintiff came to the park office and began yelling and swearing at the park manager and Mr. Wright. He told Ms. Bailey "that fucking idiot [Mr. Wright] on the fucking e bike needs a ticket now" and that he should "stay the fuck off of our trail." (Exhibit B). Sheriff Deputies Kalinowski and Defendant Freriks arrived on the scene and deescalated the situation. (**Exhibit**

**C**, Incident Report). At the time, Plaintiff refused to provide his name to the deputies for a report and said to them "I don't have to give you anything."

Later that day, Director Smith contacted Plaintiff by phone and explained that he was in violation of the Newaygo County Parks Ordinance (the "Ordinance") section 18 and, given the situation, informed him that he could not enter any park or park property owned or operated by the County. (Exhibit C). Director Smith wrote a formal trespass warning letter, which was sent to Park Manager Bailey, the County Sheriff's Office, the County Prosecutor's office and Plaintiff on August 8, 2022. (**Exhibit D**).

Plaintiff filed his Complaint on August 16, 2022. Defendants include Sheriff Deputy Freriks, Park Director Smith and the County's Administrator Christopher Wren. Plaintiff's Complaint appears to contain four counts of alleged violations of the First, Fourth, Fifth and Fourteenth Amendments and claims under 42 USC § 1983. (ECF No. 1). Plaintiff has filed a Motion to Amend that Complaint to add dozens of other defendants (at least one of whom is deceased) and various other nonsensical claims, including a claim for $205,000,000 in compensatory and punitive damages. (ECF No. 37). Defendants' objection to Plaintiff's Motion is forthcoming.

**II.     Plaintiff's Harassment of the County.**

Since September 16, 2022, Plaintiff has sent hundreds of text messages, emails, and social media posts/comments/messages personally to various County employees and officials as well as the County's attorney and its staff, and to Mr. Wright (a potential witness in this case), with various nonsensical and inflammatory messages, demands and threats related (and unrelated) to this litigation and the incident. (See ECF Nos. 27 and 28)(See also, **Exhibit E**, Messages since October 24, 2022). Based on Plaintiff's abusive and completely irrational conduct, Defendants have filed a Motion for Rule 11 Sanctions against Plaintiff. (ECFs No. 26-28).

## ARGUMENT

**I.        Standard of Review.**

The decision whether to award preliminary injunctive relief is governed by a four-part standard, under which the Court must consider: (i) whether Plaintiff, as the moving party, has a strong likelihood of success on the merits, (ii) whether he would suffer irreparable injury in the absence of injunctive relief, (iii) whether an award of preliminary injunctive relief would cause substantial harm to others, and (iv) whether the public interest would be served by the requested award. *Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026, 1030 (6th Cir.1995). These four considerations "are factors to be balanced and not prerequisites that must be satisfied," and "are not meant to be rigid and unbending requirements." *American Imaging Services, Inc. v. Eagle–Picher Industries, Inc. (In re Eagle–Picher Industries, Inc.),* 963 F.2d 855, 859 (6th Cir.1992). "Moreover, a district court is not required to make specific findings concerning each of the four factors ... if fewer factors are dispositive of the issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir.2003). All of these factors weigh in favor of denying Plaintiff's motion for a preliminary injunction

**II.       Plaintiff does not have a strong likelihood of success on the merits.**

For these Defendants to be liable under 42 U.S.C. § 1983, Plaintiff must prove that an official custom or policy caused a violation of their constitutional rights. *Monell v. Dept of Soc Svcs,* 436 U.S. 658, 694 (1978). No County policy or custom deprived Plaintiff of any constitutional right. Further, as the Court has already held in denying Plaintiff's Motion for a TRO, when reviewing the pleadings and facts in a light most favorable to the Plaintiff, "Plaintiff has failed to show that Defendants violated any of his civil or constitutional rights." Despite the Plaintiff's rantings, the facts have not and will not change.

