KeyCite Yellow Flag - Negative Treatment
Distinguished by Cole v. City of Memphis, 6th Cir.(Tenn.), October 17, 2016

2004 WL 191613
Only the Westlaw citation is currently available.
United States District Court,
W.D. Kentucky.

Darrell EMBRY, et al., Plaintiffs
v.
CITY OF CLOVERPORT, KENTUCKY, Defendant.

Civil Action No. 3:02CV-560-H.
|
Jan. 22, 2004.

**Attorneys and Law Firms**

David A. Friedman, American Civil Liberties Union of KY, John William Valentine, Louisville, KY, for Plaintiffs.

Charles C. Mattingly, III, Hardinsburg, KY, for Defendant.

## MEMORANDUM OPINION

JOHN G. HEYBURN, II, Chief Judge.

*1 In March 2003, the City of Cloverport, Kentucky (the "City") amended an existing ordinance to impose a curfew on all persons on streets or public places within the city limits during the early morning hours. Plaintiffs say that the ordinance violates their rights under the First and Fourteenth Amendments to the United States Constitution and sections 1 and 2 of the Kentucky Constitution. Both sides have now moved for summary judgment.[1]

### I.

The City of Cloverport, located along the Ohio River in Breckinridge County, Kentucky, is a small town of 1,200 habitants that covers about one and a half square miles. The City is governed by a Mayor and six city council persons. It has a two-person police force.

The City originally enacted a curfew ordinance in March 2000 and later amended it on March 17, 2003, (the "Ordinance").[2] The Ordinance states that it is "unlawful for any person to be on a street, alleyway, highway, roadway, sidewalk or any other public place in the city" during certain early morning hours. The Ordinance does not apply to (1) persons engaged in a lawful occupation, (2) persons going to and from places of employment, (3) persons en route to a specific legally permissible destination, (4) persons operating a motor vehicle, (5) persons having a specific legitimate reason for being in an otherwise prohibited place, and (6) persons who have specific written permission from someone authorized to grant such permission. It provides the following penalties: (1) any person who violates the Ordinance for the first time in any one-year period will be given a warning; and (2) any person who violates the curfew one or more times within the one-year period after the first warning will be guilty of a criminal violation and fined no more than $250.

Plaintiffs are persons who apparently wish to be on the streets or in the public places of the City during the curfew hours without having to justify the "legitimacy" of their purposes. They would not be working, traveling to and from employment, operating a motor vehicle, or have permission from an authorized person to be in the City's public places. They may be pursuing their own idiosyncratic but perfectly legitimate late night wanderings. They do not know what the City considers to be a "specific legally permissible destination" or a "specific legitimate reason" for being in an otherwise prohibited place.

### II.

From the record, the Court cannot determine that the Ordinance has been enforced against any of these Plaintiffs or that the City has threatened to enforce it against them. The City's police officers intend to enforce the Ordinance only against those who might be engaging in criminal activity or other disruptive conduct, none of which Plaintiffs intend. Absent any injury or real controversy, the City argues, Plaintiffs lack standing to bring this lawsuit.

Three elements are necessary for standing: (1) a plaintiff must have suffered an "injury in fact," which is "concrete and particularized" (i.e., personal in nature) and "actual or imminent"; (2) there must be a causal connection between the injury and the challenged conduct; and (3) the injury must be redressable. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The City argues that Plaintiffs have shown no injury in fact. Plaintiffs, however, need not

show that prosecution under the Ordinance has been either pursued or threatened. *See Muhammad v. Pitcher,* 35 F.3d 1081, 1084 (6th Cir.1994) ("It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact.") (quoting *G & V Lounge v. Mich. Liquor Control Comm'n,* 23 F.3d 1071, 1076 (6th Cir.1994)); *accord NAACP v. Button,* 371 U.S. 415, 433 (1963) (threat of sanctions has same effect as actual sanctions). Several Plaintiffs claim to have altered their "late night wanderings" due to concerns about enforcement of the Ordinance.

**\*2** Not every constitutional controversy has dramatic consequences, and this may be such a circumstance. Plaintiffs wish merely to travel the City's streets or use its public places during otherwise prohibited hours without fear of a warning or criminal citation for violating the Ordinance. To some degree, the Ordinance has a chilling effect upon the exercise of Plaintiffs' right to walk city streets in the early morning. Under Sixth Circuit cases, the Court concludes that such a chilling effect constitutes an injury in fact.[3] *See Muhammad,* 35 F.3d at 1084. Thus, Plaintiffs have satisfied the case or controversy requirement and have standing.

### III.

Most Americans have a sense of their personal liberty as a fundamental right. This personal liberty includes the right to travel freely through and about public places so long as the person does not engage in criminal activity or cause harm or no emergency requires otherwise. Notwithstanding our expectations, the Supreme Court has yet to address the extent to which the Constitution actually protects the right to this type of intrastate travel. The Sixth Circuit Court of Appeals, however, has concluded that the Due Process Clause of the Fourteenth Amendment does protect each citizen's fundamental right "to carry out our daily life activities" within public spaces and roadways. *Johnson v. City of Cincinnati,* 310 F.3d 484, 498 (6th Cir.2002), *cert. denied,* 123 S.Ct. 2276 (2003).

