# EXHIBIT A

Case 1:22-cv-00748-PLM-PJG ECF No. 57-1, PageID.769 Filed 12/07/22 Page 2 of 7
Costello v. Patterson Dental Supply, Inc., Not Reported in F.Supp.2d (2007)
2007 WL 4178942

2007 WL 4178942
Only the Westlaw citation is currently available.
United States District Court,
W.D. Michigan,
Southern Division.

William J. COSTELLO, individually and as Trustee of the Article VII Fund Under the William J. Costello Declaration of Trust and Elizabeth Costello, an individual, Plaintiffs,
v.
PATTERSON DENTAL SUPPLY, INC., a Minnesota corporation, Defendant.

No. 5:06-CV-213.
|
Nov. 20, 2007.

**Attorneys and Law Firms**

Jack C. Davis, Kevin J. Roragen, Loomis Ewert Parsley Davis & Gotting PC, Lansing, MI, for Plaintiffs.

Elizabeth M. Brama, Charles B. Rogers, Briggs and Morgan PA, Minneapolis, MN, M. Brian Cavanaugh, Butzel Long PC, Lansing, MI, for Defendant.

*OPINION*

RICHARD ALAN ENSLEN, Senior District Judge.

 *1  This matter is before the Court on Defendant Patterson Dental Supply, Inc.'s Motion to Compel Arbitration of Newly Discovered Claims. Also before the Court is Plaintiffs William J. Costello and Elizabeth Costello's Motion to Limit the Scope of Arbitration. Plaintiffs have also filed a Motion to Strike, or, in the Alternative, to Grant Leave to File a Reply Brief. All Motions are opposed. The Motions have been fully briefed and the Court discerns no reason to hear oral argument. W.D. Mich. LCivR 7.2(d).

**I. BACKGROUND**[1]
This action stems from a 63-page Ownership Interest Purchase Agreement ("Purchase Agreement") executed by the parties concerning the sale of a dental supply business. On September 6, 2005, Plaintiffs sold their ownership interests in Accu-Bite, Inc., Strategic Dental Marketing, Inc., Accu-Bite Dental Products, LLC, and Williamston Industrial Center, LLC (collectively "Accu-Bite") to Defendant. (Compl.¶ 10.) Pursuant to the Purchase Agreement, Defendant was to pay a Purchase Price[2] and, if certain requirements were met, to make "Earn-Out payments" to Plaintiffs over three years based on post-sale performance of the purchased entities. (*Id.* at ¶ 19; Compl. Ex. B. § 2.2.)

Sections 2.2 and 2.4 of the Purchase Agreement contain dispute resolution procedures. Section 2.2(b)(ii) states in pertinent part:

> In the event of a dispute involving the computation of the Earn-Out that the Purchaser and the Interestholders' Representative cannot resolve within twenty (20) days following the earlier of the Interestholders' Representative's receipt of the Earn-Out payment or the Earn-Out Payment Date, the Purchaser and the Interestholders' Representative shall engage the Independent Accountants and follow the procedures in Section 2.4(f) to resolve the dispute.

(Compl. Ex. B § 2.2(b)(ii).) Section 2.4(e) provides:

> If the Purchaser concludes that any matter reported in the Closing Certificate[3] is not accurate, the Purchaser shall, within thirty (30) days after its receipt of the Closing Certificate (the "Response Period"), deliver to the Interestholders' Representative (with a copy to Seapearl) a written statement setting forth a specific description of each of its objections and each of any discrepancies believed to exist. If no notice of any objections or discrepancies is given by the Purchaser within the Response Period, then the calculations set forth in the Closing

> Certificate shall be controlling for all purposes of this Agreement ...

(*Id.* at § 2.4(e).) Section 2.4(f) is the arbitration clause of the Purchase Agreement. If the parties are unable to resolve Defendant's objections and discrepancies to their mutual satisfaction,

> then the matter shall be submitted to KPMG Peat Marwick, Chicago, Illinois (the "Independent Accountants").... The Independent Accountants shall promptly (but not to exceed thirty (30) days from the date of engagement of the Independent Accountants) render a decision on the issues presented, and such decision shall be final and binding on the parties.

