UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANE MYERS,                          )
                    Plaintiff,       )
                                     )        No. 1:22-cv-748
-v-                                  )
                                     )        Honorable Paul L. Maloney
CHRISTOPHER WREN, *et al.*           )
                    Defendants.      )
_____)

## OPINION AND ORDER

There are currently four pending motions in this matter: (1) Plaintiff's motion for a preliminary injunction (ECF No. 4); (2) Defendants' motion for sanctions (ECF No. 26); (3) Plaintiff's motion for leave to file a first amended complaint (ECF No. 37); and (4) Plaintiff's motion for leave to file a reply to Defendants' response to the motion for leave to file an amended complaint (ECF No. 50). The Court has thoroughly reviewed all the relevant filings and determined that oral argument on these motions is unnecessary. *See* W.D. Mich. LCivR 7.3(d). For the following reasons, the Court will deny all four pending motions.

## I.        Facts

This case arises out of an incident that occurred on August 5, 2022, on the Dragon Trail at a Newaygo County Park. Plaintiff and Defendants present different versions of the incident. Plaintiff alleges that, while riding his bicycle on the trail, he encountered Mr. Ethan Wright, another bicycler, on the trail. Mr. Wright was riding an electric bicycle, or "e-bike," and Plaintiff argues that e-bikes are not permitted on Newaygo County Parks and Recreation Commission-owned property (*see* ECF No. 21-4 at PageID.154). As Plaintiff was coming

around a corner toward Mr. Wright, Plaintiff asserts that Mr. Wright was not operating his e-bike under control, which forced both Plaintiff and Mr. Wright to swerve off the trail and fall off their bikes. Plaintiff then "informed" Mr. Wright that e-bikes are not permitted on the trail, and he pointed to signs indicating that only non-motorized vehicles are permitted on the trail (*see* ECF No. 1 at PageID.6). Mr. Wright responded that "it does not matter what [Plaintiff] say[s], or the signs, and that he would continue to ride the [e-bike] on the trail" (*Id.*).

After their initial conversation, Plaintiff alleges that he and Mr. Wright both continued with their rides on the Dragon Trail. Plaintiff eventually encountered Mr. Wright again somewhere near the Sandy Beach Park, and Mr. Wright stated, "Where are you going[?] [T]he police are on their way." (*Id.*). Defendant Deputy Freriks of the Newaygo County Sheriff's Department, along with Deputy Kalinowski, subsequently arrived at the scene to investigate. Plaintiff informed Deputy Freriks of Mr. Wright's alleged violation of the Newaygo County Park Ordinance prohibiting motor vehicles on county trails, but Deputy Freriks indicated that he would not be enforcing any violation and that Plaintiff was "free to go" (*Id.*).

Defendants describe the events that took place at the Dragon Trail on August 5, 2022, quite differently. Defendants do not allege that Plaintiff and Mr. Wright had to swerve off the trail due to Mr. Wright's reckless operation of his e-bike. Rather, Defendants allege that Plaintiff approached Mr. Wright and immediately began yelling at Mr. Wright that e-bikes are not allowed on the trail (*see* ECF No. 40 at PageID.558). Defendants assert that "Mr. Wright was taken aback by Plaintiff's hostility over a relatively minor manner," and because

he was out in the woods all alone, he was concerned for his safety and proceeded down the trail to get away from Plaintiff (*Id.*). According to Defendants, Plaintiff chased Mr. Wright for five miles down the trail while berating him. At some point during this chase, Mr. Wright called the police.

Defendants also allege that Mr. Wright eventually arrived at the Sandy Beach County Park office "afraid, upset, and in tears," and informed Park Manager Theresa Bailey that Plaintiff was chasing him and that he had called the police (*Id.*). According to Ms. Bailey's written report following the incident, she then contacted Defendant Smith to inform him of the incident and Plaintiff's behavior (*see* ECF No. 40-2). While waiting for the police to arrive, Ms. Bailey further asserts that Plaintiff began yelling and swearing at her and Mr. Wright. Plaintiff allegedly told Ms. Bailey, "[T]hat fucking idiot [Mr. Wright] on the fucking e-bike needs a ticket now" and that he should "stay the fuck off of our trail" (ECF No. 40 at PageID.558). When Deputies Freriks and Kalinowski arrived at the scene, they deescalated the situation. Plaintiff apparently refused to provide his name to the deputies for their report, stating, "I don't have to give you anything" (*Id.* at PageID.559).

The parties appear to agree on the following facts. Later that day, Plaintiff received a phone call from Defendant Nicholas Smith, the Director of Parks and Recreation for Newaygo County, who informed Plaintiff that, based on his conduct on the Dragon Trail earlier that day, he was prohibited from entering all Newaygo County Parks. Plaintiff asserts that he asked for a hearing, but he was denied. Four days later, Plaintiff received a letter ("the August 5th Letter") from Defendant Smith on behalf of the Newaygo County Park & Recreation Commission ("the Commission") "reiterating" that Plaintiff may not enter any

properted owned or operated by the Commission (ECF No. 1-1). It further explained that on August 5, 2022, Plaintiff violated Newaygo County Parks Ordinance #01/2020[1] Section 18 b & c (the "Ordinance"), which states:

> Section 18: Personal Conduct
> No person shall:
>
> b. Engage in any violent, abusive, loud, boisterous, vulgar, lewd, wanton, obscene, or otherwise disorderly conduct tending to create a breach of the peace, or disturb or annoy others, while on any Commission property.
>
> c. Interact in a violent, abusive, loud, boisterous, vulgar, lewd, wanton, obscene, or otherwise disorderly manner towards Commission Staff, park customers, or other members of the public on Commission property.

(*Id.*). The August 5th Letter finally stated that if Plaintiff entered Commission-owned property, "it will be considered trespassing, law enforcement will be contacted, and you will be prosecuted" (*Id.*).

