```
                  UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF MICHIGAN
                        SOUTHERN DIVISION


_____

LANE MYERS,

          Plaintiff,

     v.                                  File No. 1:22-cv-00748

CHRISTOPHER WREN, ET AL.,

          Defendants.
_____/



                            Hearing

Before

                  THE HONORABLE PHILLIP GREEN
                  United States Magistrate Judge
                        October 17, 2022


                          APPEARANCES

In Pro Per:          Mr. Lane Myers
                     1583 Grange Road
                     Trenton, MI  48183
                     (313) 587-1880
                     meyerlansky879@gmail.com

For the Defendant:   Ms. Leslie Ann Dickinson
                     Mr. Jim Scales
                     Foster, Swift, Collins & Smith, P.C.
                     1700 E. Beltline Avenue, Ste. 200
                     Grand Rapids, MI  49525
                     (616) 726-2232
                     ldickinson@fosterswift.com


Recorded By:         Digitally Recorded

Courtroom Deputy:    A. Doezema

Transcribed By:      Bonnie L. Rozema, CER 5571
```

TABLE OF CONTENTS

<u>WITNESSES</u>:                                                    <u>PAGE</u>

None



<u>EXHIBITS</u>:                                                     <u>IDENTIFIED</u>

None

1    Grand Rapids, Michigan

2    Monday, October 17, 2022 - 1:00 p.m.

3              THE COURT:  We are, excuse me.  We are here in

4         the matter of Lane Myers -- excuse me.  Got a little bit of

5         a frog in my throat.  We're here in the matter of Lane

6         Myers versus Christopher Wren, et al., case number

7         22-cv-748.  This is the date and time set for a Rule 16

8         scheduling conference.  Could I have appearance of counsel

9         for the defendants, please.

10             MS. DICKINSON:  Yes, your Honor, Leslie

11        Dickinson appearing on behalf of the defendant -- the

12        defendants in this matter.  Seated to my right is Mr. Jim

13        Scales.  He is an associate at our firm.  He's just up here

14        observing today.

15             THE COURT:  All right, very good.  Good

16        afternoon to you.  And I take it you are Mr. Myers?

17             MR. MYERS:  Yes, sir.  I'm Lane Myers.

18             THE COURT:  All right, good afternoon --

19             MR. MYERS:  Thank you.

20             THE COURT:  -- to you, Mr. Myers.  All right, as

21        I understand it, excuse me, this case arises from a no

22        trespass letter that came about as a result of an incident

23        that apparently took place on August 5th.  The no trespass

24        letter prohibits Mr. Myers from entering the property of

25        the Newaygo County park, I believe Sandy Beach Park?

1           MR. MYERS:  Yes, sir.

2           THE COURT:  And Mr. Myers is alleging a number

3     of violations of his constitutional rights.

4           MR. MYERS:  Yes, sir.

5           THE COURT:  I realize this is a very simplistic

6     explanation of the case, Mr. Myers.  Is there anything else

7     you think I need to know?

8           MR. MYERS:  You're pretty much, you know, this

9     isn't necessarily the place to get into legal argument.

10    This is --

11          THE COURT:  You always stand when you address

12    the Court.

13          MR. MYERS:  My apologies.

14          THE COURT:  Okay.

15          MR. MYERS:  Your Honor, this is not necessarily

16    the place to make legal arguments, but you pretty much

17    summed it up.  I believe the letter that was sent to me

18    cites a law that is -- doesn't pass constitutional

19    scrutiny.  They define my -- they haven't defined my

20    actions.  They just said I'm banned for my actions, and I

21    believe that the actions they've referred to in their

22    incident reports I've got through their e-mails from FOIA,

23    they're -- they're claiming that I -- my -- I'm banned, and

24    I believe that's based on my free speech.  So I believe

25    everything I said was protected free speech.  All my

1    actions are protected by the Constitution.

2            They obviously see different.  I don't know if

3    they see different, but I believe they're -- the people

4    they represent see different.

5            THE COURT:  Yep.

6            MR. MYERS:  But they represent the people that

7    see different.

8            THE COURT:  All right, thank you, Mr. Myers.

9    Appreciate it.

10           Ms. Dickinson, anything else you think I need to

11   know?

12           MS. DICKINSON:  Just briefly, your Honor.  And

13   as I think we pointed out in our status report that we

14   filed with the court, I do also want to note that we

15   included in that status report, it was filed not as a joint

16   status report, it was filed independently when we scheduled

17   a phone conference with Mr. Myers to prepare that joint

18   status report.  Mr. Myers indicated to my co-counsel,

19   Mr. Homier, that he was recording the telephone

20   conversation and that he intended to post the conversation

21   on YouTube, to which, of course, counsel for the defendants

22   did not consent.  We terminated the call and filed our own

23   status report for the Court, which includes our statement

24   of the case, as well as the facts and arguments that we

25   believe are relevant to the claims that Mr. Meyer makes in

1        his complaint.

2                    MR. MYERS:  Myers.

3                    MS. DICKINSON:  Mr. Myers makes in his

4        complaint.  Those claims, in our opinion, include that, and

5        this is going to be filed in tenet with a Rule 11 motion

6        for sanctions, given that Mr. Myers has continued to

7        harass, verbally abuse county employees since he's filed

8        this complaint, including the defendants' counsel, myself

9        and Mr. Homier, as well as the potential witnesses in this

10       case, including Mr. Wright, who was the other biker

11       involved in the situation.

12                    I can go into more detail on that, but I think

13       we'll be filing it later.

14                    THE COURT:  I don't think it's necessary.  I did

15       read all that in the joint -- not the joint, your status

16       report.  Thank you.

