IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| Lane Myers,<br><br>                Plaintiff,<br><br>v.<br><br>Christopher Wren, et al.,<br><br>                Defendants. | No. 1:22-CV-00748<br><br>Hon. Judge Paul Maloney<br><br>**Plaintiff Brief in Opposition of Motion for Summary Judgment** |

STANDARD OF REVIEW

      Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Bender v. Southland Corp., 749 F.2d 1205, 1210–11 (6th Cir.1984). The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Gregg v. Allen–Bradley Co., 801 F.2d 859, 861 (6th Cir.1986).

      Defendants have not even come close to demonstrating the absence of all genuine issues of material fact and must be denied. As this court can see and the record reflects, defendants have been making arguments in bad faith, and intentionally misleading this court throughout the

1

course of this litigation. Mr. Myers currently has an Interlocutory Appeal pending in this case that will make this motion moot if granted also.

Argument 1: Defendants Statement of Issues argument

"This lawsuit arose because Plaintiff verbally harassed, berated, and chased down another park visitor, Ethan Wright, for riding an electric mountain bike on a public park trail in Newaygo County (the "County")." (ECF 75 pg. 5)

The defendants are lying and have not presented a single piece of evidence that Mr Myers harassed, berated, or chased Ethan Wright. Law enforcements investigation also found no evidence of such allegations.

"Admittedly, Mr. Wright probably should not have been riding an electric mountain bike on the trail. But the real concern was Plaintiff's over-the-top, menacing, and irrational conduct, which he has continued to display toward Defendants, their counsel (including their staff), potential witnesses, and others associated (and not associated) with this case, throughout the course of this litigation." (ECF 75 pg. 5)

This is an attempt to gaslight this court. The defendants claim Ethan Wright "probably" should not have been riding an ebike. That's a significant understatement. Ethan Wright was in violation of both State law and the County Park Ordinance, as well as causing a collision with Mr. Myers through his reckless actions. However, defendants want to shift the focus to Mr. Myers' legal, constitutionally protected, statutorily supported conduct in which he is enforcing violations of his civil rights. Ethan Wrights illegal and reckless behavior seems to be much less of a priority to defendants than Mr. Myers protected speech, in protest of Ethan Wrights illegal behavior. Defendants also attempt to shift the focus to immaterial events outside the scope of this litigation to justify their initial and continued unlawful behavior towards Mr. Myers, through enforcement of the illegal park ordinance.

"As a result of his bizarre actions, the County Parks Department prohibited Plaintiff from entering county park property, which he claims violated his constitutional rights." (ECF 75 pg. 5)

Mr. Myers' only actions were his constitutionally protected speech. Calling Mr. Myers use of protected speech to protest Ethan Wrights illegal behavior "bizarre actions", is manipulation of the facts. Mr. Myers behavior was nothing more than an attempt to inform park staff and law enforcement about Ethan Wrights illegal actions.

"Discovery has now closed and there is no genuine dispute as to any material fact.

As the Court has already identified in its Order denying Plaintiff's motion for a temporary restraining order (ECF No. 7) and preliminary injunction (ECF No. 61), Plaintiff's claims are meritless as a matter of law, and dismissal is warranted." (ECF 75 pg. 5)

This court was wrong on both of those occasions. Mr. Myers is currently awaiting a decision on his appeal to the Sixth Circuit challenging the denial of his motion for preliminary

injunction, as well as his amended complaint. Because this court was wrong in its decisions, the Sixth Circuit is going to overturn these decisions.

"Dismissal is further warranted due to Plaintiff's violations of the Court's December 22, 2022 Order which prohibited him from harassing, berating, demeaning, threatening, or using abusive language in communicating with defense counsel." (ECF 75 pg. 5)

  Defendants have violated Rule 56 by attempting to include a sanctions motion inside a motion for summary judgment. All sanctions motions for violations outside of Rule 56 must be in a separate motion. Defendants are wasting this court's time and violating Federal Rules because they are desperate. Defendants' legal arguments are trash and have no chance of being upheld, therefore they have resorted to continuing to intentionally mislead the court in an attempt to further prejudice the court towards Mr. Myers. This is now at least the fourth motion that defendants have filed that violated Rule 11, as well as other Federal Rules. Let the record reflect that.

<br>

Argument 2: Defendants Statement of Facts argument

"Plaintiff's Ban from County Parks.

Newaygo County owns property used for bicycle trails. On August 5, 2022, Ethan Wright was riding his electric mountain bike, or "e-bike", on the Dragon Trail (Michigan's Dragon at Hardy Dam) on County Park property. (ECF No. 27-1). Mr. Wright encountered Plaintiff, also riding a bike, who yelled at Mr. Wright that e-bikes were not allowed on the trail. Id." (ECF 75 pg. 6-7)

  Ethan Wrights reckless and illegal operation of his motorized bicycle caused Mr. Myers and Ethan Wright to have a collision. That is what led to a conversation about the prohibition of ebikes that Ethan Wright participated in by mutual consent. Mr. Myers has presented a video of this conversation (ECF 43-6). There can be no dispute that this is a material fact, and the parties dispute it, therefore the motion must be denied.

"Out in the woods on the trail and alone, Mr. Wright was taken aback by Plaintiff's hostility over a relatively minor matter. Id. Concerned for his safety, Mr. Wright decided to ride down the trail to get away from Plaintiff." (ECF 75 pg. 6-7)

  Ethan Wrights behavior in the video recording (ECF 43-6) provided by Mr. Myers contradicts these statements provided by defendants. Making there a clear dispute over this material fact. Ethan Wright clearly indicated he did not care about the prohibition on electric bikes, and he would continue to break the law despite the park signs clearly indicating the ban on motorized bicycles. The conversation then ended, and Ethan Wright began riding his bike in the direction of Sandy Beach Park. There can be no dispute that this is a material fact, and the parties dispute it, therefore the motion must be denied.