A.      **No First Amendment Claim**

Plaintiff broadly asserts that Defendants have violated his rights to free speech, assembly, and access to public lands by enforcing the Ordinance which permits the County to exclude people from park property for violations such as engaging in abusive, loud, vulgar, or other disorderly conduct tending to create a breach of peace, or disturb or annoy others while on park property.  (ECF No. 1, Complaint)(**Exhibit F**, Ordinance).  Generally speaking, a municipality enjoys considerable flexibility to establish laws governing personal conduct for the enjoyment of public places or restricting access to public areas." *Embry v. City of Cloverport*, No. 3:02CV-560-H, 2004 WL 191613, at *2 (W.D. Ky. Jan. 22, 2004)(**Exhibit G**). Moreover, the right to access public fora is not unlimited. *See Lutz v. City of York*, 899 F.2d 255, 269 (3d Cir. 1990) ("Unlimited access to public fora or roadways would not result in maximizing individuals' opportunity to engage in protected activity, but chaos."). Put simply, Plaintiff does not have an unlimited right to access Newaygo County Parks.

With respect to his argument that Defendants have violated his right to free speech by prohibiting him from using the County parks under the Ordinance, in cases where the state enforces content-neutral regulations to public fora, the regulation must pass intermediate scrutiny. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) ("The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.") U.S. Const. Amend. 1. The relevant section of the Ordinance (section 18) states as follows:

> SECTION 18: PERSONAL CONDUCT
> No Person Shall:
>
> b) Engage in any violent, abusive, loud, boisterous, vulgar, lewd, wanton, obscene, or otherwise, disorderly conduct tending to create a breach of the peace, or disturb or annoy others, while on any Commission property.
>
> c) Interact in a violent, abusive, loud, boisterous, vulgar, lewd, wanton, obscene, or otherwise disorderly manner towards Commission Staff, park customers, or other members of the public on Commission property.

The Ordinance unquestionably passes intermediate scrutiny. Section 18 is narrowly tailored to serve a significant governmental interest. The Supreme Court has held that conserving public park property and ensuring that parks are adequately protected so that the public may enjoy them is a significant governmental interest. *Clark v. Community for Creative Non-Violence et al,* 468 U.S. 288, 296 (1984). Similarly, the government "ha[s] a substantial interest in protecting its citizens from unwelcome noise", such as yelling and obscenities. *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984). "[T]he government may act to protect even such traditional public forums as city streets and parks from excessive noise." *Ward v Rock Against Racism,* 491 U.S. 781, 796 (1989)("The city enjoys a substantial interest in ensuring the ability of its citizens to enjoy whatever benefits the city parks have to offer"). Id at 797. Further the Ordinance leaves open adequate alternative channels of communication. The Ordinance continues to permit expressive activity in the park, and has no effect on the quantity or content of that expression beyond regulating the extent and manner of the expression. *See e.g. Id.* at 802. Plaintiff has not made (and cannot make) any showing that remaining avenues of communication are inadequate, particularly with the number of appearances by Plaintiff at both County buildings and County Commission meetings[1], where on at least one occasion, he showed up with signage that stated "Fuck Christopher Wren," directed at the County's Administrator and a Defendant in this case:

---

[1] Plaintiff wears a recording device on his chest during these visits and regularly posts recordings of his harassing interactions on his YouTube channel: https://www.youtube.com/channel/UC5PefqwHTUGfn4M392xAsAQ



Accordingly, Plaintiff's First Amendment Claim lacks merit.

**B.     No Fourth Amendment Claim**

The Fourth Amendment prohibits unreasonable searches and seizures by government actors. U.S. Const. Amend. 4. For purposes of Fourth Amendment analysis, a search occurs when the government infringes upon an expectation of privacy that society is prepared to consider objectively reasonable. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A "seizure" of property occurs for Fourth Amendment purposes when there is some meaningful interference with an individual's possessory interests in that property. *United States v. Jacobsen*,

466 U.S. 109 (1984). Such searches and seizures must also be "unreasonable" considering the surrounding circumstances in order to violate the Fourth Amendment. *Id*.

In this case, there was no search or seizure, let alone an unreasonable one. Plaintiff was never detained, arrested or searched. He was in a public park and had no expectation of privacy. To the extent he is claiming that his access to the public park constitutes a "seizure", he has no possessory interests in the public park. Without a possessory interest, Plaintiff has no Fourth Amendment claim. *Blake v. Wright,* 179 F.3d 1003, 1007-1008 (6th Cir. 1989). Accordingly, his Fourth Amendment claim is meritless.