As one might also expect, the right of intrastate travel is not absolute. One cannot necessarily go anywhere he or she wants, under any circumstances or at any time. Generally speaking, a municipality enjoys considerable flexibility to establish laws governing personal conduct for the enjoyment of public places or restricting access to public areas. *See id.* at 502 & n. 9 (acknowledging reasoning by Third Circuit in *Lutz v. City of York,* 899 F.2d 255, 269 (3d Cir.1990), that "[u]nlimited access to public fora or roadways would result in ... chaos"). Given that the right of intrastate travel is a fundamental one, however, the restrictions that a municipality chooses to impose must be narrowly tailored to achieve a compelling goal. *See id.* at 502.[4]

As a general matter, courts have recognized a community's interest in protecting the safety and welfare of its citizens when imposing travel restrictions on residents. *See id.* (recognizing city's compelling interest in "enhanc[ing] the quality of life in drug-plagued neighborhoods and ... protect[ing] the health, safety, and welfare of citizens in those areas" by establishing drug exclusion zone in neighborhood with heavy drug abuse); *Nunez v. City of San Diego,* 114 F.3d 935, 946 (9th Cir.1997) (recognizing community's compelling interest in protecting citizens from juvenile crime and stemming gang activity by imposing juvenile curfew); *see also Chicago v. Morales,* 527 U.S. 41, 51-52 (1999) (plurality) (recognizing city's premise in enacting anti-loitering ordinance to eliminate gang harassment and intimidation of ordinary citizens during their routine activities in the neighborhood); *Schall v. Martin,* 467 U.S. 253, 264 (1984) ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted.").

**\*3** Here, the City asserts precisely such an interest. It says that some persons have wandered the streets and committed crimes during the early morning hours. No one disputes the City's legitimate concern for the safety of its streets. The record shows a limited amount of vandalism downtown and some drinking and loud music on the river bank. Not surprisingly, the City would like to avoid such disturbances. The City prefers people to be off the streets and in their homes at night. While petty vandalism and loud noise appear to be small problems when compared to the drug and gang activity that plagues cities like Chicago and Cincinnati, the crimes committed in the small town of Cloverport are as real to its citizens as those occurring in much larger urban areas. Courts in other cases involving travel limitations have accepted as compelling a community's objectives in reducing crime and protecting the safety of its citizens.

The difficulty here is that the City cannot articulate good reasons for so broadly and significantly restricting a citizen's

right to enjoy Cloverport's public areas. In constitutional terms, the City's means do not meet the requirement that any government curtailment of fundamental rights must always be narrowly tailored. See Johnson, 310 F.3d at 502. Here, the objective of reducing vandalism and disturbing noise late at night does not justify an ordinance that prohibits the casual citizen from wandering the streets. These prohibitions are too broad because they encompass conduct that is neither criminal nor disruptive. The Ordinance neither offers definitions for "a specific legally permissible destination" or "a specific legitimate reason" nor specifies who is authorized to give permission to be on the streets during curfew.[5] Who can know how Cloverport police officers might determine whether one was headed towards a "permissible" place or for a "legitimate" reason. Furthermore, the City can use alternative, more specific language to prohibit conduct that encourages late-night vandalism or noise (e.g., prohibiting loud music above a certain decibel level at certain hours of the night, prohibiting overnight parking in the town center). Or its police officers can regularly patrol public places after a certain hour of the evening and, at the least, can question those whom they have reason to believe may be engaged in illegal activity. All of these alternatives are more acceptable because they do not broadly proscribe or threaten to proscribe legitimate activity. See id. at 503 (court asks whether other, less constitutionally burdensome methods exist to achieve the state's goals) (citing Dunn v. Blumstein, 405 U.S. 330, 343 (1972)).

Typically, courts have allowed broad curfews only in cases of an immediate threat to public safety, such as a weather disaster or extreme civil unrest, and even then, only on a temporary basis. See, e.g., United States v. Chalk, 441 F.2d 1277, 1283 (4th Cir.1971) (allowing city-wide nighttime curfew after civil unrest continued following rioting between black residents and police officers); Moorhead v. Farrelly, 727 F.Supp. 193 (D.V.I.1989) (upholding stay of temporary restraining order of nighttime curfew after looting followed devastating hurricane). The Court concludes that the City has not used narrowly tailored means to accomplish its legitimate goals of protecting property and public safety. The Ordinance is therefore unconstitutional and unenforceable as currently adopted.

IV.

*4 One of the City's other arguments is that the Ordinance is not broadly restrictive because it permits all legitimate activities. The City argues that it would enforce the Ordinance only against those intending unlawful activity or engaging in suspicious conduct.