**\*2** (*Id.* at § 2.4(f).) Section 2.4(f) also sets forth in detail the procedure for the dispute resolution including what evidence the parties may submit, who bears the expenses, and allows for the Independent Accountants to conduct a conference. (*Id.*)

The parties agree on several key issues: Minnesota law applies to the dispute pursuant to § 8.11 of the Purchase Agreement; the underlying transaction involved interstate commerce; and the Purchase Agreement, including § 2.4(f), is valid and enforceable. In December 2005, Defendant notified Plaintiffs of certain objections and discrepancies to the Closing Certificate, pursuant to § 2.4(e) of the Purchase Agreement (hereinafter the "December 2005 Adjustments"). In the Court's Opinion of April 5, 2007, the Court determined that the arbitration clause contained in § 2.4(f) is valid, that the December 2005 Adjustments fall under the scope of this arbitration clause, and therefore, the claims must proceed to arbitration.[4] The parties' Motions ask the Court to revisit the scope of the arbitration clause.

## II. LEGAL STANDARD

The purpose of the Federal Arbitration Act ("FAA") "was to reverse judicial hostility to arbitration agreements and to place arbitration agreements on equal footing with other contracts." *Keymer v. Mgmt. Recruiters Int'l, Inc.,* 169 F.3d 501, 504 (8th Cir.1999) (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). The FAA applies to any "written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy." 9 U.S.C. § 2. These agreements "shall be valid, irrevocable, and enforceable." *Id.* "[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application ... stay the trial ... until arbitration has been had." *Id.* at § 3.

A party may seek to compel arbitration under the FAA if it is injured by the "alleged failure, neglect, or refusal of another to arbitrate under a written agreement." *Id.* at § 4. In deciding whether the parties agreed to submit a dispute to arbitration, the Court must first find an agreement to arbitration exists and then determine if the dispute falls within the scope of the agreement. *Keymer,* 169 F.3d at 504 (citing *Daisy Mfg. Co. v. NCR Corp.,* 29 F.3d 389, 392 (8th Cir.1994)). State law contracting principles are applied to determine whether parties have agreed to arbitrate a certain issue. *See id.* According to the Supreme Court, it is well settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, it has also held "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton,* 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). "Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

## III. ANALYSIS

A. Motion to Strike or File Reply Brief

**\*3** The Court will first address Plaintiffs' Motion to Strike, or, in the Alternative, to Grant Leave to File a Reply Brief. At issue is whether Defendant's Motion to Compel Arbitration is a dispositive or nondispositive motion.

> Dispositive motions are motions for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, to involuntarily dismiss an action, *and other dispositive motions as defined by law.*

W.D. Mich. LCivR 7.2(a) (emphasis added). A nondispositive motion, on the other hand, encompasses "all motions not specifically listed in LCivR 7.2." *Id.* at 7.3(a).

After a response to a dispositive motion is filed, "[t]he moving party may, within fourteen (14) days after service of the response, file a reply brief not exceeding ten (10) pages. The Court may permit or require further briefing." *Id.* at 7.2(c). "Reply briefs may not be filed without leave of the court" for nondispositive motions. *Id.* at 7.3(c).

Plaintiffs argue that Defendant's Motion to Compel Arbitration is a nondispositive motion, and as such, Defendant was not entitled to file a reply brief without leave of the Court, which it failed to request when it filed its Memorandum in Opposition to Plaintiffs' Motion to Limit Scope of Arbitration and Reply Memorandum in Support of Defendant's Motion to Compel Arbitration. (*See* Dkt. No. 54.) If the Motion to Compel Arbitration is a nondispositive motion, Plaintiffs are absolutely correct in their argument.