On August 16, 2022, Plaintiff filed his complaint alleging violations of the First, Fourth, Fifth, and Fourteenth Amendments (*see* ECF No. 1 at PageID.4). He contemporaneously moved for a temporary restraining order ("TRO") and preliminary injunction seeking to enjoin Defendants from enforcing his ban from entering Commission-owned property (ECF No. 4). The Court denied Plaintiff's motion for a TRO on August 22, 2022 (ECF No. 7).

Since then, the Court has issued a Case Management Order (ECF No. 25), and this litigation has proceeded onto discovery. However, communication from Plaintiff to

---

[1] The entirety of the Ordinance can be found at *Newaygo County Michigan*, Parks & Recreation, https://www.newaygocountymi.gov/departments/parks/parks-recreation/ (scroll to the bottom of the page; then click on and download "Park Ordinance & Rules") (last visited Dec. 12, 2022).

Defendants' attorneys and Mr. Wright (among other County employees) has been hostile. Both parties have provided hundreds of pages of communication between them, showcasing Plaintiff's bizarre, outlandish, and inappropriate behavior (*see* ECF Nos. 21, 26, 27, 28, 40, 43, 44, 57). Based on Plaintiff's actions, Defendants have moved for sanctions in the form of reasonable fees and costs or dismissal with prejudice (ECF No. 26). Although the Court sympathizes with Defendants, at this time, the Court is not inclined to dismiss this matter based on Plaintiff's First Amendment-protected speech. The Court will therefore deny without prejudice Defendants' motion for sanctions. However, as explained below, due to the baselessness of Plaintiff's claims in his motion for a preliminary injunction and the futility of the proposed first amended complaint, the Court will also deny Plaintiff's motions for a preliminary injunction and for leave to file a first amended complaint.

## II.    Motion for Preliminary Injunction

A trial court may issue a preliminary injunction under Federal Rule of Civil Procedure 65. A district court has discretion to grant or deny preliminary injunctions. *Planet Aid v. City of St. Johns*, 782 F.3d 318, 323 (6th Cir. 2015). A court must consider each of four factors: (1) whether the moving party demonstrates a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quoting *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)).

The four factors are not prerequisites that must be established at the outset but are interconnected considerations that must be balanced together. *Ne. Ohio Coal.*, 467 F.3d at 1009; *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (internal citation omitted); *see Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)).

The purpose of a preliminary injunction is to preserve the status quo. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 873 n.13 (6th Cir. 2007) (quoting *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004)). The Sixth Circuit has noted that "[a]lthough the four factors must be balanced, the demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction." *Patio Enclosures*, 39 F. App'x at 967 (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

In the Court's order denying Plaintiff's motion for a TRO, the Court found that all four factors weighed against granting the TRO (*see* ECF No. 7). With respect to the first factor, the Court found that Plaintiff was unlikely to succeed on his Fourteenth Amendment Procedural Due Process claim because Plaintiff failed to articulate that he possessed a property interest in accessing Newaygo County Parks (*Id.* at PageID.32-33). Moreover, the Court found that Plaintiff was unlikely to succeed on his First Amendment claim because he failed to establish that the Ordinance did not pass intermediate scrutiny (*Id.* at PageID.33-

6

34). The Court did not specifically address the remaining claims in Plaintiff's complaint—violations of the Fourth and Fifth Amendments—because no argument was presented on these claims in the motion for a TRO, and it was unnecessary to assess such claims to deny the motion. Further, in denying Plaintiff's motion for a TRO, the Court held that Plaintiff was unlikely to suffer irreparable harm absent a TRO, and that others and the public would not be served by a TRO.

Turning to the motion for a preliminary injunction—which was included in the motion for a TRO—the Court is not persuaded that the weight of any of the four factors has shifted toward granting injunctive relief. Plaintiff seeks to enjoin the enforcement of the August 5th Letter, which prohibits Plaintiff from entering any property owned or operated by the Newaygo County Parks & Recreation Commission (*see* ECF No. 1-1).

At the outset, Plaintiff filed an extensive reply brief in support of his motion for a preliminary injunction that contains numerous novel arguments (ECF No. 43 at PageID.616) (arguing that the Ordinance is overbroad, unconstitutionally vague, violates the Equal Protection Clause, and that its enforcement violates the Confrontation Clause). Although the Court has reviewed this brief, it will use its inherent discretion to consider only those arguments articulated in the reply brief that were first raised in the motion for a preliminary injunction. The Court will do so because, first, the brief exceeds the permissible number of words this district allows reply briefs in support of dispositive motions to contain. *Compare* W.D. Mich. LCivR 7.2(c) (providing that reply briefs to dispositive motions may not exceed 4,300 words), *with* ECF No. 49 (certifying that Plaintiff's reply brief contains 6,762 words). Second, litigants may not raise arguments for the first time in a reply. *See, e.g., Malin v.*

*JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) ("It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues deprives the non-moving party of its opportunity to address the new arguments.") (internal quotation marks omitted); *Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.*, 602 F. Supp. 2d 829, 872 n.24 (W.D. Mich. 2008) ("Ordinarily, this court will not consider arguments raised for the first time in a reply or surreply brief."). Therefore, because Plaintiff's reply brief exceeds the number of words permitted in reply briefs, and because it raises multiple arguments that were not raised in the motion for a preliminary injunction, the Court will consider the reply brief only to the extent that it expands upon or explains the original arguments asserted in the motion for injunctive relief.

## A.  Likelihood of Success on the Merits

Moving onto the four preliminary injunction factors, the Court will first consider Plaintiff's likelihood of success on the merits. Plaintiff's motion for a preliminary injunction broadly raises three arguments in support of the merits of his claims: (1) that the Ordinance forming the basis for his ban from Newaygo County parks violates his First Amendment rights to free speech and expression; (2) that he was not afforded procedural due process before his prohibition from the parks; and (3) that the Ordinance deprives him of his substantive due process liberty interest in his First Amendment rights.[2]

---

[2] There is a discrepancy among the claims raised in Plaintiff's complaint versus the arguments supporting this matter's merits raised in Plaintiff's motion for a preliminary injunction. First, Plaintiff's substantive due process argument, asserted in his motion for preliminary injunction, is not raised in his complaint. Second, Plaintiff raises Fourth and Fifth Amendment arguments in his complaint, but not in the motion for preliminary injunction. In an abundance of caution, the Court will address the merits of all of these claims despite the discrepancy between the complaint and motion for preliminary injunction.