17                    MS. DICKINSON:  You're welcome.  Thank you, your

18       Honor.

19                    THE COURT:  So Mr. Myers, normally the parties

20       get together ahead of time and they discuss these matters

21       and submit a joint status report.  So I -- I'm going to

22       proceed, but I don't have input for you at this point.

23                    MR. MYERS:  I had one filed also.

24                    THE COURT:  I'm sorry?

25                    MR. MYERS:  I filed the joint status report

1          also.

2                    THE COURT:  All right, I didn't see that.

3                    MR. MYERS:  Oh, yeah.  It's right here.  I filed

4          it the same -- the day --

5                    THE COURT:  Hang on.

6                    MR. MYERS:  -- it was -- my bad.

7                    THE COURT:  We're going to look.

8                    MR. MYERS:  The same day they allege, you know,

9          when I hung -- they hung up on me, I filed one, too.  They

10         also didn't participate in a Rule 26(f).

11                   THE COURT:  Well, I think that's --

12                   MR. MYERS:  That's before the --

13                   THE COURT:  -- Rule 26(f) conference is the

14         conference where the parties meet to discuss the joint

15         proposed scheduling.

16                   MR. MYERS:  Crickets.  No responses.

17                   THE COURT:  Okay.  We don't have that,

18         Mr. Myers.

19                   MR. MYERS:  It was filed.  It's on the docket.

20                   THE COURT:  We're looking at the docket now.  We

21         don't see it.  Do you have a copy with you?

22                   MR. MYERS:  I have it, if I had my -- yeah, I do

23         have a copy, your Honor, and --

24                   THE COURT:  And just the, do you have the ECF

25         number, the docket number that it was filed under?

1          MR. MYERS:  I -- I filed it down at the clerk

2     on -- on October 10th within 14, you know, within the days

3     that it said on there that it had to be filed by.  I filed

4     it on -- I filed it the day it was due.

5          THE COURT:  Okay.

6          MR. MYERS:  Because they sent, prior to that

7     phone call, they sent me their proposed, you know, their --

8     what they -- like they sent me an e-mail showing what they

9     were going to file, and then we were supposed to have a

10    phone call in an hour and talk about it, but they had a lot

11    of misrepresentations about me on the thing they sent me,

12    so told them I'd be recording it because I would need to --

13    it's me, by myself.  I don't have a law firm.  I'm going to

14    need to go back and fill in 13 things here, so I'm going to

15    look at it.  And yeah, I'm going to play it.  It's public.

16    This whole case is public.

17          THE COURT:  Okay.

18          MR. MYERS:  I know they don't have to

19    participate at that point, but it doesn't make the case go

20    any smoother.

21          THE COURT:  Okay.  So we -- we don't show this.

22          DEPUTY CLERK:  Well, we do.  It was titled

23    something really different, that's the problem.

24          THE COURT:  Okay.  So we do see that you did

25    file this, Mr. Myers.

1          MR. MYERS:  It's titled joint status report.

2          THE COURT:  Yeah.  I'm going to give this back

3     to you, since we do have that.  You did file that.

4          MR. MYERS:  Thank you.

5          THE COURT:  And thank you for showing that to me

6     so we could figure out --

7          MR. MYERS:  Yep.

8          THE COURT:  -- apparently it was titled

9     something different.

10         MR. MYERS:  I gave them a copy, too.

11         THE COURT:  Okay.  It was titled something

12    different on the docket, and that's why we didn't -- we

13    didn't see it.

14         Okay, so let's -- what I want to do today is

15    simply talk about proposed schedule going forward, okay?

16    We're not -- this is not the time to make substantive

17    arguments, but rather to simply get a scheduling order

18    issued.

19         Now Mr. Myers, one of the things I need to raise

20    with you, and but I want to preface what I'm saying by

21    emphasizing in no way am I trying to convince you one way

22    or the other, all right?  But I need to explain to you that

23    this case is assigned to District Judge Paul Maloney.  He

24    was appointed by the president of the United States and

25    confirmed by the senate, and he serves a lifetime tenure,

1       means he can never be fired, no matter what he does, he

2       keeps his job, he keeps his salary.

3                   MR. MYERS:  Your Honor, just to -- my

4       girlfriend's a law clerk --

5                   THE COURT:  Okay.

6                   MR. MYERS:  -- for a federal judge.

7                   THE COURT:  All right, good.

8                   MR. MYERS:  I'm aware of everything.

9                   THE COURT:  Okay, well, that's good.  But I need

10      to make sure to explain something to you because I need a

11      decision from you.  But I'm not trying to influence you.

12                  MR. MYERS:  I understand you, you want to try to

13      make it go smoother with the judge versus the magistrate.

14      There's some things that by agreeing to the magistrate,

15      legal remedies and stuff I give up, and as far as you can

16      hear the, you know, motions and different appeals and

17      things like that --

18                  THE COURT:  All I need to know is whether you

19      consent or not.  I don't need to know your reasons.

20                  MR. MYERS:  A judge.

21                  THE COURT:  Okay.

22                  MR. MYERS:  Thank you.

23                  THE COURT:  So the case will stay with Judge

24      Maloney.

25                  MR. MYERS:  Thank you.

1          THE COURT:  All right.  Let's look at, now

2     Mr. Myers asserts this is a jury trial.  I don't believe

3     that's contested.  Is it, Ms. Dickinson?

4          MS. DICKINSON:  Yes, your Honor.  To the extent

5     that the -- that the case involves claims that are either

6     equitable or injunctive relief in nature.

7          THE COURT:  There are some claims going to the

8     jury.

9          MS. DICKINSON:  Correct.  To be --

10         THE COURT:  That's all I need to know --

11         MS. DICKINSON:  Yes.

12         THE COURT:  -- at this point, yeah.

13         MS. DICKINSON:  To the extent that there is

14     damage claims, we would consent to a jury trial.