"Plaintiff proceeded to chase Mr. Wright for over 5 miles on the trail while continuing to berate him, to the point that Mr. Wright called the police. Id." (ECF 75 pg. 6-7)

      Mr. Myers has presented an overwhelming amount of objective factual evidence that contradicts this material fact. The defendants have not presented a single piece of evidence to support their assertion that Mr. Myers chased Ethan wright for 5 miles while berating him. In fact Ethan Wrights own statements on his affidavit contradict his statements on the police bodycam during the investigation at the park. At no point during the investigation by law enforcement, or his conversation with Nick Smith did Ethan Wright allege that Mr. Myers chased and berated him for 5 miles. This is simply not true, and Mr. Myers has presented video of law enforcements interaction with Ethan Wright (ECF 43-3), GPS (43-7), heart rate monitor data (ECF43-5), 911 recording (ECF43-2), and Ethan Wrights own contradictory statements to this court(ECF 27-1). There can be no dispute that this is a material fact, and the parties dispute it, therefore the motion must be denied.

"Mr. Wright arrived at the Sandy Beach County Park office, afraid, upset, and in tears, and informed Park Manager Theresa Bailey that he was being chased and that he had called the police." (ECF 75 pg. 6-7)

      Mr. Myers has presented the 911 recording of Ethan Wright (ECF 43-2) during which he indicates he has arrived at Sandy Beach Park. As well as a video upon Mr. Myers' arrival at Sandy Beach Park (43-4). At no point during the recording does Ethan Wright indicate he was afraid. In fact, Ethan Wright stated that Mr. Myers arrived at the park and did not say anything to him, and he was just reading the park ordinance sign at the pay booth. This clearly contradicts the defendant's statement with undisputed objective evidence. Continuing a pattern of lies by the defendants. There can be no question that the parties dispute this material fact and must be denied.

"Park Manager Bailey recalled that Mr. Wright informed her that a "crazy lunatic was chasing him on the Dragon Trail for the last 5 miles." (ECF No. 27-2)

Ms. Bailey contacted Defendant Parks Director Nicholas Smith and informed him of the incident.

While waiting for police to arrive, Plaintiff came to the park office and began yelling and swearing at the park manager and Mr. Wright. Id. He told Ms. Bailey "that fucking idiot [Mr. Wright] on the fucking e bike needs a ticket now" and that he should "stay the fuck off of our trail." Id." (ECF 75 pg. 6-7)

      The statement alleged to have been written by park manger Bailey cited by the defendants does not meet the evidentiary standard required. It does not even contain a date or signature.  The statements by manager Bailey are nothing more than hearsay unsupported by any objective evidence and contradict the actual events of the day. They make it clear a dispute remains over these material facts. Furthermore, nothing alleged in manager Baileys alleged statement would be outside of protected speech in a traditional public forum. Mr. Myers also provides video in which you can see Mr. Myers and Ethan Wright talking near the employee booth. Mr. Myers ends his conversation with Ethan Wright as defendant Freriks arrives. This can all be viewed on the bodycam footage of defendant Freriks. It's clear that the video contradicts these allegations by Ethan Wright and manager Bailey.

"Sheriff Deputies Kalinowski and Defendant Freriks arrived on the scene and deescalated the situation. (ECF No. 27-3). They interviewed Mr. Wright and indicated that he was very cooperative and was simply not aware of the e-bike rules. (Exhibit A, Defendants' Signed Interrogatory Responses to Plaintiff, at ¶s 5 and 12)." (ECF 75 pg. 6-7)

The deputies did not arrive and deescalate any situation because there was nothing to deescalate, and this is all clearly visible in the deputy's own bodycam footage (ECF 43-3). The entire conversation with Ethan Wright is visible. At no point during the deputy's investigation of Ethan Wright did he indicate that Mr. Myers chased or berated or threatened him. The Deputies failed to properly investigate Ethan Wrights claims in his 911 call because they were clearly biased against Mr. Myers and allowed that to prejudice their investigation. They did not find any evidence that Ethan Wright was chased, threatened, or berated by Mr. Myers. They simply told defendant Smith to ban Mr. Myers without due process without any finding of wrongdoing by Mr. Myers. Deputy Kalinowski even advised defendant Freriks and Smith to be careful because if they ban Mr. Myers without due process, he will file a lawsuit in Federal Court. Which is exactly what happened.

"Deputies Kalinowski and Defendant Freriks also attempted to speak to Plaintiff. Plaintiff refused to provide his name to the deputies for a report and said to them "I don't have to give you anything." (ECF No. 27-3)." (ECF 75 pg. 6-7)

These assertions by the defendants are being made in bad faith. Defendants state that deputies "attempted to speak to plaintiff". However, this is in complete contradiction to objective reality, and the facts of this case. Deputies Kalinowski and Freriks did far more than attempt to talk to Mr. Myers. Each deputy had an extensive conversation clearly visible on bodycam footage about the prohibition of ebikes, and Ethan Wrights illegal use of the motorized bike on the dragon trail causing a collision with Mr. Myers (ECF 43-3). When during defendants Freriks investigatory detainment of Mr. Myers, he attempted to request Mr. Myers provide his personal information, Mr. Myers exercised his 5th amendment right and ended the investigation. Defendant Freriks advised Mr. Myers he was free to go, and he was no longer detained for investigative purposes. There was no evidence of Mr. Myers breaking any laws, chasing, or threatening Ethan Wright. Mr. Myers also exercised his 5th amendment right, and this is a material fact of Mr. Myers 5th amendment claim.

"Director Smith arrived at the scene and was told by Park Manager Bailey that Plaintiff was a "loose cannon" saying that she felt uncomfortable with Plaintiff, that he seemed out of control and would not listen and that he was always the aggressor, not Mr. Wright. (Exhibit A at ¶ 5)." (ECF 75 pg. 6-7)

What was Mr. Myers the aggressor of? Where is the evidence to support this baseless accusation that is nothing more than hearsay? These are extremely vague accusations that are a clear dispute of material fact.

"Director Smith had a conversation with Mr. Wright and explained the e-bike rules. Id. Mr. Wright was apologetic about not knowing the e-bike rules and seemed visibly shaken by the incident. Id." (ECF 75 pg. 6-7)

At no point do the defendants indicate that during the conversation between Ethan Wright and defendant Smith there were any allegations made regarding Mr. Myers chasing, berating or threatening Ethan Wright. The defendants have not presented any evidence that Ethan Wright indicated he was being chased, berated, or threatened by Mr. Myers at any point prior to this lawsuit being filed.  Yet in every court filing the defendants continue to make these allegations unsupported by any evidence, and in complete contradiction to objective evidence presented by Mr. Myers. It's clear the parties dispute these material fact and motion must be denied.