C.   **No Fifth Amendment Claim**

The Fifth Amendment applies to the federal government, not state or local governments such as the County. *Scott v. Clay County, Tenn.,* 205 F.3d 867, 873 n. 8 (6th Cir. 2000). Accordingly, Plaintiff has no Fifth Amendment rights as to the County or its employees and officials.

D.   **No Fourteenth Amendment Claim**

Plaintiff's Fourteenth Amendment claim seems to allege that he has been banned from County Parks without due process. While the Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property without due process of the law, such protected property interests "'are not by the Constitution. Rather, they are created, and their dimensions are defined by, an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 565 (1975) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). In order to be entitled to procedural due process protections, Plaintiff must prove that the benefit he is allegedly being deprived of— access to the Newaygo County Parks—is a property interest created by state law. To have a property interest in something, as required to allege a violation of the Due Process Clause of the Fourteenth Amendment based on its deprivation, a person clearly must have more than an abstract need or desire for it, and he must

have more than a unilateral expectation of it; he must, instead, have a legitimate claim of entitlement to it. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

Plaintiff does not have a protected property interest in using Newaygo County Parks. There is no Michigan state law creating a protected property interest in accessing county parks. In fact, the County and Regional Parks Act permits counties to adopt, amend, or repeal rules for the protection, regulation, and control of its facilities and areas, such as the Ordinance that Plaintiff violated. MCL 46.364(1). Without a protected property interest, Plaintiff's Fourteenth Amendment claim fails.

### III.     Plaintiff would not suffer irreparable injury absent injunctive relief.

An irreparable harm is an *extraordinary* harm that cannot be properly compensated by money damages. *See Winter v. NRDC*, 555 U.S. 7, 22 (2008). Plaintiff argues that there is a presumption of irreparable injury when a plaintiff's civil rights have been violated (ECF No. 4 (*citing Mayerova v. Eastern Mich. Univ.*, 346 F. Supp. 3d 983, 998 (E.D. Mich. 2018))). Plaintiff has failed to show that Defendants violated any of his civil or constitutional rights as discussed above. There is no irreparable harm where no violation of Plaintiff's rights has occurred. *See, e.g., Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (explaining that if success on the merits is unlikely, courts are not required to issue an injunction); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (finding irreparable injury where the plaintiffs were likely to succeed on the merits of their First Amendment claim). Moreover, Plaintiff has not asserted that his injuries cannot properly be remedied by compensatory damages. *See Bonnell*, 241 F.3d at 825 ("[W]here the injury is purely economic in nature, [injunctive relief] is not necessary in any event."). Accordingly, Plaintiff would not suffer irreparable injury absent injunctive relief.

### IV.     Preliminary Injunctive relief could cause substantial harm to others.

Defendants prohibited Plaintiff from entering Newaygo County Parks due to Plaintiff's disruptive and irrational behavior following a minor event—behavior that would negatively

impact individuals trying to use the public parks. The public could be harmed by Plaintiff's disruptive behavior if he is permitted to enter County Park property. Given Plaintiff's history of abusive and disruptive behavior towards virtually everyone involved and not involved in this litigation, including the County's attorneys[2], it is likely that, if allowed back on County park property, Plaintiff would exhibit the same behavior to other park residents, like Mr. Wright. Accordingly, preliminary injunctive relief could cause substantial harm to others.

**V.     The public interest would not be served by granting a preliminary injunction.**

For similar reasons discussed in section IV above, the public interest would not be served by granting a preliminary injunction in this case. In fact, the public interest would be served in _denying_ a preliminary injunction. The public, like Ethan Wright, could be harmed by Plaintiff's disruptive and abusive behavior if he is permitted to enter onto County park property.

**CONCLUSION AND REQUEST FOR RELIEF**

Given that all factors weight in favor of denying Plaintiff's motion for a preliminary injunction, Plaintiff's motion should be denied.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.

Dated:  November 8, 2022     By:     _/s/ Leslie A. Dickinson_
Michael D. Homier (P60318)
Leslie A. Dickinson (P78850)
FOSTER, SWIFT, COLLINS & SMITH, P.C.
Attorneys for Defendants
1700 E. Beltline Ave NE, Suite 200
Grand Rapids, MI 49525

83934:00016:6762935-5

---

[2] Attorney Dickinson brought a male associate to the Rule 16 Scheduling Conference specifically for safety reasons to escort her to her vehicle after the hearing. Security walked the two attorneys out of the courthouse following the hearing.