Because the Court has already determined that the Ordinance unduly restricts the right of intrastate travel, it need not directly address this issue. Nevertheless, it is likely that the Ordinance suffers from the defect of being unconstitutionally overbroad and vague. To avoid such a problem, an ordinance must (1) define the offense with sufficient clarity such that an ordinary person would understand what conduct is prohibited and (2) establish standards that allow non-arbitrary enforcement. Kolender v. Lawson, 461 U.S. 352, 357 (1983); see also Women's Med. Prof'l Corp. v. Voinovich, 130 F.3d 187, 197 (6th Cir.1997).

A curfew that provides exceptions for "a specific legitimate reason," for persons with "specific written permission from someone who is authorized to grant permission," or for persons en route to "a specific legally permissible destination" is so broad and vague that an ordinary citizen could never quite know what reason for wandering about town law enforcement officials might accept. Furthermore, the record does not indicate that the City ever established any consistent guidelines for police officers to follow when enforcing the Ordinance. The Court suspects that a more searching analysis of the Ordinance would lead to the conclusion that it is unconstitutionally overbroad and vague. The Court is convinced that the City can accomplish all of its legitimate law enforcement and public safety objectives without such vague language.

The Court will enter an order consistent with this Memorandum Opinion.

**ORDER**

Both sides have moved for summary judgment on the question of whether the Ordinance violates any of Plaintiffs' constitutional rights. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment is SUSTAINED and Defendant's motion is DENIED.

IT IS FURTHER ORDERED that the City of Cloverport's Ordinance No.2000-3.1, as amended, is unconstitutional and that the City is therefore permanently enjoined from enforcing the Ordinance.

This is a final and appealable order.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 191613

## Footnotes

1   Summary judgment is proper if the evidence submitted shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying Rule 56(c), a court views the evidence in a light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). A court properly enters summary judgment where there is not sufficient evidence in support of the non-movant's case to find that "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Here, the parties agree on all the material facts. They dispute only the application of those facts to the relevant legal standards.

2   The Ordinance that was adopted on March 17, 2003 states in part:

   NOW, THEREFORE, BE IT ORDAINED that:

   SECTION 1: This section shall be known and may be cited as the ordinances relating to the presence and conduct of all persons on streets, sidewalks and other public places within the city limits.

   SECTION 2: It shall hereafter be unlawful for any person to be on a street, alleyway, highway, roadway, sidewalk or any other public place in the City between the hours of 12:00 midnight and 5:00 a.m., Central Time, Sunday through Thursday, and between the hours of 1:00 a.m. and 5:00 a.m., Central Time, on Friday night and Saturday night.

   SECTION 3: This ordinance shall not apply to those persons who, at the time of their presence on a street, alleyway, roadway, sidewalk or other public place in the City past the curfew hours, are engaged in a lawful occupation, those persons going to and from their places of employment, those persons enroute to a specific legally permissible destination, those persons who are operating a motor vehicle anywhere in the City, ..., those persons who are present on or remain in, on, or about a street, alleyway, roadway, sidewalk, or other public place in the City for a specific legitimate reason; and those persons who are present in a public place in the City who have specific written permission from someone who is authorized to grant permission for them to be in said public place.

   SECTION 4: Any person violating this ordinance for the first time during any one (1) year period shall be issued a warning citation by the police or law enforcement officer thereby warning him or her that he or she is in violation of the curfew ordinance of the City and notifying them that any additional violation within the one year period from the date of the issuance of the warning citation shall subject that person to a conviction for a criminal violation of the ordinance and a corresponding fine. For a second violation and each additional violation of this ordinance during the one (1) year period from the date of issuance of the warning citation, a person shall be guilty of a criminal violation under the Kentucky Penal Code and shall be fined an amount not to exceed $250.00.

3      Plaintiffs also satisfy the second and third elements for standing. Plaintiffs' injury-the deprivation of their constitutional right to move freely around Cloverport-is caused by the City's nighttime curfew. And Plaintiffs' injury is redressable-removing the blanket nighttime travel restriction will allow Plaintiffs to move about town.

4      The Court follows the Sixth Circuit's lead in *Johnson* in applying strict rather than intermediate scrutiny because, like the Cincinnati ordinance prohibiting access by certain individuals to a neighborhood, the Cloverport ordinance also sweeps with a rather broad brush and embraces a lot of legitimate conduct.

       *Compare* *Johnson,* 310 F.3d at 502 ("[W]hile we acknowledge the strength of the Third Circuit's reasoning [in *Lutz* ], and we do not foreclose the possibility of applying intermediate scrutiny to a less severe regulation of localized travel, the broad prohibition of the Ordinance requires that we apply strict scrutiny.") (footnote omitted), *with* *Lutz,* 899 F.2d at 270 (importing analysis for analogous "time, place or manner" restrictions in free speech context and applying intermediate scrutiny to anti-cruising ordinance with the understanding that communities enjoy flexibility to regulate access to public areas).

5      For instance, a person who is out in the early morning hours to look at stars or take a walk, both of which are lawful, non-disruptive activities, could be subject to questioning or even prohibited from being out on the street if law enforcement officials do not believe that these activities are "legitimate" or are without a "legally permissible" destination.

End of Document      © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2022 Thomson Reuters. No claim to original U.S. Government Works.      5