The Sixth Circuit has adopted a "functional equivalency test to see if a particular motion has the same practical effect as a recognized dispositive motion." *Vogel v. United States Off. Products Co.,* 258 F.3d 509, 517 (6th Cir.2001). Motions to compel arbitration, although not specifically listed in Local Rule 7.2(a), are included as "other dispositive motions as defined by law" because if a motion to compel arbitration is granted, the case will proceed in a different forum. *See Flannery v. Tri-State Div.,* 402 F.Supp.2d 819, 821 (E.D.Mich.2005); *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* No. 1:03-CV-350, 2003 WL 24292368, at *1 (W.D.Mich. Dec.10, 2003). Since Defendant's Motion to Compel is a dispositive motion, Defendant was entitled to file a reply brief. *See* W.D. Mich. LCivR 7.2(c). Accordingly, the Court must deny Plaintiffs' Motion to Strike.

Plaintiffs alternatively request the Court to grant leave to file a reply brief. Plaintiffs do not argue that the Motion to Limit the Scope of Arbitration is a dispositive motion [5] or that they are *entitled* to file a reply brief. Thus, the Court must determine whether to grant leave of the Court. *See id.* at 7.3(c). The Court determines that a reply brief would not assist in adjudication of the parties' cross-motions and will deny Plaintiffs' Motion.

B. Motion to Compel Arbitration

*4 In deciding whether to compel arbitration, a district court must determine whether the issue is within the scope of the agreement to arbitrate. The Court may not rule on the merits of any claim which the parties have agreed to arbitrate. *See AT & T Tech. v. Comm. Workers,* 475 U.S. 643, 649-50, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). To determine the scope of this arbitration agreement, the Court must analyze the agreement pursuant to Minnesota law. *See Keymer,* 169 F.3d at 504 (citing *Gilmer,* 500 U.S. at 24). Minnesota courts interpret contracts based upon the intent of the parties as expressed by the language employed. *Travertine Corp. v. Lexington-Silverwood,* 683 N.W.2d 267, 271 (Minn.2004). Minnesota courts look to dictionaries for the common meaning of a contract term. *See Bank Midwest, Minn., Iowa, N.A. v. Lipetzky,* 674 N.W.2d 176, 180 (Minn.2004).

Plaintiffs submitted a Closing Certificate to Defendant on November 1, 2005. Defendant timely objected to the Closing Certificate and notified Plaintiffs that it wished to submit the dispute concerning these December 2005 Adjustments to the Independent Accountants pursuant to § 2.4(f) of the Purchase Agreement. (Compl.Ex. B. §§ 2.4(c) & (f).) Defendant asserted that Plaintiffs provided an inaccurate Closing Certificate and Equity Calculation, did not comply with GAAP, and did not provide an accountant's report that was unqualified, all of which are required by the Purchase Agreement. (*See* Compl. Ex. C 2). The Court understood the December 2005 Adjustments to be a disagreement between Plaintiffs and Defendant over the determination of the amount or the computation of Plaintiffs' equity in Accu-Bite and Plaintiffs' conformance with GAAP.

In Defendant's present Motion to Compel Arbitration, Defendant alleges that in preparing for arbitration of

the December 2005 Adjustments, it discovered additional Purchase Agreement compliance issues, which primarily concern inventory and intangible assets (the "New Adjustments"). [6] If Defendant is correct, the Actual Equity of Accu-Bite would have been reduced. Defendant made these objections in July 2007. Defendant argues it could not have discovered the New Adjustments within 30 days of receiving the Closing Certificate, as required by the Purchase Agreement, because Plaintiffs' books and records were not easily discernable and because of Plaintiffs' noncompliance with GAAP. As an initial matter, the fact that this dispute may involve the Independent Accountants reading and applying the Purchase Agreement to properly compute the Purchase Price does not prove the dispute is outside the scope of § 2.4(f). Indeed, it would be impossible for the Independent Accountants to determine the figure at issue without reference to the document which defines it.