Beginning with Plaintiff's First Amendment claim, Plaintiff is unlikely to succeed on the merits of this claim. He argues that the Ordinance restricts his rights to free speech and expression by regulating his conduct in the County-owned park, a traditional public forum. While Plaintiff argues that the Ordinance does not pass strict scrutiny (*see* ECF No. 43 at PageID.628, 632-33), Plaintiff applies the incorrect level of scrutiny to the Ordinance. As this Court noted in its order denying Plaintiff's motion for a TRO, intermediate scrutiny, not strict scrutiny, is applicable in analyzing the content-neutral Ordinance (*see* ECF No. 7 at PageID.33-34) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) ("The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.").

Plaintiff argues that the Ordinance is not content-neutral (*see* ECF No. 43 at PageID.632) ("[T]he Ordinance is not content-neutral on its face. To the contrary, it prohibits 'vulgar,' 'lewd,' 'wanton,' and 'obscene' conduct, which appears to be a prohibition of certain conduct based on its content. Such prohibitions are not 'content-neutral.'"). Respectfully, Plaintiff misunderstands the definition of "content-neutral" in the context of free speech challenges. The Supreme Court has articulated that "the 'principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys.'" *Turner v. Brod. Sys., Inc. v. F.C.C.*, 512 US. 622, 642 (1994) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Moreover, "[t]he government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is

deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791.

In other words, when speech is regulated based on the message or subject of the speech, such a regulation is not content-neutral, and it may only be upheld if it passes strict scrutiny. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992) ("The government may not regulate [speech] based on hostility—or favoritism—towards the underlying message expressed."); *see also Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) (invalidating an ordinance that regulates signage "depend[ing] entirely on the communicative content of the sign"). Conversely, regulations that govern the manner in which speech is conveyed, rather than the message being conveyed, are content-neutral and may be upheld so long as they pass intermediate scrutiny. *See, e.g., Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984) (classifying an ordinance "prohibit[ing] the posting of signs on public property" as content-neutral because "there [was] not even a hint of bias or censorship in the City's enactment or enforcement of [the] ordinance" and because "[t]here [was] no claim that the ordinance was designed to suppress certain ideas that the City finds distasteful or that it ha[d] been applied to appellees because of the views that they express"); *Ward*, 491 U.S. at 792 (finding a sound-amplification regulation for New York City's Central Park to be content-neutral because it "ha[d] nothing to do with content"); *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 295 (1984) (accepting the lower courts' findings that a regulation prohibiting camping in national parks "is content-neutral and is not being applied because of disagreement with the message presented").

The Ordinance at issue is content-neutral on its face. It prohibits "violent, abusive, loud, boisterous, vulgar, lewd, wanton, obscene, or otherwise disorderly" conduct at Commission-owned property, which includes all Newaygo County Parks and the Dragon Trail (ECF No. 1-1). These regulations "have nothing to do with [the] content" of the speech communicated. *See Boos v. Barry*, 485 U.S. 312, 320 (1988). Rather, the Ordinance regulates *the manner* in which speech is communicated. Plaintiff has not asserted that the Ordinance "was designed to suppress certain ideas that the [County] finds distasteful," nor has he raised any evidence of bias or censorship. *See Members of City Council*, 466 U.S. at 804. The Ordinance does not favor or disfavor certain messages, content, or substance of speech; it is unquestionably content-neutral.

To illustrate the classification of this Ordinance as content-neutral, consider the following example from *Reed*, where the Supreme Court struck down a content-based ordinance that regulated the display of outdoor signs, depending on the "message or ideas" contained in the sign:

> The restrictions in the Sign Code that apply to any given sign thus depend entirely on the communicative content of the sign. If a sign informs its reader of the time and place a book club will discuss John Locke's Two Treatises of Government, that sign will be treated differently from a sign expressing the view that one should vote for one of Locke's followers in an upcoming election, and both signs will be treated differently from a sign expressing an ideological view rooted in Locke's theory of government.

*Reed*, 576 U.S. at 164. Here, the opposite is true with respect to the Ordinance at issue. Whether an individual located on Commission-owned property was communicating the time and place of a book club regarding John Locke's Two Treatises of Government, or whether another individual located on Commission-owned property was advocating for people to vote

11

for Locke's followers, both individuals' speech would be treated the same under the Ordinance: such speech is not prohibited unless the individual communicates it in a manner that is loud, violent, abusive, boisterous, etc. In other words, Plaintiff and other individuals may communicate whatever message they so please on Commission-owned property—including speech disparaging Newaygo County, speech advocating for a certain political candidate, speech broadcasting what one consumed for lunch that afternoon, speech disapproving of the Ticketmaster-Taylor Swift Eras Tour tickets debacle, and even speech informing Ethan Wright that e-bikes are not permitted on the Dragon Trail—so long as that speech is not communicated in a manner that violates the Ordinance. Because the Ordinance is content-neutral, it must therefore pass intermediate scrutiny to be lawful. *See Turner Broad. Sys.*, 512 U.S. at 642.