15         THE COURT:  The only reason I'm raising it is

16     because we put in the case management order jury so that

17     they'll schedule it as a jury trial.

18         MR. MYERS:  There's an amended complaint being

19     filed by the end of the week that's going to add damages.

20         THE COURT:  Mr. Myers, you need to wait --

21         MR. MYERS:  My bad.

22         THE COURT:  -- I'll give you --

23         MR. MYERS:  My bad.  My bad.

24         THE COURT:  -- a chance to speak.

25         MR. MYERS:  I just thought it helped their --

```
1                    THE COURT:  Please sit down right now.  All

2          right.  Now Ms. Dickinson, I know you indicated you thought

3          the trial would last about a day, from your perspective.

4          Mr. Myers, have -- I realize that you're not an attorney,

5          at least I don't think you are.  Do you have a sense of how

6          long you think the trial will take?

7                    MR. MYERS:  I put three, because up to this

8          point I've seen no cooperation, so I have no idea how, you

9          know, and for --

10                   THE COURT:  Okay.

11                   MR. MYERS:  -- I'm just -- I'm leaving myself a

12         margin for error.

13                   THE COURT:  Okay.  I think that's reasonable.

14                   MR. MYERS:  Yep.

15                   THE COURT:  And I'm going to put, I think --

16                   MR. MYERS:  It really should take less.

17                   THE COURT:  I agree.  Yeah, I agree.  All right,

18         now Mr. Myers, I believe you've indicated that you wish to

19         file a motion to amend your complaint.

20                   MR. MYERS:  Yes, sir.

21                   THE COURT:  Is that correct?

22                   MR. MYERS:  Yes.

23                   THE COURT:  How soon can you file that motion?

24                   MR. MYERS:  By the end of the week.  It's going

25         to be a Monell claim, a retaliation 1983 equal protection
```

```
 1          First Amendment, Fourth Amendment, Fifth Amendment, 14 and

 2          it's going to include the municipalities under Monell

 3          individuals, and it's going to include damages.  Because up

 4          to this point I thought we could settle this with a

 5          handshake, but -- and there's no damages on my claim.

 6                    THE COURT:  Okay.  All right.  So you -- you

 7          expect to file that by the end of this week?

 8                    MR. MYERS:  Yes, sir.

 9                    THE COURT:  I just have to put a deadline for

10          you to file your motion.  I think I'll use --

11                    MR. MYERS:  Are you talking about specifically

12          for the amended complaint or all motions?

13                    THE COURT:  No.  This is just for --

14                    MR. MYERS:  Okay.

15                    THE COURT:  -- an amended complaint.

16                    MR. MYERS:  Yeah.  I will have you that by the

17          end of the week guaranteed.  Maybe even in the next day or

18          two.

19                    THE COURT:  Okay, that's -- that's fine.  I'm

20          going to allow a little bit of foot factor in there, okay?

21          You can file it whenever you want.

22                    MR. MYERS:  I understand.  No, I see what you're

23          saying.

24                    THE COURT:  But I -- but I'm going to put a

25          deadline of --
```

1          MR. MYERS:  I want it before the preliminary

2     injunction.

3          THE COURT:  -- the 21st.  Is that next Friday,

4     Angie?  Am I --

5          DEPUTY CLERK:  The 28th.

6          THE COURT:  28th, all right?  So you have until

7     October 28th --

8          MR. MYERS:  Thank you, sir.

9          THE COURT:  -- to file.

10          MR. MYERS:  Like I said, it will probably be

11     done by Wednesday.

12          THE COURT:  Okay.  26(a)(1) disclosures,

13     defendant indicated the end of October.  Does October 31st

14     work for you, Mr. Meyers?

15          MR. MYERS:  Yes, sir.

16          THE COURT:  All right, that's what we'll use.

17          MR. MYERS:  This specifically for the 26.

18          THE COURT:  This is 26(a)(1) disclosures.

19          MR. MYERS:  Yes, sir.

20          THE COURT:  Yeah, that, if you look at Federal

21     Rule of Civil Procedure 26(a)(1) --

22          MR. MYERS:  Yep.

23          THE COURT:  -- what's listed there --

24          MR. MYERS:  Yep.

25          THE COURT:  Okay.

—14—

1          MR. MYERS:  They've seen the -- they've -- I've

2     disclosed everything from day one.

3          THE COURT:  Good.  All right, I don't need to

4     know what you've done so far --

5          MR. MYERS:  Oh, I feel ya.

6          THE COURT:  -- but I'm just setting deadlines,

7     all right?  And that still works for you, Ms. Dickinson --

8          MS. DICKINSON:  Yes, your Honor.

9          THE COURT:  -- for your client?

10         MS. DICKINSON:  Thank you.

11         THE COURT:  All right.  Mr. Myers do you

12    anticipate calling an expert witness in this case?

13         MR. MYERS:  As of right now -- as of right now,

14    sir, I do not, but I left a little bit of a window open in

15    case something pops up in discovery here, if they turn it

16    over.

17         THE COURT:  Okay.  That's fine.  What was the --

18         MR. MYERS:  On mine it's -- I put January 31st,

19    but truly I don't think it's going to even get to this

20    level of trial and all that.  So, yeah, I'm cool with

21    whatever you -- you know, I'm flexible.

22         THE COURT:  All right.  Here's what I'm going to

23    do, Mr. Myers.  I'm going to put your deadline for

24    disclosing expert as December 31.

25         MR. MYERS:  Thank you, sir.

1          THE COURT:  And then defendants will have until

2     January, give me a, does the 30th or 31st of January work?

3          DEPUTY CLERK:  January 30.

4          THE COURT:  January 30th for defendant to

5     identify expert.  Do you see any need to have -- to require

6     experts to write a written report, Mr. Myers?