"Later that day, Director Smith contacted Plaintiff by phone and explained that he was in violation of the Newaygo County Parks Ordinance (the "Ordinance") section 18 and, given the situation, informed him that he could not enter any park or park property owned or operated by the County. Id. Plaintiff began yelling at Director Smith and said he would return to the Park. Id. Director Smith advised him not to return to the park or he would be trespassing. Id. Plaintiff continued yelling and demanded a trespass letter. Id. Director Smith wrote a formal trespass warning letter, which was sent to Park Manager Bailey, the County Sheriff's Office, the County Prosecutor's office and Plaintiff on August 8, 2022. (ECF No. 27-4). The trespass warning made clear that "[t]his decision is made due to your actions on 8/5/22 on Michigan's Dragon at Hardy Dam and at Sandy Beach County Park," which actions violated section 18 of the Ordinance. Id." (ECF 75 pg. 6-7)

Mr. Myers exercised his 5th amendment right and refused to provide his personal information to defendant Freriks during his investigative detainment. Mr. Myers was allowed to leave without providing any personal information. How is it that the defendants were then able to obtain Mr. Myers' personal information and contact him on his personal cell phone? Because they violated Mr. Myers' 4th amendment rights and illegally searched the county records to obtain Mr. Myers' private information. If the defendants wanted to contact Mr. Myers for his alleged violation of the park ordinance the deputies should have accused Mr. Myers of a crime, detained him, and obtained his personal information during the course of a legal investigation. The defendants could have simply requested a warrant to obtain Mr. Myers' personal information in electronically stored records, in order to issue him a citation for alleged violation of park ordinance. There was a clear legal process in place in which the defendants could have attempted to ban Mr. Myers from Newaygo County traditional forums. However, because the defendants were acting in retaliation for Mr. Myers past protests of the Newaygo County sheriff office and not in relation to the information obtained in their investigation of Ethan Wrights 911 call, they attempted to bypass the legal system and deny Mr. Myers access to due process. Defendant Wren stated if Mr. Myers wanted due process to sue him, he's not scared he gets sued every day and has insurance for this."

Defendants clearly admit they violated Mr. Myers' rights by punishing him for a violation of State law, which is a misdemeanor offense, without due process afforded those in a criminal or quasi criminal prosecution. Mr. Myers should have been issued a citation for his violation of State law and been given notice to appear in front of the Newaygo County district court magistrate for adjudication of the alleged violations. The defendants violated Federal and State law, and their own pre-established policies. Mr. Myers was denied access to due process and was banned from Newaygo County traditional forums without receiving any opportunity to present evidence in his defense. Mr. Myers should have been given an opportunity to present evidence in

his defense in a court of law, or an administrative hearing of the Newaygo County Park and Recs Commission. He was clearly denied that opportunity and defendants freely admit this. These are clear civil rights violations which present a significant dispute as to the material facts of the case, and summary judgment must be denied. Defendants still have not clearly articulated to this court exactly what "actions" Mr. Myers is banned for either. They filed their response to interrogatories as an exhibit, which is nothing more than 25 boilerplate answers and a clear violation of rule 37. Nowhere in their responses does it indicate what Mr. Myers actions were, and they have not filed a single statement attributed to Mr. Myers outside of his alleged statement to manager Bailey about Ethan Wrights illegal use of ebikes on the Dragon trail. The defendants have not presented any evidence that any laws were broken by Mr. Myers, yet he was punished for a misdemeanor crime without appearing in court.

Furthermore, park ordinance rule 18 is unconstitutional and cannot be enforced against Mr. Myers or anyone.

Because there are clear disputes of material facts between the parties, rule 56 dictates that the defendant's motion for summary judgment be denied.

Argument 3: Defendants First Amendment argument

"Plaintiffs' First Amendment Claim Fails As A Matter Of Law

 As a preliminary matter, for Defendants to be liable under 42 U.S.C. § 1983, Plaintiff must prove that an official custom or policy caused a violation of his constitutional rights. Monell v. Dept of Soc Svcs, 436 U.S. 658, 694 (1978). No County policy or custom deprived Plaintiff of any constitutional right."  (ECF 75 pg. 9)

This is an incorrect legal conclusion. A violation under USC 42 1983 does not require an official custom or policy in order to meet the standard of a 1983 violation. The fact that defendants, as well as this court have gotten this wrong is shocking. This is a very basic and common litigation in Federal courts and this court, and the defendants have completely gotten this wrong at every step of this litigation. This incorrect legal argument shows a complete lack of due diligence by the defendants and this court. Let the record reflect that.

"Plaintiff asserts that defendants have violated his rights to free speech, assembly, and access to public lands by enforcing the Ordinance, which permits the County to exclude people from park property for violations such as engaging in abusive, loud, vulgar, or other disorderly conduct tending to create a breach of peace or disturb or annoy others while on park property.

The right to access public fora is not unlimited. See Lutz v. City of York, 899 F.2d 255, 269 (3d Cir. 1990) ("Unlimited access to public fora or roadways would not result in maximizing individuals' opportunity to engage in protected activity, but chaos."). Put simply, as a matter of law, Plaintiff does not have an unlimited right to access Newaygo County Parks." (ECF 75 pg. 10)

This is another incorrect legal citation by the defendants. The defendants cite a case from 33 years ago in the 3rd circuit which has no application in this case or this circuit. The right of the

public to access traditional public forums until a court of law takes that right IS unlimited. Absent a legitimate conviction in a court of law, access to public fora such as streets, parks, and sidewalks is unlimited. It's the core of democracy of the United States of America. That is why you are allowed to access the streets and sidewalks at any time you want. Access to parks is also unlimited if you don't break any rules of the park. Those rules must also pass strict constitutional scrutiny if they regulate protected speech and conduct in a traditional public forum. The park ordinance in question is not even close to passing strict scrutiny. This is unconstitutional on its face and as applied. Mr. Myers' only conduct was his speech. Therefore, it clearly regulates speech as conduct. There is clearly a question of both material fact and an unresolved legal question here.