The Court will not engage itself in a merits determination of the arbitrable issues as Plaintiffs implicitly ask it to do. *See AT & T Tech.,* 475 U.S. at 649-50. For example, Plaintiffs argue that although Defendant submitted timely objections regarding the December 2005 Adjustments, the New Adjustments were submitted well after the 30-day period passed for filing objections as required by § 2.4(e). Although Plaintiffs' timeliness argument may be correct, this is irrelevant. As Defendant points out, Plaintiffs have provided no justification to suggest that this "matter" is not in the province of the arbitrator. "If the Purchaser and the Interestholder's Representative are unable to resolve the objections and discrepancies ..., then the matter shall be submitted to KPMG Peat Marwick, Chicago, Illinois." (Compl. Ex. B § 2.4(f).) The Court finds that Plaintiffs' timeliness argument is a "matter" relating to the Closing Certificate which must be submitted to the arbitrator. Plaintiffs also argue that Defendant formulated some of the December 2005 Adjustments and New Adjustments based on post-closing information, not pre-closing information as required by GAAP. The Court finds that Defendant fulfilled its obligation under the Purchase Agreement, which was to describe its objections to Plaintiffs. It will be the arbitrator's duty to determine whether the objections are based on hindsight or information available before the Closing Certificate was issued.

**\*5** Plaintiffs last argument concerns the engagement letter of Andrews, Hooper & Pavlik, which they contend effectively controls the parties' dispute, not the Purchase Agreement. (*See* Pls.' Br. Ex. A.) The Court believes any arguments concerning the effect and scope of the engagement letter should be resolved by the arbitrator. At a minimum, this is a debatable issue that is properly characterized as a "matter" under § 2.4(f) requiring adjudication through arbitration.

Regarding all of Plaintiffs' arguments, the Court relies on the well-settled principle that under the FAA "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses,* 460 U.S. at 24-25. Here, where the disputes, not including the dispute related to accounts receivable, [7] arise under the same section of the Purchase Agreement in which the arbitration clause is found, involve the computation of the Purchase Price, and the question is clearly within the expertise of the Independent Accountants, the issues must be submitted to arbitration under the Purchase Agreement. Alternatively, the Court finds that all of Defendant's purported adjustments are arbitrable disputes based on § 2.2(b)(ii) of the Purchase Agreement, since the matters relate to computation of the Earn-Out. (*See* Compl. Ex. B § 2.2(b)(ii).)

In making these findings, the Court agrees with Defendant: "KPMG is in the best position to determine whether Plaintiffs provided a Closing Certificate and Balance Sheet in accordance with GAAP." (Mot. to Compel Arbitration 15.) The Court finds that submitting Defendant's objections to arbitration is not only consistent with the language of the Purchase Agreement, but will also provide for an efficient and intelligent resolution of the December 2005 Adjustments and applicable New Adjustments.

Therefore, the Court holds that the New Adjustments are properly subject to arbitration. All remaining legal matters must be stayed pending completion of the arbitration. *See* 9 U.S.C. § 3; *Higgs v. Auto. Warranty Corp. of Am.,* 134 Fed. App'x 828, 830 (6th Cir.2005); *Javitch v. First Union Sec.,* 315 F.3d 619, 624 (6th Cir.2003). After arbitration is complete, Defendant cannot reassert these claims in litigation absent a further determination under FAA that the arbitration award cannot be confirmed in accordance with FAA § 9. *See* 9 U.S.C. § 9.

### C. Motion to Limit the Scope of Arbitration

Regarding Plaintiffs' Cross-Motion to Limit the Scope of Arbitration, the Court treats this as a Motion for Reconsideration since these issues were previously decided in the Court's Opinion of April 5, 2007. *See* W.D. Mich.

LCivR 7.4(a). Pursuant to Western District of Michigan Local Civil Rule 7.4(a), reconsideration is appropriate only when the movant "demonstrate[s] a palpable defect by which the Court and the parties have been misled ... [and] that a different disposition must result from the correction thereof." Plaintiffs do not offer new information, although they set forth various new allegations. Plaintiffs have failed to demonstrate a palpable defect by which the Court and the parties have been misled. For this reason, the reasons given in the Court's previous Opinion, and the reasons stated above for granting Defendant's Motion to Compel Arbitration, the Court denies Plaintiffs' Motion to Limit the Scope of Arbitration.