Under intermediate scrutiny, the content-neutral Ordinance will be sustained if "it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377 (1968). The Court finds that the Ordinance passes intermediate scrutiny. First, it is narrowly tailored—by prohibiting only certain manners of communication—to achieve the significant government interest ensuring that the public parks are an enjoyable, safe, and peaceful place for everyone to use. *See Clark*, 468 U.S. at 296 (holding that "maintaining the parks" is a substantial governmental interest); *Ward*, 491 U.S. at 797 ("The city enjoys a substantial interest in ensuring the ability of its citizens to enjoy whatever benefits the city parks have to offer, from amplified music to silent

meditation."); *Members of City Council*, 466 U.S. at 806 (citing *Kovacs v. Cooper*, 336 U.S. 77 (1949)) ("In upholding an ordinance that prohibited loud and raucous sound trucks, the Court held that the State had a substantial interest in protecting its citizens from unwelcome noise."). Second, as explained above, it is unrelated to the suppression of free expression (or in other words, it is content-neutral). And third, the incidental burden on free speech and expression is minimal when compared to the furtherance of the significant governmental interest because the Ordinance leaves open numerous alternative channels of communication. As long as an individual communicates in a respectful and appropriate manner, such speech will not violate the Ordinance. Accordingly, because the Ordinance passes intermediate scrutiny, Plaintiff's First Amendment claim is unlikely to succeed on the merits.

Moving onto Plaintiff's Fourteenth Amendment claims, Plaintiff first argues that "I did not receive procedural due process (notice, an opportunity to be heard, and an impartial tribunal) before being prohibited from entering Newaygo County Parks" (ECF No. 4). The Court previously found this argument unpersuasive because Plaintiff failed to establish that he possessed a property interest in the benefit that he is allegedly being deprived of: access to the Newaygo County Parks (ECF No. 7 at PageID.32-33). Plaintiff has again failed to make such a showing—he has failed to show (or even argue) that access to the Newaygo County Parks is a property interest created by state law. *See Goss v. Lopez*, 419 U.S. 565, 572-73 (1975). His reply brief premises his procedural due process claim as a deprivation of a liberty interest, rather than a property interest, but Plaintiff appears to misunderstand the difference between liberty and property interests (*see* ECF No. 43 at PageID.617). Plaintiff specifically

13

challenges his prohibition from Newaygo County Parks without due process. Access to a county park is not a fundamental right, deeply rooted in this Nation's history and tradition, in which one possesses a liberty interest. *See Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977). Therefore, access to the Newaygo County Parks is not a liberty interest. Because Plaintiff has failed to show that he has a property—or liberty—interest in accessing Newaygo County Parks, Plaintiff's procedural due process claim is unlikely to succeed on the merits.

Plaintiff also brings a substantive due process claim by arguing that he was unreasonably deprived of his liberty interest in free speech and expression (*see* ECF No. 4). "Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked fundamental." *Charles v. Baker*, 910 F.2d 1349, 1353 (6th Cir. 1990) (internal quotation marks omitted). The Supreme Court has established a two-step substantive due process-analysis:

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," *id.*, at 503, 97 S.Ct., at 1938 (plurality opinion); *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) ("so rooted in the traditions and conscience of our people as to be ranked as fundamental"), and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed," *Palko v. Connecticut,* 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. *Flores, supra,* at 302, 113 S.Ct., at 1447; *Collins, supra,* at 125, 112 S.Ct., at 1068; *Cruzan, supra,* at 277–278, 110 S.Ct., at 2850–2851.

*Washington v. Glucksberg,* 521 U.S. 702, 720-21 (1997).

Again, Plaintiff's claim is unlikely to succeed on the merits. True, the First Amendment rights to free speech and expression are liberty interests deeply rooted in this

nation's history that state officials may not infringe upon. *See, e.g., Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 500 (1952) ("[T]his Court held that the liberty of speech and of the press which the First Amendment guarantees against abridgment by the federal government is within the liberty safeguarded by the Due Process Clause of the Fourteenth Amendment from invasion by state action."). However, as articulated above, the Ordinance does not deprive Plaintiff of his First Amendment rights, and thus, it does not implicate Plaintiff's liberty interests in free speech and expression. *See Neinast v. Bd. of Trs. of Columbus Metro. Library*, 190 F. Supp. 2d 1040, 1048 (S.D. Ohio 2002) (holding that a regulation requiring people to wear shoes in the public library survives intermediate scrutiny and does not violate the First Amendment, and in turn, that the regulation does not violate substantive due process because it does not implicate a fundamental interest). Accordingly, Plaintiff's substantive due process claim is not likely to succeed on the merits.

Finally, although not mentioned in his motion for a preliminary injunction, Plaintiff's complaint also brings claims under the Fourth and Fifth Amendments. He alleges a "substantive violation of [his] right to privacy from governmental intrusion" (ECF No. 1 at PageID.4). Both of these claims are unlikely to succeed on the merits. The Fourth Amendment protects individuals from unreasonable searches and seizures by government actors. U.S. Const. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). In the present matter, no search or seizure, within the context of the Fourth Amendment, occurred, and Plaintiff has failed to

provide any facts in his complaint or motion for preliminary injunction to support such a claim. Therefore, the Fourth Amendment claim is unlikely to succeed on the merits. As for the Fifth Amendment claim, the Fifth Amendment Due Process Clause "circumscribes only the actions of the federal government." *Scott v. Clay Cty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). Because the three Defendants in this matter are all state actors employed by Newaygo County, a local government, the Fifth Amendment is inapplicable in this matter. As such, Plaintiff's Fifth Amendment claim is also unlikely to succeed on the merits.

In sum, because none of Plaintiff's claims are likely to succeed on the merits, the first factor weighs against granting Plaintiff's motion for a preliminary injunction.

## B. Irreparable Harm

Plaintiff asserts that, by being prohibited from Newaygo County Parks, he "has suffered irreparable injury for over 85 days and suffers a substantial continued threat of irreparable injury if the injunction is not granted" (ECF No. 43 at PageID.638). Further, Plaintiff asserts that there exists a presumption of irreparable injury when a violation of his civil rights has occurred (*see* ECF No. 4 at PageID.25) (citing *Mayerova v. Eastern Mich. Univ.*, 346 F. Supp. 3d 983, 998 (E.D. Mich. 2018)).