7          MR. MYERS:  I'm the expert.

8          THE COURT:  Okay.  And I take it you don't

9     either, Ms. Dickinson?

10         MS. DICKINSON:  No, your Honor.  Thank you.

11         THE COURT:  All right.  So expert reports will

12    not be required.  I need to set a deadline for completing

13    all discovery.  In light of the fact that I'm giving

14    defendant until the end of January to identify expert, I

15    would be inclined to go to the end of February for a close

16    of discovery.  Is that enough time, do you think,

17    Ms. Dickinson?  Because I recognize sometimes it's

18    difficult, and I don't know that either side's going to

19    have an expert at the end of the day, but I have to assume

20    that there will be one when I'm setting deadlines.  So my

21    only concern would be if I set the close of discovery at

22    the end of February, is that realistically enough time to

23    schedule expert depositions?

24         MS. DICKINSON:  Yes, your Honor.  I, again, I

25    don't anticipate there's going to be any experts, but I

—16—

1          think even in light of the fact that there may be, I think

2          the end of February should be sufficient.

3                    THE COURT:  Can you live with that, Mr. Myers?

4          In other words to have all discovery be completed by the --

5                    MR. MYERS:  I was --

6                    THE COURT:  -- end of --

7                    MR. MYERS:  I was asking for March 31st, because

8          they have shown no -- I -- I mean, they've shown no

9          inclination to cooperate in any way, shape, or form, so I

10         can't, you know, that's a short time.  And typically you

11         get six months.

12                   THE COURT:  Yep.  You're right about that.

13         Okay, you --

14                   MR. MYERS:  But I'm willing to -- I'm willing to

15         give them two weeks.  You know I'm -- I'm willing to start

16         the trial tomorrow, but like they're not, so we need go

17         with how much time they're going to need to produce this

18         stuff.

19                   THE COURT:  Mr. Myers, you've made a good point.

20                   MR. MYERS:  Thank you.

21                   THE COURT:  And that is we generally give about

22         six months for discovery, and so I will allow that.  So we

23         will put the end of March.  Angie --

24                   DEPUTY CLERK:  31.

25                   THE COURT:  -- is the -- okay, so end of

1       discovery March 31 of next year.  Typically dispositive

2       motions deadline's about 30 days thereafter.  Does that

3       work for you, Ms. Dickinson?

4                   MS. DICKINSON:  Yes, your Honor.  Thank you.

5                   THE COURT:  All right.  So then that would be

6       end of April.

7                   DEPUTY CLERK:  April 28.

8                   THE COURT:  April 28.  The presumptive limits on

9       discovery will apply.  That is 25 Interrogatories, 10

10      depositions, 25 requests for admissions.  The rules do not

11      have a presumptive limit on request for documents, but I am

12      going to impose a limit here of 25 requests for documents

13      per side.  Any objection to that, any of those,

14      Ms. Dickinson?

15                  MS. DICKINSON:  No, your Honor.  In fact we

16      would probably request a limit on that, you know, on our

17      own accord, so thank you.

18                  THE COURT:  All right.  Mr. Myers, any objection

19      to that?

20                  MR. MYERS:  Could you just clarify that that's

21      not 25 pieces of paper, that's 25 individual requests,

22      which may contain more than one request in them?

23                  THE COURT:  Well, I'm glad you asked that

24      question, so I'm happy to clarify.  It doesn't mean 25

25      pieces of paper.  It does mean 25 requests.  So you

1        can't -- you can't get around the limit by saying, well,

2        number one and then you've got A, B, C, D, with a whole

3        bunch of different --

4                MR. MYERS:  Okay.

5                THE COURT:  -- discovery document requests.  So

6        each --

7                MR. MYERS:  So each request, one request.

8                THE COURT:  That's correct.

9                MR. MYERS:  Thank you.

10                THE COURT:  But a request for documents may call

11        for more than one --

12                MR. MYERS:  Document.

13                THE COURT:  -- document.

14                MR. MYERS:  So I might request multiple

15        documents, but I can't request multiple documents A, then

16        more in B, right, okay, each.

17                THE COURT:  Yes.  Let me just, and to give you

18        an example of a case that's different than this.  Let's

19        assume this was a traffic accident and one of the

20        defendants was the police department that investigated the

21        traffic accident.  A discovery request, a document request

22        could be to provide all police reports from that agency

23        relating to the traffic accident.  Might be a hundred

24        reports, but that's one document request.  Does that help

25        you?

1      MR. MYERS:  Absolutely.  I have FOIAs going,

2  too, so I'm fighting a front over there, too, so --

3      THE COURT:  Okay.  Well, I won't worry about the

4  FOIA requests at this point.

5      MR. MYERS:  That's what I mean.  That's helping

6  me get discovery that won't --

7      THE COURT:  Okay.

8      MR. MYERS:  -- require me to use discovery

9  requests.

10      THE COURT:  Okay.

11      MR. MYERS:  Because it's readily available, so

12  you want to be able to use that and not take up the Court's

13  time.

14      THE COURT:  Okay.

15      MS. DICKINSON:  I just wanted to place on the

16  record, your Honor, that we would reserve any right to file

17  a motion for protective order under Rule 26(c), given the

18  nature of any potential discovery requests that Mr. Myers

19  may file.  I'm just putting the Court on notice and placing

20  it on the record that that may be something that the

21  defendants might need to do going forward.

22      THE COURT:  And why do you anticipate the need

23  for that?