"With respect to his argument that Defendants have violated his right to free speech by prohibiting him from using the County parks under the Ordinance, in cases where the state enforces content-neutral regulations to public fora, the regulation must pass intermediate scrutiny. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983) ("The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.") U.S. Const. Amend. 1

This provision unquestionably passes intermediate scrutiny. First, it is content-neutral; it is "justified without reference to the content or viewpoint of the regulated speech." Bays v. City of Fairborn, 668 F.3d 814, 821 (6th Cir. 2012). The Ordinance does not, for example, prohibit loud or disruptive conduct related to specific topics or viewpoints (i.e., abortion protests or political positions). It is viewpoint-neutral." (ECF 75 pg. 10)

     This is an incorrect legal argument. Because the ordinance regulates protected speech and conduct in a traditional public forum, the correct standard of scrutiny to apply to the ordinance is strict scrutiny. How can it be content neutral if it bans vulgar, obscene, boisterous conduct? That is completely subjective, and it clearly regulates speech as conduct as shown by its enforcement against Mr. Myers' speech. There is no government interest in regulating boisterous conduct. Vulgar and obscene speech is protected conduct. The defendants and this court have made incorrect legal conclusions in regard to the proper scrutiny through which to evaluate the park ordinance. This court incorrectly ruled that the ordinance must only pass intermediate scrutiny because it is content neutral. This is incorrect and the 6th circuit will be overturning this court's decisions in Mr. Myers' interlocutory appeal. The ordinance must pass strict scrutiny, it doesn't, therefore it's unconstitutional on its face and as applied to Mr. Myers. The ordinance clearly regulates the content of speech because Mr. Myers is banned for the content of his speech. Had Mr. Myers simply said "God bless America" he would not be banned. However, Mr. Myers was banned because of the content of his protests to park staff and law enforcement. The bodycam and cellphone video clearly shows Mr. Myers' only conduct was his speech, which is protected conduct.

     Furthermore, the ordinance must be narrowly tailored and "tends to disturb or annoy others" is not narrowly tailored. It is extremely vague and leaves speakers open to arbitrary enforcement as is the case here with Mr. Myers. This is a ridiculous attempt to regulate protected speech and conduct. Who gets to decide which behavior disturbs or annoys other? This is

unconstitutional on its face and as applied. Mr. Myers' only conduct was his speech. Therefore, it clearly regulates speech as conduct. There is clearly a question of both material fact and a unresolved legal question here.

"Forum analysis requires a court first to categorize a location (or forum) to which a speaker seeks access for the purpose of expressive activity, and then to analyze the government's restriction on speech against the constitutional standard that governs in that forum." Agema v. City of Allegan, 826 F.3d 326, 335 (6th Cir. 2016) (Merritt, J., dissenting in part) (citation and internal quotation marks omitted). Courts recognize four types of fora: (1) the traditional public forum, (2) the designated public forum, (3) the limited public forum, and (4) the nonpublic forum. Miller v. City of Cincinnati, 622 F.3d 524, 534–36 (6th Cir. 2010). Restrictions on speech in traditional or designated public fora receive strict scrutiny, which means they must be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that interest." Id. at 534 "

As this court can see. It was wrong when it denied Mr. Myers preliminary injunction and amended complaint. The park ordinance is required to pass strict scrutiny and it doesn't. This court and defendants' arguments fail as a matter of law. Mr. Myers is extremely likely to succeed on the merits of his first amendment claim because the ordinance does not pass strict scrutiny and the defendants don't even present any arguments that it does. All defendants' arguments revolve around the incorrect standard of intermediate scrutiny.  Therefore, their legal arguments are not applicable, and they have made no relevant arguments.

"Second, Section 18 is narrowly tailored to serve a significant governmental interest: ensuring that public spaces are safe and peaceful. The Supreme Court has held that conserving public park property and ensuring that parks are adequately protected so that the public may enjoy them is a significant governmental interest. Clark v. Community for Creative Non-Violence et al, 468 U.S. 288, 296 (1984). Similarly, the government "ha[s] a substantial interest in protecting its citizens from unwelcome noise", such as yelling and obscenities. City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 806 (1984). "[T]he government may act to protect even such traditional public forums as city streets and parks from excessive noise." Ward v Rock Against Racism, 491 U.S. 781, 796 (1989)("The city enjoys a substantial interest in ensuring the ability of its citizens to enjoy whatever benefits the city parks have to offer"). Id at 797.

Here, the Ordinance promotes that significant government interest by prohibiting disorderly, disruptive conduct that would interfere with the use of the park system by other members of the public. The Ordinance does not prohibit all speech; it narrowly bars only that speech and conduct which is reasonably likely to interfere with the peaceful enjoyment of county property by others. And indeed, this case shows exactly why such a regulation is needed to promote that significant government interest." (ECF 75 pg. 11)

The cases that the defendants cite here have absolutely no relevance in this case. They involve amplified music and sound trucks. The defendants seem to aver that the government should be allowed to ban obscenities. That's absolutely ridiculous, and that argument cannot even be made in good faith. The defendants seem to think that the 1st amendment and protected speech are something that they can manipulate to their desires. That's not how this works. Fuck is a four-letter word. It's illegal to ban "obscenities" in a traditional public forum. The irony here

9

is Mr. Myers has observed numerous "FUCK JOE BIDEN" flags in the same park that the defendants want to ban Mr. Myers from for allegedly using "profanity". This case shows why defendants need to be punished for their actions and the park ordinance changed.

  The defendants still haven't realized that everything Mr. Myers is alleged to have said would be protected speech in a traditional public forum. Mr. Myers was not cited for disorderly conduct. All filings by defendants indicate that Mr. Myers was banned for his statements to manager Bailey protesting the illegal use of motorized bicycle by Ethan Wright. So clearly the defendants allege that Mr. Myers' protected speech and conduct was a violation of their unlawful ordinance. The only speech and conduct that can be banned in a traditional public forum is unprotected speech and conduct. You cannot regulate protected speech in a traditional public forum unless the regulation passes strict scrutiny. Mr. Myers did not make any threats or use unprotected speech. In fact, defendants have not presented a single piece of admissible evidence that Mr. Myers used unprotected speech. Therefore, they contradict their own statements that they banned Mr. Myers in the best interests of other park users for allegedly using profanity.