### IV. CONCLUSION

*6 An Order shall issue denying Plaintiffs William J. Costello and Elizabeth Costello's Motion to Strike, or, in the Alternative, to Grant Leave to File a Reply Brief; denying Plaintiffs' Motion to Limit the Scope of Arbitration; and granting Defendant Patterson Dental Supply, Inc.'s Motion to Compel Arbitration of Newly Discovered Claims.[8] This case otherwise remains stayed pending arbitration and further Order of the Court.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4178942

---

### Footnotes

1   This Opinion, in certain portions, overlaps with the Court's previous Opinion in *Costello v. Patterson Dental Supply, Inc.,* No. 5:06-CV-213, 2007 WL 1041128 (W.D.Mich. Apr.5, 2007).

2   Section 2.2(a) of the Purchase Agreement states:

   The purchase price for the Ownership Interests shall be the aggregate of Six Million Nine Hundred Seventy-Five Thousand ($6,975,000) (the "Base Purchase Price"), plus the Closing Date Interestholders' Equity (the "Purchase Price Adjustment"). The aggregate sum of the Base Purchase Price and the Purchase Price Adjustment shall be collectively referred to herein as the "Purchase Price."

   (Compl. Ex. B § 2.2(a).)

3   Plaintiffs were required to furnish Defendant with a Closing Certificate, which had to contain, *inter alia,* a Closing Balance Sheet in compliance with Generally Accepted Accounting Principles ("GAAP"), a calculation and comparison of the Estimated Equity to Actual Equity, and the resulting Purchase Price Adjustment. (*See id.* at §§ 2.4(a) & (c).) "The Accountant's statement on the Closing Balance Sheet shall be unqualified, except for the modifications to GAAP mandated by this Agreement for the proper presentation and calculation of the matters required to be included with and in the Closing Certificate and on the Closing Balance Sheet." (*Id.* at § 2.4(c).)

4   *See Costello,* 2007 WL 1041128, at *3.

5   The Court finds that Plaintiffs' Motion is not a dispositive motion. Although the Plaintiffs do not title it a motion for reconsideration, it is in essence a motion for reconsideration, and the Court treats it accordingly.

6   Defendant also alleges that it discovered numerous uncollectible accounts receivable, which Plaintiffs failed to account for in their Closing Certificate. This issue relates to representations, warranties, and indemnification. Because Defendant admits the accounts receivable dispute is appropriate for litigation, and not arbitration, the Court does not treat this issue as part of the "New Adjustments." It is discussed further *infra.*

7   The Court finds that the accounts receivable issue amounts to a separate loss and is not arbitrable. These claims involve an alleged breach by Plaintiffs of representations and warranties, which may involve

indemnification. (*See* Compl. Ex. B. §§ 3.18 & 5.1(i).) The Purchase Agreement does not provide a forum for adjudication of these claims, besides a non-binding mediation procedure set forth in § 5.4. The Court therefore finds that these claims must be litigated and cannot be arbitrated.

8    Pursuant to §§ 2.4(c), (e), and (f) of the parties' Ownership Interest Purchase Agreement, the parties must arbitrate: (1) whether Plaintiffs' Closing Balance Sheet and underlying accounting complied with Generally Accepted Accounting Principles; (2) whether the Accountants' report or statement on the Closing Balance Sheet was unqualified; and (3) any disagreement related to Defendant's proposed adjustments, set forth in Schedule A attached to Exhibit I of the Affidavit of Elizabeth M. Brama, pursuant to Defendant's claims for breach of covenant, adjustment to the Purchase Price, and offset against Plaintiffs' past or future Earn-Out Payments. Defendant's claims for breach of representations and warranties and for indemnification, relating to accounts receivable, apart from an Earn-Out offset are not arbitrable, and will be stayed pending the outcome of arbitration and further Order of the Court.

**End of Document**                                      © 2022 Thomson Reuters. No claim to original U.S. Government Works.