Plaintiff has failed to assert that he has suffered, and will continue to suffer an irreparable injury absent an injunction, by being banned from Newaygo County Parks. First, if Plaintiff is successful in this lawsuit and proves that his prohibition from the parks is unlawful, he has not argued that his injuries cannot be properly remedied by compensatory damages. *See Bonnell v. Lorenzo*, 241 F.3d 800, 825 (6th Cir. 2001) ("[W]here the injury is purely economic in nature, [injunctive relief] is not necessary in any event."). Second, as

explained above, at this stage in the litigation, Plaintiff has failed to show that his civil rights have been violated. Thus, there is no presumption of irreparable injury. *See id.* at 809 (explaining that if success on the merits is unlikely, courts are not required to issue an injunction); *cf. Elrod v. Burns*, 427 U.S. 347, 373 (1976) (finding irreparable injury where the plaintiffs were likely to succeed on the merits of their First Amendment claim). As such, this factor also weighs against granting injunctive relief.

### C.  Substantial Harm to Others & Public Interest

Finally, the last two factors also weigh against issuing an injunction permitting Plaintiff to enter Newaygo County Parks. The public interest would not be served, and others could be substantially harmed, if Plaintiff is no longer prohibited from entering Commission-owned property. As this Court articulated in its order denying Plaintiff's motion for a TRO, "Defendants prohibited Plaintiff from entering Newaygo County Parks due to Plaintiff's disruptive behavior—behavior that would negatively impact individuals trying to use the public parks. The public could be harmed by Plaintiff's disruptive behavior if he is permitted to enter Commission-owned property." (ECF No. 7 at PageID.34). The Court reiterates these findings. While there are factual disputes left to be resolved, if Plaintiff—a private citizen—did indeed take it upon himself to enforce a County Ordinance to the point where he chased another individual for five miles down the Dragon Trail while berating the individual and causing the police to be called due to safety concerns, Plaintiff's ban from Commission-owned property may be justified. Thus, the last two factors also weigh against granting the requested injunctive relief.

Because all four factors weigh against issuing the requested injunctive relief—an extraordinary remedy—the Court will deny Plaintiff's motion for a preliminary injunction. *See Overstreet*, 305 F.3d at 573.

### III.    Motion for Leave to File First Amended Complaint

Plaintiff has also moved for leave to file a first amended complaint (ECF No. 37). The proposed amended complaint (ECF No. 37-1) vastly expands upon Plaintiff's original complaint: It adds twenty-nine more defendants and seven new claims. Because the proposed amended complaint is futile and it appears to be filed in bad faith, the Court will exercise its discretion and deny Plaintiff's motion for leave to amend his complaint.

Pursuant to Fed. R. Civ. P. 15(a)(2), after the time has expired for a party to amend a pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Although courts should "freely give leave when justice so requires," the determination of whether the motion for leave to amend is to be granted is left to the sound discretion of the district court. *See Forman v. Davis*, 371 U.S. 178, 182 (1962). When determining whether a party should be permitted to amend a pleading, courts should consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* Further, when a proposed amended complaint would not survive a motion to dismiss, the district court may properly deny the amendment. *See Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980).

Plaintiff's motion does not even attempt to meet Rule 15's standard for leave to amend. Rather, it summarizes Plaintiff's proposed amended complaint, which fails to inform the Court why "justice so requires" this Court to accept Plaintiff's proposed amended complaint. Plaintiff indicates that he "seeks to amend the Complaint to make minor corrections and other changes" to the original complaint (ECF No. 37 at PageID.518). "Minor corrections" is a wholly inaccurate characterization of the amended complaint compared to the original complaint: his original complaint names three defendants, while his amended complaint names thirty-two; his original complaint raises four claims, while his amended complaint raises eleven; his original complaint contains ten pages, while his amended complaint contains thirty-four. To characterize the amended complaint as a making of "minor corrections" to the original complaint is a gross understatement, and in any event, the Court is not convinced this reason is sufficient under Rule 15(a)(2) to allow amendment.

Plaintiff also seeks to amend the complaint to include "facts taken from interactions since August 16, 2022 with Newaygo County officials and employees" (*Id.* at PageID.516). But even with these additional facts, Plaintiff's amended complaint is futile and would not survive a motion to dismiss. For example, the proposed amended complaint adds two counts for malicious prosecution in violation of the Fourth Amendment and in violation of Mich. Comp. Laws. § 600.2907. To succeed on both of these claims, Plaintiff must prove that a criminal prosecution was initiated against him. *See Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010), *Walsh v. Taylor*, 689 N.W.2d 506, 516-17 (Mich. Ct. App. 2004). Plaintiff appears to be under the incorrect impression that because he violated Section 18 of

Newaygo County Ordinance #01/2020, Defendants "accused, sentenced, and convicted Plaintiff of a misdemeanor" (ECF No. 37-1 at PageID.547). However, Plaintiff has provided no evidence that any criminal proceedings, arising out of the August 5th incident, have ever been initiated against him.[3] These claims are futile. For this same reason, Plaintiff's Sixth Amendment Confrontation Clause claim is also futile. "*In all criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with witnesses against him." U.S. Const. amend. VI (emphasis added). Without evidence in the record that criminal proceedings have been commenced against Plaintiff for his violation of Newaygo County Ordinance #01/2020, his Confrontation Clause claim also would not survive a motion to dismiss.

Further, Plaintiff's proposed amended complaint raises a new claim for a *Monell* violation.[4] But the barebones, conclusory allegations that Newaygo County created unconstitutional policies and failed to adequately train its officials, without factual support, would not survive a motion to dismiss (*see* ECF No. 37-1 at PageID.541). Plaintiff merely lists several "acts and omissions" of individual Defendants, acting in their official capacities,

---

[3] The Court acknowledges that Newaygo County Ordinance #01/2020 contains the following language:

> *VIOLATION OF RULES*
>
> a) In addition to any administrative penalty provided for herein, any person violating any provision of the above rules shall be guilty of a misdemeanor and upon conviction, therefore, shall be fined not more than $100. Any person violating any portion of this ordinance may also be imprisoned in the County jail for a period not exceeding 90 days, at the discretion of the court.
>
> b) Violation of the above rules gives the Commission the right to remove the responsible individual or group without any refund. Violators may also be subject to civil penalties and trespass.