24      MS. DICKINSON:  Based on the history and levels

25  of harassment of the plaintiff against the county, against

1          the county's attorneys, and other potential witnesses in

2          this trial, I anticipate the need for a protective order,

3          given the level of e-mails and harassment --

4                    THE COURT:  Well, that --

5                    MS. DICKINSON:  -- going forward.

6                    THE COURT:  That reminds me of another issue,

7          Ms. Dickinson.  Who -- who are you representing?  Who are

8          your clients?

9                    MS. DICKINSON:  So we represent the Christopher

10         Wren, the three defendants.  It's Christopher Wren, who is

11         the county's administrator, and then two county sheriff's

12         department employees.  One is a sheriff and the other is a

13         deputy.

14                   MR. MYERS:  That's not true.

15                   THE COURT:  Hang on.  I'll give you a chance to

16         speak in a minute.  Has he attempted to contact any of your

17         clients?

18                   MS. DICKINSON:  Not to my knowledge.  Oh, well,

19         he has contacted directly employees of the county, and

20         based on his e-mails and correspondence with us and other

21         representatives from the county, he has indicated that he

22         intends to file, add additional defendants to this claim,

23         including, but not limited to all, the entire county board

24         of commissioners, the entire county parks and recreation

25         committee, the other biker in this case, Mr. Wright, who we

—21—

1   do not represent, but have had contact with in relation to

2   this matter, Consumer's Energy, I'm not sure where they

3   come into play, but --

4           MR. MYERS:  They own the land.

5           MS. DICKINSON:  But it is my understanding that

6   he will likely be adding more defendants, which, you know,

7   our argument is that that is --

8           THE COURT:  Well, we'll cross that bridge --

9           MS. DICKINSON:  Correct.

10          THE COURT:  -- when we come to it.  My concern

11  is simply, I want to make sure that Mr. Myers understands

12  that even as a pro se litigant --

13          MS. DICKINSON:  Correct.

14          THE COURT:  -- that he is not to contact someone

15  who is represented by a lawyer.

16          MS. DICKINSON:  Correct.

17          THE COURT:  You have to go through that person's

18  lawyer.  But I'm a little concerned, Ms. Dickinson.  I'm

19  not sure that your client includes everybody that works for

20  the county.

21          MS. DICKINSON:  Currently we represent the three

22  defendants in the matter.

23          THE COURT:  Okay.

24          MS. DICKINSON:  Newaygo County is a client of

25  our law firm.  They're not parties -- the entire county is

—22—

1              not a party to this case.

2                        THE COURT:  So I see nothing yet that suggests

3              that he's barred from contacting county employees.

4                        MS. DICKINSON:  Correct.

5                        THE COURT:  Okay.

6                        MS. DICKINSON:  Correct.

7                        THE COURT:  That's all I care about at this

8              point.

9                        MS. DICKINSON:  Eventually it probably will come

10             to that.

11                       THE COURT:  It could change, yeah.  It may

12             change.

13                       MS. DICKINSON:  Yes.

14                       THE COURT:  I just want you to be aware,

15             Mr. Myers, in case you're not, that parties to lawsuits, to

16             the extent they are represented by a lawyer, the other side

17             has to always go through the lawyer.  You can't contact

18             directly the party.  You have to go through the lawyer.

19                       MR. MYERS:  Specific to the lawsuit.

20                       THE COURT:  Yes.

21                       MR. MYERS:  But I can contact an elected

22             official and talk about matters that are going on in the

23             county.

24                       THE COURT:  I'm not going to comment about

25             anything --

```
 1                   MR. MYERS:  That's what she's talking about.

 2                   THE COURT:  Okay.  I'm not going to comment

 3       about anything that's not before me.  I'm simply telling

 4       you that anyone who is a party to this case and is

 5       represented by counsel, you would go through counsel.

 6                   MR. MYERS:  Specific to this case only.

 7                   THE COURT:  Yes.

 8                   MR. MYERS:  Thank you.

 9                   THE COURT:  Well, I don't -- I don't know.

10       There may be other reasons why --

11                   MR. MYERS:  Well, I mean if they're like the

12       zoning coordinator, I'm still allowed to contact them about

13       the zoning and stuff, right?

14                   THE COURT:  Well, I don't -- if you had another

15       case pending --

16                   MR. MYERS:  No, no cases.  No, just like I live

17       in the area.

18                   THE COURT:  All right, thank you.  I think we've

19       addressed that.

20                   MR. MYERS:  All right, thank you.

21                   THE COURT:  Thank you.

22                   MR. MYERS:  Yep.

23                   THE COURT:  All right.  As for alternative

24       dispute resolution, Judge Maloney will require the parties

25       to go through VFM, and you are to select a mediator from
```

—24—

1          the panel, approved panel here at the court.  If you want

2          to use somebody that's not on the panel, you'll need to

3          file a motion to that effect.

4                    Ms. Dickinson, from your perspective, I have to

5          put a deadline by which VFM must be completed.  Not the

6          date you do it, but the deadline by which it must be done.

7          What would you recommend?

8                    MS. DICKINSON:  I would typically recommend that

9          it would be done upon completion of the close of discovery,

10         so we would say March 31st?

11                   THE COURT:  I think I'll move it up a bit.

12                   MS. DICKINSON:  Okay.

13                   THE COURT:  Perhaps the end of February.  Do you

14         know -- understand what we're talking about, Mr. Myers?

15                   MR. MYERS:  Absolutely.  We could do it Friday.

16                   THE COURT:  Okay.  Well, I'm going to say the

17         deadline is February, last day of February.  I'm sorry?

18                   DEPUTY CLERK:  28th.

19                   THE COURT:  28 is the deadline by which it must

20         be done.  And just so that you're aware, the reason we put

21         those deadlines in the case management order is that tells

22         the Clerk's Office, they put a tickler in so that if

23         they've not received a report from the voluntary

24         facilitative mediator by that deadline, they're going to

25         start contacting you and saying what's going on here, why

1          haven't you got this scheduled.