  Defendants claim, "The Ordinance does not prohibit all speech; it narrowly bars only that speech and conduct which is reasonably likely to interfere with the peaceful enjoyment of county property by others." Defendants now freely admit that the ordinance is actually an attempt to regulate speech and conduct, after attempting to argue it only regulates conduct and not speech. Therefore, the ordinance must pass strict scrutiny even if its content neutral as the defendants allege. The ordinance cannot ban speech and conduct based on how it interferes with others' use of the park. They can only regulate speech and conduct based on if it is protected speech or conduct. If Mr. Myers protected speech and conduct in a traditional public forum disturbed or annoyed another park user, too bad. Welcome to the park. You consent to the opportunity that you may encounter speech or conduct that may disturb or annoy you when you enter a traditional public forum. As long as that speech and conduct is constitutionally protected, such as Mr. Myers, other users just have to deal with it. It's the blessing and the curse of traditional public forums and the 1st amendment.

"Against this background, the issue flushed by this case stands out in bold relief. It is whether California can excise, as 'offensive conduct,' one particular scurrilous epithet from the public discourse, either upon the theory of the court below that its use is inherently likely to cause violent reaction or upon a more general assertion that the States, acting as guardians of public morality, may properly remove this offensive word from the public vocabulary.

The rationale of the California court is plainly untenable. At most it reflects an 'undifferentiated fear or apprehension of disturbance (which) is not enough to overcome the right to freedom of expression.' Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969). We have been shown no evidence that substantial numbers of citizens are standing ready to strike out physically at whoever may assault their sensibilities with execrations like that uttered by Cohen. There may be some persons about with such lawless and violent proclivities, but that is an insufficient base upon which to erect, consistently with constitutional values, a governmental power to force persons who wish to ventilate their dissident views into avoiding particular forms of expression. The argument amounts to little more than the self-defeating proposition that to avoid physical

censorship of one who has not sought to provoke such a response by a hypothetical coterie of the violent and lawless, the States may more appropriately effectuate that censorship themselves. Cf. Ashton v. Kentucky, 384 U.S. 195, 200, 86 S.Ct. 1407, 1410, 16 L.Ed.2d 469 (1966); Cox v. Louisiana, 379 U.S. 536, 550—551, 85 S.Ct. 453, 462—463, 13 L.Ed.2d 471 (1965).

Admittedly, it is not so obvious that the First and Fourteenth Amendments must be taken to disable the States from punishing public utterance of this unseemly expletive in order to maintain what they regard as a suitable level of discourse within the body politic. We think, however, that examination and reflection will reveal the shortcomings of a contrary viewpoint.

At the outset, we cannot overemphasize that, in our judgment, most situations where the State has a justifiable interest in regulating speech will fall within one or more of the various established exceptions, discussed above but not applicable here, to the usual rule that governmental bodies may not prescribe the form or content of individual expression. Equally important to our conclusion is the constitutional backdrop against which our decision must be made. The constitutional right of free expression is powerful medicine in a society as diverse and populous as ours. It is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, in the hope that use of such freedom will ultimately produce a more capable citizenry and more perfect polity and in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests. See Whitney v. California, 274 U.S. 357, 375—377, 47 S.Ct. 641, 648—649, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring).

To many, the immediate consequence of this freedom may often appear to be only verbal tumult, discord, and even offensive utterance. These are, however, within established limits, in truth necessary side effects of the broader enduring values which the process of open debate permits us to achieve. That the air may at times seem filled with verbal cacophony is, in this sense not a sign of weakness but of strength. We cannot lose sight of the fact that, in what otherwise might seem a trifling and annoying instance of individual distasteful abuse of a privilege, these fundamental societal values are truly implicated. That is why '(w)holly neutral futilities * * * come under the protection of free speech as fully as do Keats' poems or Donne's sermons,' Winters v. New York, 333 U.S. 507, 528, 68 S.Ct. 665, 676, 92 L.Ed. 840 (1948) (Frankfurter, J., dissenting), and why 'so long as the means are peaceful, the communication need not meet standards of acceptability,' Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971).

Against this perception of the constitutional policies involved, we discern certain more particularized considerations that peculiarly call for reversal of this conviction. First, the principle contended for by the State seems inherently boundless. How is one to distinguish this from any other offensive word? Surely the State has no right to cleanse public debate to the point where it is grammatically palatable to the most squeamish among us. Yet no readily ascertainable general principle exists for stopping short of that result were we to affirm the judgment below.  For, while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric. Indeed, we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual.

11

Additionally, we cannot overlook the fact, because it is well illustrated by the episode involved here, that much linguistic expression serves a dual communicative function: it conveys not only ideas capable of relatively precise, detached explication, but otherwise inexpressible emotions as well. In fact, words are often chosen as much for their emotive as their cognitive force. We cannot sanction the view that the Constitution, while solicitous of the cognitive content of individual speech has little or no regard for that emotive function which practically speaking, may often be the more important element of the overall message sought to be communicated. Indeed, as Mr. Justice Frankfurter has said, '(o)ne of the prerogatives of American citizenship is the right to criticize public men and measures—and that means not only informed and responsible criticism but the freedom to speak foolishly and without moderation.' Baumgartner v. United States, 322 U.S. 665, 673—674, 64 S.Ct. 1240, 1245, 88 L.Ed. 1525 (1944).

Finally, and in the same vein, we cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process. Indeed, governments might soon seize upon the censorship of particular words as a convenient guise for banning the expression of unpopular views. We have been able, as noted above, to discern little social benefit that might result from running the risk of opening the door to such grave results." Cohen v. California, 403 U.S. 15 (1971)

"Finally, the Ordinance leaves open adequate alternative channels of communication. The Ordinance continues to permit expressive activity in the park and has no effect on the quantity or content of that expression beyond regulating the extent and manner of the expression. See e.g. Id. at 802. An individual can communicate anything he or she wishes in a manner that is not abusive or disruptive. Plaintiff could have lodged a verbal or written complaint about the use of e-bikes on the trail with defendants (without screaming, swearing, harassing or berating others), and that would not violate the Ordinance. Plaintiff cannot show that remaining avenues of communication are inadequate, particularly with the number of appearances by Plaintiff at both County buildings and County Commission meetings, where on at least one occasion, he showed up with signage that stated "Fuck Christopher Wren," directed at the County's Administrator and a Defendant in this case" (ECF 75 pg. 11)

     Defendants have not presented any admissible evidence of the material fact that Mr. Myers was screaming, swearing, harassing or berating others. Because that did not happen. Mr. Myers was neither abusive or disruptive, and defendants have not presented any evidence as such. Mr. Myers has presented video evidence that shows exactly what he said and how he said it while lodging his verbal complaint with park staff and law enforcement. The defendants are talking in circle here. They state that Mr. Myers could have lodged a verbal complaint with park staff, and then state that Mr. Myers is banned for his verbal complaint to park staff. The defendants are not even making a coherent legal argument here. They admit the ordinance regulates protected speech and conduct, and admit that Mr. Myers is banned for his protected speech and conduct, but it's not legal to regulate protected speech in a traditional public forum. Mr. Myers was banned for his protected speech and the defendants do not offer an alternative to

lodging a verbal complaint. If Mr. Myers lodging a verbal complaint violates the ordinance, what is the alternative, that doesn't regulate protected speech or conduct? The alternative channel of communication must allow protected speech and conduct also. The defendants do not offer a legal alternative to Mr. Myers actions that are not a regulation on protected speech and conduct.