*Newaygo County Michigan,* Parks & Recreation, https://www.newaygocountymi.gov/departments/parks/parks-recreation/ (scroll to the bottom of the page; then click on and download "Park Ordinance & Rules") (last visited Dec. 12, 2022). The language regarding being "guilty of a misdemeanor" for violating the Ordinance is potentially problematic. However, there is no evidence in the record that Newaygo County has commenced criminal proceedings against Plaintiff for a violation of the Ordinance. Despite the above language, Plaintiff's malicious prosecution claims would therefore not survive a motion to dismiss.

[4] Plaintiff appears to improperly include several *individual* Defendants in this claim.

in which he argues Defendants violated his constitutional rights (*see id.* at PageID.541-42). But even if Defendants engaged in unlawful activity, it is well-settled that municipalities cannot be liable for the actions of its employees merely arising out of their employment position in the municipality. *See Monell v. Dept' of Social Servs.*, 436 U.S. 658, 691 (1978) ("In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").[5] Therefore, this claim is also futile.

With respect to the numerous defendants Plaintiff seeks to add to this litigation in the amended complaint, Defendants have pointed out several issues in regard to adding these defendants. For example, one defendant that Plaintiff seeks to add, Burt Cooper, apparently passed away in June 2022, two months before the incident giving rise to this litigation occurred (*see* ECF No. 44 at PageID.686). He also seeks to add Consumers Energy, which Defendants assert has no relationship to Newaygo County; "Newaygo County Parks and Rec Commission Board," which his not a legal entity; and numerous individuals who were not employees or officials of the County during the time of the alleged incident. Plaintiff seemingly acknowledged that his proposed amended complaint names improper defendants because he "plan[s] on withdrawing" the claims against two named defendants "[o]nce [the] amended complaint becomes the operative pleading" (ECF No. 57-2 at PageID.821). Due

---

[5] The remaining claims that Plaintiff's proposed amended complaint raises are for First, Fourth, and Fourteenth Amendment claims, similar to what he raised in his original complaint. As the Court articulated above, these claims are not likely to succeed on the merits, and in the Court's judgment, it is unnecessary to analyze all of these claims with regard to futility. There are numerous reasons why the Court, in its discretion, will deny Plaintiff's motion for leave to amend his complaint. Further, Plaintiff is not prejudiced by the denial of the motion for leave to amend because his original complaint contains First, Fourth, and Fourteenth Amendment claims, which are currently proceeding through discovery.

to the tenuous relationship (if there is any relationship at all) between several of the newly added defendants and Plaintiff's claims, the Court is doubtful that the claims against these defendants would withstand a motion to dismiss.

Not only will the Court deny the motion for leave to file the first amended complaint because of its futility, but in the Court's judgment, Plaintiff seeks to amend the complaint in bad faith. Plaintiff's original complaint, filed on August 16, 2022, solely seeks declaratory and injunctive relief (*see* ECF No. 1 at PageID.9). Conversely, his proposed amended complaint seeks a whopping $205,000,000 in damages: $5,000,000 for pain and suffering, and $200,000,000 for punitive damages (*see* ECF No. 37-1 at PageID.552). As evidenced by Plaintiff's own communications with defense counsel, Plaintiff has demanded that Defendants settle this matter, and when Defendants decline, Plaintiff continually increases his claim for damages. On September 30, 2022, Plaintiff indicated that he would be "amending the claim for $2,000,000 in compensatory damages" because "[t]he deadline has passed for [Defendants] to settle this without compensation" (ECF No. 28-1 at PageID.403, 408). He then increased this number to $20,000,000 the following day, noting that "[Defendants] had 50 days to handle this for free" (*Id.* at PageID.402). Finally, on October 2, 2022, Plaintiff increased his claim for damages to $200,000,000, warning that "[t]his is about to get really expensive for [Defendants]" (*Id.* at PageID.399). In an email to defense counsel, Plaintiff even acknowledged that he does not expect to receive $200,000,000 in damages; rather, he is going after Defendants' insurance carrier:

> Your clients are either going to give me my rights back or the jury will. Money.
> Thats [sic] a secondary issue farther down the list. Obviously im [sic] not
> getting 200 million dollars and if I cared about money more than my rights I

> would not have sued solely for injunctive relief. Plus, as your big mouth client
> told me. They have insurance for this.

(ECF No. 57-2 at PageID.822).

The Court finds that Plaintiff seeks to amend his complaint in bad faith by continually raising his claim for damages when Defendants refuse to settle this matter. Therefore, due to Plaintiff's bad faith and because the proposed amended complaint is futile,[6] justice does not require the Court to allow Plaintiff to amend his complaint. The Court will, in its discretion, deny Plaintiff's motion for leave to file a first amended complaint.[7]

## IV.    Motion for Sanctions

Finally, Defendants have filed a motion for sanctions, pursuant to Fed. R. Civ. P. 11. Defendants seek sanctions "for their reasonable fees and costs incurred in defending this baseless action," (ECF No. 27 at PageID.271), and implicitly, for dismissal with prejudice (*see* ECF No. 44 at PageID.690-93). They request sanctions for two reasons: (1) because Plaintiff's claims "lack merit and are frivolous," and (2) because "Plaintiff's purpose of filing this lawsuit is to harass the county and needlessly increase the costs of litigation" (ECF No. 27 at PageID.266, 270).

Under Rule 11,

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge,

---

[6] Additionally, there is one final reason why the Court would deny Plaintiff's motion for leave to amend his complaint. The Court has doubts that the rambling, narrative-like amended complaint complies with Fed. R. Civ. P. 8(a)(2).