2                  All right, now Judge Maloney will not allow a

3          case to go to trial without also going through a settlement

4          conference with me.  So I'll just let you know, when you

5          get the case management order, you're going to see a date

6          and time for a settlement conference with me.  That date

7          and time is going to be approximately 60 days pretrial.  So

8          what will happen is when I finish the case management

9          order, talking to you with this, my staff will contact

10         Judge Maloney's staff and get a trial date from him.  Just

11         be aware the trial date is usually about six months after

12         the dispositive motion deadline.  So if we've got the end

13         of April for dispositive motion deadline, you're looking at

14         probably the earliest trial date would be sometime in

15         December of next year, probably January of 2024.

16                 That's how -- and keep in mind, that seems like

17         a long -- six months seems like a long time between

18         dispositive motion deadline and a trial date.  We need that

19         much time, realistically.  Because first of all it takes

20         seven to eight weeks just to complete the briefing on a

21         dispositive motion.  We need to give Judge Maloney time to

22         work on it, okay?  Believe it or not, he's got other cases

23         besides this one pending, okay?  So he has a very -- and he

24         has a very full trial docket.  So we need to have that much

25         time.

1              I mention that just so that you're aware, but

2        also to keep in mind that if there's good cause that we

3        need to extend time to complete something, the Court will

4        consider it, but it's not going to do it lightly.  So and

5        good cause means something has come up that you could not

6        have anticipated today.  So it's not good cause to say,

7        well, we're really busy and we need more time.  You should

8        assume that you're very busy.  I hope you're all very busy.

9        It's good to be busy.  That's not good cause for extending

10       anything.  A sickness or something like that could be.  But

11       so I'm just -- I just share that with you.

12             I think sometimes parties think, ah,

13       particularly they think, well, if we agree to extend a

14       deadline, the court will go along with it.  Do not assume

15       that.

16             MR. MYERS:  We don't agree on anything.

17             THE COURT:  Well, I understand.  But I'm saying

18       even if you do, do not assume the -- you still have to get

19       the Court's approval, and you will not get that without

20       establishing good cause.  So just -- just a word to the

21       wise.

22             All right, is there any -- the seven hour limit

23       will apply for depositions, by the way.  Anything else,

24       Ms. Dickinson, from your perspective that we need to

25       discuss by way of scheduling?

1     MS. DICKINSON:  No, your Honor.  I think we're

2 all set.  Thank you.

3     THE COURT:  Okay, Mr. Myers, same question.

4     MR. MYERS:  Can you clarify, ma'am, is it the

5 28th or 30th of April for the dispositive motions?

6     THE COURT:  I believe I said the 28th.

7     MR. MYERS:  28th.

8     THE COURT:  Of April, yes.  Ms. Dickinson, do

9 you anticipate the need for a protective order in this

10 case?

11     MS. DICKINSON:  Eventually, yes, your Honor.

12 Once we get into more formalized discovery, yes.

13     THE COURT:  All right.

14     MR. MYERS:  Are they -- is that -- can you

15 clarify?  Does that protect me from releasing the stuff

16 they give me?

17     THE COURT:  It depends.

18     MR. MYERS:  Okay.

19     THE COURT:  It could.

20     MR. MYERS:  I think that's what they're worried

21 about.

22     THE COURT:  Okay, well, Mr. Myers, a protective

23 order isn't -- that's a term that describes a wide range

24 of --

25     MR. MYERS:  Because I certainly --

1           THE COURT:  -- things.

2           MR. MYERS:  -- never threatened them.

3           THE COURT:  It is not uncommon in cases for the

4    parties to enter into a protective order.  And the

5    protective order would set out what the limits or

6    restrictions are.  I only bring it up now because if both

7    parties said, no, we don't need a protective order, I would

8    spare you my sermonettes on protective orders.

9           MR. MYERS:  I'm a hundred percent transparent.

10          THE COURT:  Well, that's fine.  You could -- you

11   can be seated --

12          MR. MYERS:  Thank you.

13          THE COURT:  -- Mr. Myers.  I'm going to give you

14   my sermonettes on protective orders.  And seriously what it

15   is are things to keep in mind.  I'm trying to help you

16   avoid unnecessary work and also me unnecessary work,

17   because I get proposed protective orders that have

18   provisions the Court will not approve and then I have to

19   send it back to you and you've got to redo it.  So some

20   common mistakes that the parties make.

21          First of all, please do not put anything in the

22   protective order that suggests that the Court will retain

23   jurisdiction over it after the case is closed.  The Court

24   will not do that.

25          Please try to be as specific as you can about

—29—

1    what documents or information are covered by the protective

2    order.  To the extent the protective order makes any

3    reference to sealing any documents, it must make clear that

4    the parties have read and understand the provisions of

5    local Rule 10.6.  This protective order will not authorize

6    the sealing of anything.  So nobody can file a motion to

7    seal a document simply citing the protective order.

8            Local Rule 10.6(a) sets out the district's

9    policy about sealing documents.  In a nutshell, we don't

10   like sealing anything.  You have to establish good cause to

11   seal a document, and that's a fairly high standard.

12           The Court will never seal an entire motion or

13   entire brief.  That's never happened.  When it comes to a

14   dispositive motion, the standards for getting anything

15   sealed is exceedingly high.  In eight and a half years on

16   the bench, I've never seen anyone meet the standard to get

17   anything sealed that's related to a dispositive motion.

18   And certainly, nobody should expect any trial exhibit to be

19   sealed.