That's exactly why this park ordinance does not pass strict scrutiny, the correct standard that should be applied.

Defendants reference to Mr. Myers constitutionally protected behavior at an open public meeting in which he exercised his 1st amendment rights has no bearing on this case. It is an immaterial fact included in an attempt to bias and prejudice the court against Mr. Myers. This is a continued pattern throughout this litigation where the defendants will abuse the federal rules and intentionally mislead the court without any repercussions from this court. Let the record reflect that.

"Thus, under black-letter constitutional law, the Ordinance passes intermediate scrutiny and Plaintiff's First Amendment claim should be dismissed." (ECF 75 pg. 13)

Because there is a clear dispute of material fact, and defendants' legal arguments are incorrect and made in bad faith in order to prejudice the court, their motion must be denied. The ordinance is required to pass strict scrutiny, which it doesn't. Defendants haven't even attempted to argue that the ordinance passes strict scrutiny. They admit that it is an attempt to regulate speech and conduct, and that Mr. Myers is banned for his use of protected speech.

### Argument 4: Defendants Fourth Amendment Argument

"Plaintiff's Fourth Amendment Claim Fails As A Matter Of Law.

In this case, there is no genuine dispute of material fact that there was no search or seizure, let alone an unreasonable one. Plaintiff was never detained, arrested or searched…….Accordingly, his Fourth Amendment claim is meritless and should be dismissed." (ECF 75 pg. 13)

Once again this is an attempt to obfuscate the facts and intentionally mislead this court to prejudice Mr. Myers. At no point has Mr. Myers claimed that access to a public park represents a seizure. That is factually incorrect. Mr. Myers has not had the proper forum to articulate his claim of 4th amendment violations. Now that he has that forum, he can further detail his legal position.

Mr. Myers was detained, it's clearly visible on bodycam footage. Mr. Myers and defendant Freriks were involved in an investigative detainment. During this detainment Mr. Myers protested the use of motorized bike by Ethan Wright and indicated that he had video of his discussion with Mr. Wright. When defendant Freriks asked Mr. Myers for his personal information, Mr. Myers exercised his 5th amendment right and ended the investigative detainment. Mr. Myers was told he was free to go, and defendant Freriks would not be taking any enforcement action. Mr. Myers then spoke to deputy Kalinowski and protested the lack of enforcement of motorized bicycles on the Dragon trail. Deputy Kalinowski told Mr. Myers he would not be taking any action and there was nothing Mr. Myers could do. Mr. Myers then left the park without providing any of his personal information, and being told by law enforcement that he was not under investigation and was free to leave.

Defendant Freriks then unlawfully searched Mr. Myers information in the Newaygo County 911 database in order to provide it to Defendant Smith. Defendant Smith then used this

unlawfully obtained information to unlawfully ban Mr. Myers from Newaygo County traditional public forums in retaliation for his protected speech.

If the defendants were initiating a criminal investigation of Mr. Myers for breaking state law, they should have requested that information through the proper method of an official request or warrant signed by the judge. The defendants cannot argue both ways. They cannot say that they accessed Mr. Myers' information as part of their criminal investigation, and then claim that there was no criminal investigation and punishment of Mr. Myers.

It's clear to everyone that they unlawfully searched Mr. Myers' information in an electronic database, without any documentation of an investigation. There is no record of any investigation by defendants, however Mr. Myers was punished for a violation of State Law without due process in a court of law. There is a clear dispute of material facts and defendant's legal arguments are incorrect. Therefore, must be denied.

### Argument 5: Defendants Fifth Amendment argument

"Plaintiff's Fifth Amendment Claim Fails As A Matter Of Law.

The Fifth Amendment applies to the federal government, not state or local governments such as the County. Scott v. Clay County, Tenn., 205 F.3d 867, 873 n. 8 (6th Cir. 2000). Accordingly, Plaintiff has no Fifth Amendment rights as to the County or its employees and officials and this claim should be dismissed." (ECF 75 pg. 13-14)

Once again, the defendants make an incorrect legal argument, as well as fail to show that there is no factual dispute of material fact. The 5th amendment protects individuals from self-incrimination in a criminal investigation. The defendants have failed to even attempt to make a good faith legal argument. Mr. Myers was detained by Defendant Freriks for investigative purposes. This is clearly visible in the bodycam footage. When defendant Freriks attempted to obtain Mr. Myers' personal information Mr. Myers exercised his 5th amendment right and ended the investigative detainment. Defendant Freriks told Mr. Myers he was free to go and there would be no further investigation or enforcement.

Because Mr. Myers exercised his 5th amendment right to be free from self-incrimination and then defendants still searched his name on the computer in order to unlawfully ban him, there is a clear dispute of material facts and must be denied.

Furthermore, the due process clause of the 14th amendment incorporates the 5th amendment. Mr. Myers has a 14th amendment claim for violation of the due process clause; therefore the 5th amendment is also a valid claim.

### Argument 6: Defendants Fourteenth Amendment argument

"Plaintiff's Fourteenth Amendment Claim Fails as A Matter Of Law.

Plaintiff's Fourteenth Amendment claim seems to allege that he has been banned from County Parks without due process of law. While the Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property without due process of the law, such protected property interests "are

not by the Constitution. Rather, they are created, and their dimensions are defined by, an independent source such as state statutes or rules entitling the citizen to certain benefits." Goss v. Lopez, 419 U.S. 565 (1975) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). To be entitled to procedural due process protections, Plaintiff must prove that the benefit he is allegedly being deprived of— access to the Newaygo County Parks—is a property interest created by state law. To have a property interest in something, as required to allege a violation of the Due Process Clause of the Fourteenth Amendment based on its deprivation, a person clearly must have more than an abstract need or desire for it, and he must have more than a unilateral expectation of it; he must, instead, have a legitimate claim of entitlement to it. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).