[7] Plaintiff has also filed a motion for leave to reply to Defendants' response to Plaintiff's motion for leave to file a first amended complaint (ECF No. 50). Defendants oppose Plaintiff's motion for leave to reply (ECF No. 57). Because the proposed reply brief (ECF No. 50-1) would not assist the Court in the adjudication of Plaintiff's motion for leave to amend the complaint, the Court will deny Plaintiff's motion for leave to reply. *See Costello v. Patterson Dental Supply, Inc.*, No. 5:06-CV-213, 2007 WL 4178942, at *3 (W.D. Mich. Nov. 20, 2007); *see also* W.D. Mich. LCivR 7.3(c).

information, and belief, formed after an inquiry reasonable under the
circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause
unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing
law or by a nonfrivolous argument for extending, modifying, or reversing
existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so
identified, will likely have evidentiary support after a reasonable opportunity
for further investigation or discovery; and

Fed. R. Civ. P. 11(b)(1)-(3). This Rule specifically applies to attorneys *and* "unrepresented"

parties. *See id.* Rule 11 allows courts to impose sanctions "if a reasonable inquiry would have

disclosed that the pleading, motion or other paper was not well-grounded in fact." *Mann v.*

*G & G Mfg., Inc.*, 900 F.2d 953, 959 (6th Cir. 1990); *see also* Fed. R. Civ. P. 11(c) ("If, after

notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has

been violated, the court may impose an appropriate sanction on any attorney, law firm, or

party that violated the rule or is responsible for the violation.").

"Rule 11 sanctions are appropriate when the district court determines that [a party's]

conduct is not reasonable under the circumstances." *Tahfs v. Proctor*, 316 F.3d 584, 594

(6th Cir. 2003) (internal quotation marks omitted). When analyzing "an objective standard

of reasonableness," the inquiry is "judged by objective norms of what reasonable [parties]

would have done." *In re Big Rapids Mall Assocs.*, 98 F.3d 926, 930 (6th Cir. 1996). Further,

"[a] good faith belief in the merits of a case is insufficient to avoid sanctions." *Tahfs*, 316

F.3d at 594. District courts are given broad discretion in determining whether to award

sanctions under Rule 11. *See id.*

At this time, the Court finds that sanctions are not warranted under Rule 11. To the extent that Defendants seek sanctions—either monetary or dismissal—because Plaintiff's claims are frivolous, the Court notes the difference between frivolous and unpersuasive arguments. Although, as explained above, Plaintiff's claims may not hold water, they are not necessarily frivolous. *See United States v. Heavrin*, 330 F.3d 723, 729 (6th Cir. 2003) (defining "frivolous" as "lacking a reasonable legal basis"). Moreover, even if a complaint would not withstand a motion to dismiss, it does not necessarily follow that sanctions are warranted for filing such a complaint. *See Tahfs*, 316 F.3d at 595 ("A complaint does not merit sanctions under Rule 11 simply because it merits dismissal pursuant to Rule 12(b)(6)."). Therefore, the Court finds that Plaintiff's complaint does not rise to the level of frivolity that warrants sanctions under Rule 11.

Defendants also argue that Plaintiff should be sanctioned for needlessly increasing the costs of this litigation and for harassing the County. Defendants support this assertion with hundreds of pages of communication between them and Plaintiff, in which Plaintiff communicates with County officials, Mr. Wright, and Defendants' attorneys in an inappropriate and concerning manner (*see* ECF Nos. 26, 27, 28, 40, 44, 57). The following examples provide a snapshot into these communications:

Emails to Michael Homier and Leslie Abdoo, counsel for Defendants:

- "If you wanted a legal battle, you definitely picked the right person for that. Im [sic] going to systematically destroy any credibility you and your clients have. Because they are cowards and liars. You are protecting lying cowards, for money. You should move to North Korea since you don't take your responsibilities as a US Citizen to protect and uphold the constitution serious. . . . If you need some help moving to North Korea I will help you pack." (ECF No. 28-1 at PageID.383).

- "I eat lawyers like you for lunch. No law degree. Straight facts, bro. The best part is all I have to do is cite case law in the Sixth and watch you get absolutely destroyed by the judge for even fighting this case." (ECF No. 28-1 at PageID.389).

- "Thats [sic] why you will be a public defender after this case. Your arguments are trash." (ECF No. 28-1 at PageID.401).

- "Of course I'm pissed, think you are trash lawyers, and am going to continue to absolutely destroy you every chance I can get. YOU put yourself in this position when you failed to advise your clients to let me use the park and change the ordinance to make it pass constitutional scrutiny." (ECF No. 40-5 at PageID.589).

- "I suggest you read this very closely and advise your clients to follow the law. Or they will have more litigation to deal with . . . I suggest you apologize for attempting to violate my rights . . . You've been warned." (ECF No. 21-2 at PageID.134).

- "Thats [sic] why you are shit lawyers who should be fired immediately and sent to work as public defenders. You think you are above the law and rules. SURPRISE SURPRISE, youre [sic] not. And those idiots who you represent are not either. They are corrupt public servants. So get your popcorn, cause we are going to be here until this is resolved. Im [sic] not going anywhere anytime soon." (ECF No. 57-2 at PageID.816).

- An email to Mr. Homier with the subject line "Safety First" that said, "I hope you are able to find a safe space to consume this information" and attached a link to Plaintiff's personal Facebook page, which included the following image:



(ECF No. 28 at PageID.357).

Email to Amanda Zint, Legal Assistant at Foster Swift:

- "Katherine Henrichs [Plaintiff's girlfriend] will not be testifying at any time. Any attempt to contact or bring her into this case will immediately end any chance of a settlement. Fuck around and find out." (ECF No. 40-5 at PageID.584).

Text messages to Ethan Wright, a potential witness in this matter:

- "Lying under oath is a crime bro. You just signed a piece [of] paper with your name on it lying to a federal judge! My girlfriend is an attorney for the federal government. You will be punished for lying under oath." (ECF No. 28-1 at PageID.387).

- "You signing that paper was the best thing that could ever happen to me. Now I get to get you in trouble for lying under oath . . . Now you're going to get arrested for lying under oath by signing that paper that is complete lies." (ECF No. 28-1 at PageID.386).[8]

- "Now I get to use your own affidavit against you and sue you." (ECF No. 28-1 at PageID.384).