20           One area that creates potential problems for the

21   Court is that there's a protective order in place and a

22   party will produce a document, stamp it subject to the

23   protective order.  The receiving party now wants to file

24   that document for some reason.  So then I get a motion

25   seeking leave to file that document under seal, and the

1      only bases, good cause stated, is that the other side

2      stamped it subject to the protective order.  Well, I'm not

3      going to seal a document on that basis.  The simple

4      solution would be to deny the motion, but I'm reluctant to

5      do that because there may be good cause why that should be

6      sealed, but I don't know what it is.  So when that happens,

7      I have to issue an order holding the motion in abeyance

8      requiring the moving party to get from the producing party

9      a statement of good cause.  Just keep that in mind.  If

10     that situation arises, contact the other side, remind them

11     you have cranky Judge Green who doesn't like sealing

12     anything.  Tell them I need your statement of good cause.

13     They'll tell you, and you just put it in your motion, and

14     then I can deal with it.

15             Another area of problems arises, occasionally I

16     get a protective order that purports to establish this

17     jurisdiction, this Court's jurisdiction on third parties

18     simply by virtue of the fact that the party has received a

19     copy of a document subject to the protective order.  That

20     won't happen, that doesn't happen, and the Court won't sign

21     a protective order that purports to do that.  If you want a

22     third party to be subject to the jurisdiction of this Court

23     and to be subject to the provisions of the protective

24     order, you have to give a copy of the protective order to

25     the third party, along with the form allowing that person

1          to decide whether they consent to it.  If they consent to

2          be bound, fine.  If they don't, then you can choose not to

3          give them the document.  But simply giving them a document

4          doesn't make them subject to this Court's jurisdiction, nor

5          does it make him subject to the provisions of the

6          protective order.

7                    Ms. Dickinson, any questions about any of that?

8                    MS. DICKINSON:  No, your Honor.  Thank you.

9                    THE COURT:  All right, you're welcome.

10         Mr. Myers, any questions about that?

11                   MR. MYERS:  Sounds like an expensive waste of

12         time.

13                   THE COURT:  Okay.  Well --

14                   MR. MYERS:  For them.

15                   THE COURT:  Maybe.  Anything else that we need

16         to discuss, Ms. Dickinson?

17                   MS. DICKINSON:  I don't think so, your Honor.

18         Like I said, I mentioned prior -- earlier that we do intend

19         to file a Rule 11 motion for sanctions yet this week.  It's

20         been served on Mr. Myers --

21                   THE COURT:  All right.

22                   MS. DICKINSON:  -- several weeks ago, so I just

23         wanted to make the Court aware that that was likely going

24         to be coming next week.

25                   THE COURT:  Are you going to file that before he

1          files his motion to amend the complaint?

2                    MS. DICKINSON:  I'm not sure when he intends to

3          file his motion to amend.  Our --

4                    THE COURT:  Well, he said it would be this week.

5                    MS. DICKINSON:  Yep.  Our 21 day -- I don't

6          anticipate the amendments to his complaint are going to

7          change the nature of our motion for sanctions, but our 21

8          day safe harbor period is up on Wednesday, so.

9                    THE COURT:  Okay.  Well, but presumably, you

10         file a motion for Rule 11 sanctions, he files a motion for

11         amended complaint, the Court has to decide whether to grant

12         the motion for the amended complaint.  If the Court grants

13         that motion, you're going to -- your Rule 11 sanction

14         motion is going to be mooted out.

15                    MS. DICKINSON:  Well, I, like I said --

16                    THE COURT:  You'll have to then file a new

17         motion, presumably for the amended --

18                    MR. MYERS:  Start the 21 days over, all of that.

19                    THE COURT:  Hang on, Mr. Myers.  Wouldn't you

20         have to then file a new motion for sanctions based on the

21         amended complaint?

22                    MS. DICKINSON:  Again, I don't anticipate the

23         amended complaint is going to change the nature of our

24         request for sanctions under our motion.  Certainly not

25         given what has occurred since we served him with our

—33—

1          motion, our proposed Rule 11 motion.  I believe he's even

2          filed a response to that already, which our Rule 11 motion

3          hasn't been filed yet because we're under the 21 day safe

4          harbor period.  But I am very confident that his amended

5          complaint is not going to change the arguments that we've

6          set forth --

7                    THE COURT:  Okay.

8                    MS. DICKINSON:  -- in our Rule 11 motion.

9                    THE COURT:  Okay, well, we'll deal with it in

10         due course.

11                   MS. DICKINSON:  Sure.

12                   THE COURT:  We'll deal with it in --

13                   MR. MYERS:  Definitely going to change it

14         significantly.

15                   THE COURT:  Okay.  Mr. Myers, anything else from

16         your perspective that we should discuss at this time?

17                   MR. MYERS:  Their lack of cooperation.

18                   THE COURT:  Remember you have to stand when you

19         address the Court.

20                   MR. MYERS:  It's been 60 days and I haven't

21         received a -- a substantiated response from this law firm

22         that represents these clients yet.

23                   THE COURT:  A response to what?

24                   MR. MYERS:  Anything.

25                   THE COURT:  Well, this --

—34—

1          MR. MYERS:  All I received is a Rule 11 threat,

2     threat of a Rule 11 saying that my lawsuit's frivolous when

3     it's clearly not frivolous and they're going to stand on

4     that --

5          THE COURT:  Well, Mr. Myers, the way it works is

6     you make a discovery request.

7          MR. MYERS:  Uh-huh.

8          THE COURT:  And they have a period of time to

9     respond.  If they don't or if you believe they've not fully

10     responded, then you'd need to consult with the other side

11     to work it out between you.

12          MR. MYERS:  There's no communication.

13          THE COURT:  And if you can't do that, then you

14     file a motion to compel.

15          MR. MYERS:  Thank you.

16          THE COURT:  But this Court can only deal with

17     motions, written motions that are filed with the Court.

18          MR. MYERS:  So if I call, e-mail --

19          THE COURT:  And you can't -- you can't seek

20     to -- you can't compel -- you can't seek to compel

21     something you haven't first requested in discovery.

22          MR. MYERS:  I've definitely requested it.

23          THE COURT:  All right.  Well, I don't know about

24     that.  And typically -- you can't -- you can't send

25     discovery requests before the Rule 26(f) conference.  So I

1      don't know whether you sent a discovery request or not.

2      We'll deal with it.  But if you want the Court to address

3      anything, you need to file a written motion.

4              MR. MYERS:  So moving forward, is the proper way

5      to, you know, work in this case is it to contact the law

6      firm and then say, "This is what I would like to discuss,"

7      and then they contact me back?

8              THE COURT:  Well, you would -- you would serve a

9      formal discovery request, okay?  So you would type up your

10     Interrogatories or your document request, and you would

11     serve them -- are you accepting service through e-mail?

12             MS. DICKINSON:  Yes, your Honor.

13             THE COURT:  All right, so you have their e-mail

14     address.  You would e-mail them at this -- then you also

15     need to file with the court a certificate of service.  You

16     don't file with the court the request that you made, you

17     simply fill out a certificate of service that says on this

18     date I served plaintiffs first request for production of

19     documents to defendants.  That's what gets filed with --

20     with the court, okay?

21             MR. MYERS:  Yep.  And I -- just, when you get

22     the Rule 11, I would prefer oral arguments also.  I don't

23     know if I've indicated that on my response.

24             THE COURT:  We'll address that when we get to

25     it.

—36—

1              MR. MYERS:  Thank you.

2              THE COURT:  Yes.  I think it's --

3              MR. MYERS:  I'm going to file a Rule -- I'm

4      planning to file a Rule 11 against them, too, using their

5      Rule 11 as the basis for mine.

6              THE COURT:  All right.  Somehow I get the sense

7      that I may be spending significant amounts of time on this

8      case, at least in the near term.  Well, that's all right.

9      That's what I get paid to do and I'm happy to --

10             MR. MYERS:  You'll enjoy it.

11             THE COURT:  I would say, Mr. Myers, it is likely

12     that I would have oral argument on a motion of that nature.

13             MR. MYERS:  Awesome.

14             THE COURT:  I can't promise you, but it's

15     likely.

16             MR. MYERS:  So I actually go to -- I'm supposed

17     to be in Arizona already.  Is it possible to appear by

18     computer?

19             THE COURT:  If you file a motion.  By video.

20             MR. MYERS:  Once you -- once you order a court

21     day, then file the motion requesting to appear for that

22     specific court date?

23             THE COURT:  Yes.

24             MR. MYERS:  Thank you.

25             THE COURT:  Yes, that's typically how it's done.

1       If you would file a motion asking permission to participate

2       by Zoom, by video, stating your reasons, and the Court will

3       look at that.

4              MR. MYERS:  Is this the -- the gentleman down at

5       the gate when you come in told me that I would be able to

6       request the opportunity to bring my laptop and stuff like

7       that in.  Is that something I file with you?

8              THE COURT:  Yes.

9              MR. MYERS:  A motion to --

10            THE COURT:  You file it with the --

11            MR. MYERS:  -- request to bring electronic --

12            THE COURT:  You file it with the --

13            MR. MYERS:  -- into building or something?

14            THE COURT:  Yes.  Yeah, that's -- it's something

15       you file with the court.

16            MR. MYERS:  Clerk.  Clerk.

17            THE COURT:  I want to be clear.

18            MR. MYERS:  No, that's what I'm saying, right.

19       Right.

20            THE COURT:  Now I think this is a generally

21       referred case.  And what that means, as a practical matter,

22       Mr. Myers, is any motion that gets filed automatically

23       comes to me to be decided.  If you're -- if a party thinks

24       I made a mistake, then you can appeal to Judge Maloney.

25            MR. MYERS:  That's why I wanted to keep the

1      judge, right.

2                   THE COURT:  Okay?  If it's a dispositive issue,

3      meaning it's an issue that would put an end to the case,

4      then I would prepare what's known as a report and

5      recommendation to Judge Maloney.  Each side would then have

6      14 days to file objections to my report and

7      recommendations.

8                   So this is Judge Maloney's case.  I do what he

9      asks me to do.  But I will tell you in pro se cases,

10     generally, they are generally referred, which means any

11     motion that gets filed automatically comes to me.

12                  MR. MYERS:  Any man of the court, woman of the

13     court can handle this case.

14                  THE COURT:  All right, thank you.  Anything

15     further, Ms. Dickinson?

16                  MS. DICKINSON:  No, your Honor.  Thank you.

17                  THE COURT:  Mr. Myers?

18                  MR. MYERS:  (No verbal response.)

19                  THE COURT:  All right thank you both.

20                  DEPUTY CLERK:  Court is adjourned.

21                  (At 1:36 p.m., proceedings concluded.)

22                              -oo0oo-

23

24

25

CERTIFICATE OF REPORTER

STATE OF MICHIGAN      )
                       )  ss.
COUNTY OF KENT         )


        I, Bonnie L. Rozema, CER, do hereby certify that this

transcript, consisting of 40 pages, is a complete, true, and

accurate transcript, to the best of my ability from the audio

recordings of the proceedings and testimony held in this case on

October 17, 2022.

        I do further certify that I prepared the foregoing

transcript.



/s/  Bonnie L. Rozema

Bonnie L. Rozema, CER 5571
2700 92nd Street, S.W.
Byron Center, MI  49315
(616) 878-9091


Notary Public in and for
Kent County, Michigan
My commission expires:
March 26, 2025
Acting in the County of Kent