Here, as a matter of law, Plaintiff does not have a protected property interest in using Newaygo County Parks. There is no Michigan state law creating a protected property interest in accessing county parks. In fact, the County and Regional Parks Act permits counties to adopt, amend, or repeal rules for the protection, regulation, and control of its facilities and areas, such as the Ordinance that Plaintiff violated. MCL 46.364(1). Without a protected property interest, Plaintiff's Fourteenth Amendment claim fails." (ECF 75 pg. 14-15)

      Mr. Myers has not claimed that he has a property interest in access to Newaygo County traditional public forums. He has claimed that he has a 1st amendment liberty interest in access to traditional public forums. Liberty interests are a 1st amendment right, to take those away from someone it requires Due Process. Mr. Myers is being deprived access to Newaygo County traditional public forums in retaliation for his protected speech. There is no question that there is a dispute of material fact.

      Let the record reflect that the defendants are now claiming that Public Act 261 of 1965 MCL 46.364(1) makes the Newaygo County Parks and Recreation Commission board a legal entity that can create and enforce rules on its land. However, when arguing against Mr. Myers amended complaint, the defendants intentionally misled this court by stating that the Parks and Recreation Commission board was not a legal entity and therefore could not be sued. This is just another example of the Defendants manipulating this court to fit their narrative. The defendants continue to modify their story as needed to suit their narrative. They have contradicted themselves throughout this litigation and continue to go unpunished for their bad faith arguments intended to prejudice Mr. Myers. The Parks and Recreation Commission Board does have the authority to create and enforce rules, and the very same Public Act also makes a violation of the park ordinance a misdemeanor offense. The defendants had an obligation under State and Federal law to provide Mr. Myers with due process in a court of law if they were punishing him for a misdemeanor crime. The defendants violated their own established policy in their rush to punish Mr. Myers in retaliation for his protected speech and conduct. They could have issued Mr. Myers a citation so he could have appeared in court to defend himself against these false allegations. Because the defendants knew that their lies would not hold up in a court of law, they attempted to bypass the legal process and put the burden on Mr. Myers to enforce his rights in Federal Court.

"Plaintiff has insisted that he has a "liberty interest in a traditional public forum" and that "enforcement of the ordinance against Mr. Myers without Due Process is a violation of Mr. Myers [sic] 14th

Amendment rights." (ECF No. 14.) As the Court correctly stated, "[a]ccess to a county park is not a fundamental right, deeply rooted in this Nation's history and tradition, in which one possesses a liberty interest." (ECF No. 61 PageID #847.) See Moore v. City of East Cleveland, 431 U.S. 494, 503 (1977). Plaintiff therefore does not have a "liberty interest" in access to Newaygo County Parks, so his procedural due process claim fails.

With regard to Plaintiff's substantive due process claim, Plaintiff cannot prevail because he has not shown a violation of his First Amendment rights, and thus his liberty interests in free speech and expression are not impacted. (ECF No. 61, PageID #848.) See Neinast v. Bd. Of Trs. Of Columbus Metro. Library, 190 F. Supp. 2d 1040, 1048 (S.D. Ohio 2002). Therefore, Plaintiff's constitutional claims should be dismissed in their entirety." (ECF 75 pg. 15)

Continuing the trend throughout this litigation, defendants once again make incorrect legal arguments in regard to Mr. Myers protected liberty interests in a traditional public forum. The defendants rely on this court's incorrect legal conclusions as the basis for their argument. This court was flat out wrong in its conclusion that access to a traditional public forum is not a liberty interest. This conclusion is clearly contrary to all established case law. Hague vs CIO and every case since has concluded that access to traditional public forums is a protected liberty interest. "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens." (Hague vs CIO June 5, 1939 307 U.S. 496 page 515)

The case law that this court cited, Cleveland vs Moore has no relevance in this case. This courts incorrect legal conclusions when denying Mr. Myers' motion for preliminary injunction, and motion for leave to amend complaint are currently being appealed in the 6th circuit court. Mr. Myers is absolutely correct in his legal arguments; therefore, he looks forward to the 6th circuit overturning all this courts incorrect decisions. Defendants' reliance on this courts incorrect conclusions means that their arguments fail as a matter of law, and there is clearly a dispute of material fact.

## SUMMARY

As this court can once again see, the defendants are relying on nothing more than smoke and mirrors to intentionally mislead this court and prejudice the proceedings against Mr. Myers. As this court stated in its Order denying Mr. Myers Motion for Preliminary injunctions, there are clearly factual disputes left to resolve. "While there are factual disputes left to be resolved, if Plaintiff—a private citizen—did indeed take it upon himself to enforce a County Ordinance to the point where he chased another individual for five miles down the Dragon Trail while berating the individual and causing the police to be called due to safety concerns, Plaintiff's ban from Commission-owned property may be justified. Thus, the last two factors also weigh against granting the requested injunctive relief." (ECF-61 pg. 17) That's about the only thing this court has gotten correct so far. The defendants have not made a single relevant legal argument. Instead choosing to try and manipulate the court into believing their fairy tale. The defendants have not met the Rule 56 standard of material facts either. The defendants have not met the burden required to be granted

summary judgment because there remains a clear dispute of material facts on all Mr. Myers claims. Defendant's legal arguments also fail as a matter of law. Defendants have made numerous arguments in bad faith in an attempt to obfuscate the facts.

For the reasons detailed, defendants' motion for summary judgment must be denied. Failure to do so would be a legal error by this court and will be appealed immediately. Mr. Myers currently has a motion for preliminary injunction and motion for leave being appealed in the 6th circuit court that will make this motion for summary judgment moot also. Once Mr. Myers amended complaint becomes the operative pleading defendants motion becomes moot.

Rule 56 violation by Defendants

Moving onto defendants attempt to turn a rule 56 motion into a motion for sanctions under the court's inherent power. The defendants have once again violated Federal Rules continuing a trend throughout this litigation. Starting with defendants attempting to turn a Rule 11 motion into a dispositive motion in an attempt to intentionally mislead this court, as well as intentionally delay and obstruct this litigation. Defendants used a Rule 11 motion, the most powerful tool in the Federal Rules, as an attempt to have Mr. Myers sanctioned for emails that contained protected speech. Mr. Myers did not violate Rule 11 and defendants' use of Rule 11 improperly should have led to them being sanctioned for their violation of Rule 11. Rule 11 is to punish filings with the court that are filed to intentionally mislead the court and grind the wheels of justice to a halt. Instead of defendants Rule 11 motion being outright dismissed for not meeting the legal standard of a Rule 11 motion, this court attempted to chastise Mr. Myers for his communications with defendants' counsel. This court already admitted that emails between counsel fall under the MRPC, which Mr. Myers is not a member of. Instead, this court should have held defendants accountable for their abuse of Rule 11 and the legal process, as well as their numerous intentionally misleading statements and complete lies in their response to Mr. Myers motion for preliminary injunction and motion for leave to amend. This court has allowed defendants to abuse Federal Rules and manipulate it into showing substantial prejudice towards Mr. Myers throughout this litigation.

Defendants once again ask this court to play kindergarten playground monitor in the incorrect forum. Defendants need to realize that a few sarcastic emails do not constitute abusive litigation. Defendants have not presented any evidence to support their outlandish claims either.

Defendants claim, "Defendants submit to the Court that these circumstances are extreme; not only are Plaintiff's claim meritless, but Plaintiff has also engaged in abusive litigation practices and conduct against defense counsel (including its staff), Defendants, and potential witnesses in this case and continues to do so despite this Court's Orders". (ECF 75 pg. 21)

This is a complete lie unsupported by any evidence. Mr. Myers and defense counsel have exchanged several dozen emails since this court's December order. The defendants point to a couple emails in nearly 6 months as a reason they think this court should dismiss this case. Mr. Myers has not contacted a single defendant since this court's order, and defense counsel has

presented no evidence of such. Mr. Myers has not contacted any potential witnesses in this case since this court's order, and defendants have not presented any evidence of such. So that narrows it down to defendant's thinking that sarcastic emails qualify as abusive litigation. This is so outlandish that no attorney could make these arguments in good faith. First of all, the defendants claim that Bryan Kolk is a potential witness, however during discovery when Mr. Myers attempted to schedule a deposition with Bryan Kolk, he was told they would not allow that because he was not a potential witness and not a party to this case. When Mr. Myers requested answers in his interrogatory from Bryan Kolk, all defense counsel did was provide complete boilerplate answers, and claim that because Bryan Kolk was not a party they object to the request.

As this court can see it is defense counsel who abused rule 37 with their boilerplate objections made in bad faith in their interrogatory responses, their refusal to make their clients available for depositions, their refusal to produce relevant electronic evidence. Defendants also potentially violated rule 11 with no less than 4 filings with this court that contain nothing more than statements designed to intentionally mislead this court. It is defendants who are using rule 56 as a sanction motion which is a clear violation of Rule 11 and Rule 56.

Defendants' request for sanctions should not only be denied but should potentially lead to them being sanctioned under Rule 56. They not only make intentionally misleading statements, they also provide absolutely no evidence in support of their material facts. Because there is no evidence available that would allow defendants to back up their lies. Mr. Myers has clearly not violated any of this court's order, and to suggest otherwise is being disingenuous. Mr. Myers absolutely disagrees with pretty much every decision this court has made. However, he has still followed the courts orders and will continue to do so throughout the litigation.

Abusive litigation involves filings with the court, not sarcastic emails between counsel. The defendants do not even come anywhere close to meeting the burden of proof necessary to prove that Mr. Myers has engaged in abusive litigation. Mr. Myers has not violated any Federal Rules. If the defendants are asking this court to dismiss this case under its inherent powers because of sarcastic emails, they are nothing more than desperately attempting to take the focus away from the material facts and legal conclusions in this case. Instead of making proper legal arguments and presenting undisputed material facts, defendants spent way more effort crafting their attempted manipulation of this court into exercising more prejudice against Mr. Myers.

In order for this court to exercise its inherent powers and dismiss this litigation it would need to meet a very high standard, and defendants have not presented any arguments that even come close to the standard required to dismiss under rule 41. Dismissals under a court's inherent powers are subject to much the same considerations as those under the Federal Rules of Civil Procedure. A district court must determine (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case, and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct, and (6) the government interests at stake. No case in Federal

Court history has been dismissed because of sarcastic emails. Here we are once again with the defendants violating Federal Rules and abusing the legal system.

The case defendants cite actually supports Mr. Myers. "Dismissal under a court's inherent powers is justified in extreme circumstances, in response to abusive litigation practices, and to insure the orderly administration of justice and the integrity of the court's orders." Halaco Eng'g Co. v. Costle, 843 F.2d 376, 380 (9th Cir. 1988)."

In that case the circuit court overturned the district court's dismissal, because it found that dismissal was only in extreme cases, and that burden is very high. The defendants have not come anywhere close to that burden. Furthermore, defendants have attempted to use a Rule 56 motion as a motion for sanctions which is a violation of Federal Rules itself. Defendants once again knowingly abused the Federal Rules in order to prejudice the court.

The defendants are playing a dangerous game, because they have relied on lies, manipulation, and abusing the Federal Rules up to this point. Now it has all caught up to them, as shown in their preposterous filing of this motion for summary judgment which contained a bevy of disputed material facts, incorrect legal conclusions, as well as a violation of Federal Rules for attempting to move for sanctions. The defendants have no chance of prevailing on the merits of their arguments. Therefore, they attempt to shift the focus to immaterial facts like Mr. Myers emails, and communications with public officials who are not a party to this case. They want this court to punish legal, constitutionally protected behavior instead of focusing on the very serious legal claims in Mr. Myers case. There is no question that Mr. Myers will prevail in this case on the merits of his claims. Defendants can either reach a settlement or lose at jury trial. Either way, it's going to happen.

As this court can see and the record shall reflect defendants' motion for summary judgment must be denied because there are numerous material facts in dispute. Defendant's legal arguments also fail as a matter of law. Furthermore, defendants have violated Rule 56 by attempting to move for sanctions absent a separate motion for violations outside of Rule 56. Mr. Myers now relies on this court to apply the correct standards of review when analyzing defendants' motion for summary judgement.

May 25th, 2023                                                                                          S/Lane Myers

                                                                                                        Pro Se

                                                                                                        1583 Grange Rd

                                                                                                        Trenton Mi 48183