- "Im [sic] deposing you for 7 hours under oath." (ECF No. 27-5 at PageID.336).

Emails to various County officials, including named Defendants in this matter:

- "Its [sic] time to put your money where your mouth is. Failure to meet these conditions in the time requested will also lead in the commencement of a recall campaign against you. You have nowhere to run, and nowhere to hide." (ECF No. 28-1 at PageID.420).

- "Not only am I relentless. I am right. You will be proven to be a liar. As I have stated to you directly and publicly. Put your money where your mouth is an sue me for Defamation if im [sic] lying. The truth will set you free." (ECF No. 21-2 at PageID.117).

These communications merely scratch the surface of the bizarre, outlandish, and concerning communications that Plaintiff has sent in relation to this case. It is totally inappropriate for Plaintiff to be communicating with named Defendants, who are

---

[8] Plaintiff has allegedly "forwarded" Mr. Wright's affidavit to the "Attorney General" and FBI for investigation (*see* ECF No. 28-1 at PageID.407).

represented by counsel, and potential witnesses in this matter. Moreover, if Plaintiff was an attorney, his communications with defense counsel would certainly violate the Michigan Rules of Professional Conduct. One of Defendants' attorneys even "brought a male associate to the Rule 16 Scheduling Conference specifically for safety reasons to escort her to her vehicle after the hearing. Security walked the two attorneys out of the courthouse following the hearing." (ECF No. 40 at PageID.566 n.2).

The Court understands Defendants' frustration in dealing with Plaintiff's antics. However, although Plaintiff's speech tiptoes up to the line, in the Court's judgment, it does not quite cross the line from protected to unprotected speech. Plaintiff's speech is certainly demanding and unprofessional, but it never quite reaches the point of threatening, let alone true threats, which are not protected by the First Amendment. *See Virginia v. Black*, 538 U.S. 343, 359 (2003) ("'True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."). The Court is not inclined to sanction Plaintiff for speech that is protected by the First Amendment.[9]

However, the Court notes that Defendants' motion for sanctions will be denied without prejudice, and the Court will order Plaintiff to conduct himself in a civil and professional manner in this litigation henceforth. *See Fathi v. Saddleback Valley Unified Sch. Dist.*, No. 8:20-cv-544-SB-DFM, 2020 WL 7315462, at *8 (C.D. Cal. Oct. 28, 2020)

---

[9] Defendants cite several cases in which courts dismissed a case due to the inappropriate behavior of the plaintiff (*see* ECF No. 44 at PageID.690-91). However, none of these cases were dismissed pursuant to Rule 11. *See Petito v. Brewster*, 562 F.3d 761 (5th Cir. 2009); *Fathi v. Saddleback Valley Unified Sch. Dist.*, No. 8:20-cv-544-SB-DFM, 2020 WL 7315462 (C.D. Cal. Oct. 28, 2020); *Nguyen v. Biter*, No. 1:11-cv-00809, 2015 WL 366932 (E.D. Cal. Jan. 27, 2015); *Nelson v. Eaves*, 140 F. Supp. 2d 319 (S.D.N.Y. 2001); *Cameron v. Lambert*, No. 07 Civ. 9258(DC), 2008 WL 4823596 (S.D.N.Y. Nov. 7, 2008).

(ordering the plaintiff to "conduct himself at all times in this litigation in a civil and professional manner: a. Plaintiff shall not threaten Defendant's counsel or any family members and shall not use harassing or abusive language in communicating with Defendant's counsel; and b. Plaintiff shall treat Defendant's counsel with civility at all times"). The Court cautions Plaintiff regarding his behavior: if Plaintiff fails to conduct himself civilly and professionally in this litigation, the Court will not hesitate to sanction Plaintiff, including in the form of dismissing this matter. *See id.* at *7 ("Although a *pro se* litigant may be entitled to great leeway by the Court when construing his filings, that does not excuse him from following basic rules of ethics and civility—or the law."); *Nguyen v. Biter*, No. 1:11-cv-00809, 2015 WL 366932, at *7 (E.D. Cal. Jan. 27, 2015) ("Plaintiff is mistaken that proceeding pro se shields him from the consequences of his actions or excuses misbehavior. It does not. Parties and counsel have a duty to behave civilly and respectfully toward one another, and conduct to the contrary is sanctionable where it undermines the integrity of judicial proceedings.").

Further, in an exercise of its inherent discretion to manage its docket, the Court will prohibit Plaintiff from contacting or communicating with any named Defendants regarding this matter; he may only contact their attorneys. And finally, although Plaintiff may contact Mr. Wright, a potential witness, for the sole purpose of discussing discovery issues in this case, he is not to do so in a demeaning or unprofessional manner. As with defense counsel, Plaintiff must treat Mr. Wright with respect, and he must conduct himself civilly and professionally when communicating with Mr. Wright. Failure to do so may result in sanctions.

<h1 style="text-align:center">V.     Conclusion</h1>

In accordance with this opinion,

**IT IS HEREBY ORDERED** that Plaintiff's motion for a preliminary injunction (ECF No. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for sanctions (ECF No. 26) is **DENIED** without prejudice. Plaintiff is also ordered to conduct himself at all times in this litigation in a civil and professional manner. Plaintiff shall not harass, berate, demean, threaten, or use abusive language in communicating with defense counsel, and he shall treat defense counsel with civility at all times. Plaintiff may communicate with Ethan Wright for the sole purpose of discovery, but he shall also treat Mr. Wright with civility at all times. Plaintiff is prohibited from directly contacting any named Defendant regarding this litigation and the related factual issues. Failure to comply with this order may result in sanctions, including dismissal of this litigation.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a first amended complaint (ECF No. 37) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a reply (ECF No. 50) is **DENIED**.

**IT IS SO ORDERED.**

Date:  December 22, 2022                          /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge