UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANE MYERS,

    Plaintiff,

v

CHRISTOPHER WREN, NICHOLAS
SMITH, SGT. CHRISTOPHER FRERIKS,
NEWAYGO COUNTY,

    Defendants.

HON. PAUL L. MALONEY

U.S. WESTERN DISTRICT JUDGE

PHILLIP J. GREEN
U.S. MAGISTRATE JUDGE

CASE NO. 1:22-cv-00748-PLM-PJG

---

Lane Myers
Plaintiff, *In Pro Se*
4583 N. Sugarbush Pl
Tucson, AZ 85749
(313) 587-1880
Meyerlansky879@gmail.com

Haider A. Kazim (P66146)
Matthew W. Cross (P77526)
Neal A. Wilds (P85924)
CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defendants
125 Park Street, Suite 300
Traverse City, MI 49684
(231) 922-1888
hkazim@cmda-law.com
mcross@cmda-law.com
nwilds@cmda-law.com

---

## **DEFENDANTS' MOTION FOR SANCTIONS**

NOW COME Defendants, CHRISTOPHER WREN, NICHOLAS SMITH, SGT. CHRISTOPHER FRERIKS, and NEWAYGO COUNTY, by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., and for their Motion for Sanctions state as follows:

1.    This case centers on an altercation in which Plaintiff berated a fellow patron of a Newaygo County Park, and then berated the Park Manager, which led to him being banned from the park for a period of time.

2.    This case has been litigated for over two years, initially being dismissed by this Court before being reversed, in part, by the Sixth Circuit Court of Appeals given that Plaintiff has a protected liberty interest in accessing park property. The only pending claims are a claim for violation of procedural due process and a *Monell* claim.

3.    As noted in a prior Opinion and Order from this Court, Plaintiff has demonstrated a pattern of being hostile, outlandish, and inappropriate in his interactions with opposing counsel and County employees, which the Court previously described as "inappropriate and concerning." (ECF No. 61, PageID.858-860).

4.    Although the Court denied prior defense counsel's motion for sanctions (ECF No. 26), it ordered Plaintiff to: "conduct himself at all times in this litigation in a civil and professional manner"; "**not harass, berate, demean, threaten, or use abusive language in communicating with defense counsel**"; "**treat defense counsel with civility at all times**"; and not contact "**any named Defendant regarding this litigation and the related factual issues**." The Court warned that "[f]ailure to comply with this order may result in sanctions, **including dismissal of this litigation**." (ECF No. 61, PageID.863) (emphasis added).

5.    As detailed in the accompanying Brief in Support, Plaintiff has repeatedly and willfully violated this Court's December 22, 2022 Opinion and Order.

6.    Sanctions are warranted and the only sanction that would adequately address Plaintiff's incorrigible behavior is dismissal with prejudice.

7.    Pursuant to Local Rule 7.1(d), Defendants were unable to obtain Plaintiff's concurrence.

WHEREFORE, Defendants respectfully request the Court grant their Motion for Sanctions and enter an Order dismissing Plaintiff's Amended Complaint with prejudice and requiring

Plaintiff to pay Defendants' reasonable expenses incurred in bringing the present motion, including attorney fees.

                                    Respectfully submitted,

Dated: March 21, 2025               CUMMINGS, McCLOREY, DAVIS
                                    & ACHO, P.L.C.


                                    Matthew W. Cross (P77526)
                                    Attorneys for Defendants
                                    125 Park Street, Suite 300
                                    Traverse City, MI 49684
                                    (231) 922-1888
                                    mcross@cmda-law.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANE MYERS,                                        HON. PAUL L. MALONEY

    Plaintiff,                                    U.S. WESTERN DISTRICT JUDGE

v                                                  PHILLIP J. GREEN
                                                   U.S. MAGISTRATE JUDGE
CHRISTOPHER WREN, NICHOLAS
SMITH, SGT. CHRISTOPHER FRERIKS,                   CASE NO. 1:22-cv-00748-PLM-PJG
NEWAYGO COUNTY,

    Defendants.

---

| | |
|---|---|
| Lane Myers<br>Plaintiff, *In Pro Se*<br>4583 N. Sugarbush Pl<br>Tucson, AZ 85749<br>(313) 587-1880<br>Meyerlansky879@gmail.com | Haider A. Kazim (P66146)<br>Matthew W. Cross (P77526)<br>Neal A. Wilds (P85924)<br>CUMMINGS, McCLOREY, DAVIS &<br>ACHO, P.L.C.<br>Attorneys for Defendants<br>125 Park Street, Suite 300<br>Traverse City, MI 49684<br>(231) 922-1888<br>hkazim@cmda-law.com<br>mcross@cmda-law.com<br>nwilds@cmda-law.com |

---

## **DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SANCTIONS**

### Introduction

Despite a clear and unequivocal warning from this Court, Plaintiff continues his yearslong

pattern of offensive, unprofessional, and vitriolic behavior—most recently mixing in a bit of

homophobia. Plaintiff continues to thumb his nose at this Court, based on his mistaken belief he

can act with impunity by hiding behind his *pro se* status and First Amendment rights. As our courts

have explained, that is quite simply not the case and this Plaintiff must be sanctioned in the form

of dismissal of this action because no lesser sanction will do anything to dissuade his completely unacceptable behavior.

## Statement of Relevant Facts

This lawsuit arose because Plaintiff verbally harassed, yelled at, and chased down another park visitor, Ethan Wright, for riding an electric mountain bike on a public park trail in Newaygo County (hereafter referred to as "County"), and then yelled and swore at the Park Manager. (ECF No. 40, PageID.558, 569). Plaintiff was ultimately banned from the park for a period of time for violating the Newaygo County Parks Ordinance Rules and Regulations, which led to this lawsuit being filed.

Prior to the filing of Plaintiff's Amended Complaint (ECF No. 106) and the appearance of the undersigned, this case was being defended by attorneys from Foster, Swift, Collins & Smith, P.C. Plaintiff quickly demonstrated his inability to comport himself with any measure of professionalism or civility, which prompted prior counsel to file a Motion for Sanctions (ECF No. 26). In various filings, prior counsel detailed the following unhinged missives from Plaintiff:

- "If you wanted a legal battle, you definitely picked the right person for that. Im [sic] going to systematically destroy any credibility you and your clients have. Because they are cowards and liars. You are protecting lying cowards, for money. You should move to North Korea since you don't take your responsibilities as a US Citizen to protect and uphold the constitution serious. . . . If you need some help moving to North Korea I will help you pack." (ECF No. 28-1, PageID.383).

- "I eat lawyers like you for lunch. No law degree. Straight facts, bro. The best part is all I have to do is cite case law in the Sixth and watch you get absolutely destroyed by the judge for even fighting this case." (ECF No. 28-1, PageID.389).

- "Thats [sic] why you will be a public defender after this case. Your arguments are trash." (ECF No. 28-1, PageID.401).

- "Of course I'm pissed, think you are trash lawyers, and am going to continue to absolutely destroy you every chance I can get. YOU put yourself in this position when you failed to advise your clients to let me use the park and change the ordinance to make it pass constitutional scrutiny." (ECF No. 40-5, PageID.589).

- "I suggest you read this very closely and advise your clients to follow the law. Or they will have more litigation to deal with . . . I suggest you apologize for attempting to violate my rights . . . You've been warned." (ECF No. 21-2, PageID.134).

- "Thats [sic] why you are shit lawyers who should be fired immediately and sent to work as public defenders. You think you are above the law and rules. SURPRISE SURPRISE, youre [sic] not. And those idiots who you represent are not either. They are corrupt public servants. So get your popcorn, cause we are going to be here until this is resolved. Im [sic] not going anywhere anytime soon." (ECF No. 57-2, PageID.816).

- An email to Mr. Homier with the subject line "Safety First" that said, "I hope you are able to find a safe space to consume this information" and attached a link to Plaintiff's personal Facebook page, which included the following image:



(ECF No. 28, PageID.357)

- "Katherine Henrichs [Plaintiff's girlfriend] will not be testifying at any time. Any attempt to contact or bring her into this case will immediately end any chance of a settlement. Fuck around and find out." (ECF No. 40-5, PageID.584).

Plaintiff sent similar missives to Ethan Wright (ECF No. 28-1, PageID.386-387; ECF No. 27-5, PageID.336) and to County officials, including named Defendants (ECF No. 21-2, PageID. 117; ECF No. 28-1, PageID.420).

Although this Court ultimately denied prior counsel's Motion for Sanctions without prejudice, it ordered Plaintiff "to conduct himself in a civil and professional manner in this litigation henceforth." (ECF No. 61, PageID.861). This Court went on to "caution[] Plaintiff

regarding his behavior", indicating that "**if Plaintiff fails to conduct himself civilly and professionally in this litigation, the Court will not hesitate to sanction Plaintiff, <u>including in the form of dismissing this matter</u>**." (ECF No. 61, PageID.862) (emphasis added). Finally, the Court clearly and unequivocally "prohibit[ed] Plaintiff from contacting or communicating with any named Defendants regarding this matter; he may only contact their attorneys" and required Plaintiff to treat defense counsel, and Mr. Wright, "with respect, and he must conduct himself civilly and professionally" and "[f]ailure to do so may result in sanctions." *Id*. The Court ordered the following:

> Plaintiff is [] ordered to conduct himself at all times in this litigation in a civil and professional manner. **Plaintiff shall not harass, berate, demean, threaten, or use abusive language in communicating with defense counsel, and he shall treat defense counsel with civility at all times**. …Plaintiff is **prohibited from directly contacting any named Defendant regarding this litigation and the related factual issues**. Failure to comply with this order may result in sanctions, **including dismissal of this litigation**. (ECF No. 61, PageID.863) (emphasis added).

Plaintiff failed to heed the Court's warning.

On January 13, 2025, after several emails regarding the selection of a mediator for this case, Plaintiff referred to the Court's ADR Administrator as a "dumb cunt" who hung up on him because "shes (sic) retarded and incompetent." **Exhibit A**, 1/13/25 Email from Plaintiff RE ADR.[1] In that exchange, he went on to state:

> "Its (sic) not my fault you and the ADR Clerk cant (sic) read the docket or the rules of procedure. Im (sic) not paying a fucking penny for ADR. End of discussion. The judge can waive the fees like the rules say, or he can waive ADR like last time.

---

[1] Notably, this disrespect of court staff is not an isolated incident. On October 21, 2024, Plaintiff expressed his desire to "cuss the judge out", referring to the magistrate and district court judge as "moron judges." **Exhibit B**, 10/21/24 Email from Plaintiff.

Why the fuck would I pay some scam ass lawyer to waste my own fucking time. You morons are not going to negotiate in good faith anyways. You have had over 2 years to settle this case, and still think you can come up with some magic legal theory to beat me. Its (sic) not going to happen. You are being paid to defend Chris Wrens (sic) ego and save face. You are not defending innocence. You are throwing a lot of money at a losing case. You havent (sic) been honest either.

You have 7 days to settle this case with me or I am going to make a new youtube video about you and this case everyday (sic) until trial. This is not a game. You are stealing taxpayer money, and lying. Thats (sic) not gonna (sic) go over well with the Court of Public Opinion. You will probably get hundreds of BAR complaints. I have been so busy with the 16 fake charges I havent (sic) even had time to make videos about this case yet. Now this is back to being my only case. Its (sic) about to get really exciting for Newaygo County officials and their lawyers stealing money. They are about to get hundreds of calls and emails a day from concerned citizens. Over 2 years of stealing tax money to try and win aa (sic) case you cant (sic) win just to save Chris Wren. They are going to love this." *Id*.

Plaintiff followed his email up by making a several hours long YouTube video encouraging his supporters to call and harass County officials. His supporters heeded that call and, importantly, Plaintiff made several calls himself, a clear violation of this Court's Order. **Exhibit C**, Voicemails from Plaintiff to Defendants (stating that Chris Wren does not "understand what the fuck [he] got himself into" by voicing complaints over the deluge of phone calls and threatening to confront County employee Deb Berger in the parking lot).

For a fleeting moment, the undersigned was able to have several relatively cordial exchanges with Plaintiff on the topic of a potential resolution of this case—or at least exchanges that were not replete with threats and profanity. After several requests, Plaintiff submitted a settlement demand on February 3, 2025. Following a closed session meeting with the Newaygo County Board of Commissioners, Defendants responded to that settlement demand on March 17,

2025. In response to Defendants' rejection of Plaintiff's settlement demand and counter-offer of

settlement, Plaintiff sent the following:

> Eat a dick faggot. I never used the park again, that was a trick. See you at trial. File your motions to compel. I'm not giving you a deposition.[2]

> Let the legal war begin. I knew you were a shady piece of shit from the first second. I knew you were playing me, that's (sic) why I gave you some generic bullshit answers.[3]

> We will see you at trial. Faggot. **Exhibit D**, 3/17/25 Email from Plaintiff.

When the undersigned attempted to point out that Plaintiff's vulgar email was a clear

violation of this Court's Opinion and Order dated December 22, 2022 (ECF No. 61), and that

Defendants would be seeking dismissal on that basis, he responded:

> Good luck with that you fucking cunt. They tried that for 2 years after that order and got laughed at.

> Did I hurt your feelings you big pussy? Does your wife hold you when you cry?

> Maybe you shouldn't be a lawyer if you can't handle the truth. **Exhibit D**.

Plaintiff also sent an email threatening a new motion for a temporary restraining order, and

signing off with: "See you in court motherfuckers, where I'm going to fukcing (sic) destroy your

hopes and dreams." **Exhibit E**, 3/17/25 Email from Plaintiff RE TRO and Rule 11. Plaintiff opted

to end his flurry of unhinged, vulgar emails with a vulgar image of the undersigned and a clear

message that he thinks he can act with impunity simply because he is representing himself. **Exhibit**

---

[2] Plaintiff's refusal to sit for deposition is the subject of a separate motion.

[3] This is a clear admission from Plaintiff that he provided only evasive or incomplete answers to Defendants' discovery requests, which will be addressed in a separate motion.

**F**, 3/17/25 Email from Plaintiff with Vulgar Image (claiming that "[n]o case in history has been dismissed for being rude", apparently relying on his wife's six years serving as a law clerk).

It is clear from Plaintiff's YouTube videos and his general demeanor that he fancies himself a provocateur. However, as this Court attempted to point out to him in December of 2022, what might make for scintillating YouTube rants to attract viewers is unacceptable in the context of legal proceedings pending in this Court. Plaintiff continues to thumb his nose at this Court, consistently devolving into vulgar and violent rants when he does not get what he wants. This Court previously warned Plaintiff that further inappropriate behavior may serve as a basis to dismiss his claim, and the time has come for the Court to exercise its broad authority and do exactly that. Prior to the filing of this Motion, Plaintiff denied concurrence as detailed in the attached exhibits.

**Law and Argument**

Despite Plaintiff's glib claim that "[n]o case in history has been dismissed for being rude" (**Exhibit F**), his behavior goes beyond merely being rude and as this Court pointed out in its December 22, 2022 Opinion and Order, that oversimplification of the current situation is incorrect. As discussed in greater detail below, this Court has two interrelated bases to dismiss Plaintiff's Amended Complaint with prejudice given his blatant disregard of this Court's prior Order and outright disdain for the judicial process.

**I.    Terminating sanctions are warranted consistent with this Court's implied powers given Plaintiff's repeated refusal to comply with the Court's Order.**

"It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which ... are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks and citation omitted). "For this reason, Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence and

submission to their lawful mandates." *Id*. (internal quotation marks and citation omitted). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. (internal quotation marks and citation omitted). Additionally, it is firmly established that "the power to punish for contempts is inherent in all courts [and t]his power reaches both conduct before the court and that beyond the court's confines" given that the "underlying concern that gave rise to the contempt power was not ... merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial. *Id*. at 44 (citation and quotation omitted).

Pursuant to its inherent power, a court may impose sanctions against a party for "act[ing] in bad faith, vexatiously, wantonly, or for oppressive reasons",[4] and for "misconduct during the course of litigation." *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 37-38 (2d Cir.1995). Of course, this authority to sanction abusive conduct must be exercised with restraint and discretion and must be supported by a specific finding of bad faith, or conduct tantamount to bad faith. *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir.2001). While recklessness, without more, does not suffice, "[s]anctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id*.

As this Court previously noted, the sanctions available include terminating sanctions—i.e. dismissal. Courts generally consider five factors in evaluating the propriety of terminating sanctions: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy

---

[4] *Chambers*, 501 U.S. at 45-46.

favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir.2011).[5] Courts have dismissed cases when "a party has engaged deliberately...in conduct utterly inconsistent with the orderly administration of justice." *Leon v. IDX Sys. Corp.*, 464 F.3d951, 959 (9th Cir. 2006) (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995)).

Importantly, these five factors are "not a series of conditions precedent before the judge can do anything," but "a way for a district judge to think about what to do." *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). All five factors need not weigh unwaveringly in favor of dismissal, but "[t]he most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988) (citations omitted). "Dismissal under a court's inherent powers is justified in extreme circumstances, in response to abusive litigation practices, and to insure the orderly administration of justice and the integrity of the court's orders." *Id*. at 380.

As discussed below, four of the five factors clearly weigh in favor of dismissal in this case.

(1) *The public's interest in expeditious resolution of litigation weighs in favor of dismissal*;

(2) *The court's need to manage its dockets weighs in favor of dismissal;*

---

[5] Courts in the Sixth Circuit weigh similar factors when determining the propriety of default judgment. See e.g. *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 Fed. Appx. 928, 934 (6th Cir. 2020) (calling for courts to consider "1) whether the disobedient party acted in willful bad faith; 2) whether the opposing party suffered prejudice; 3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and 4) whether less drastic sanctions were imposed or considered").

Where a party violates a court order, the first two factors support terminating sanctions. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Plaintiff's behavior clearly violates the Court's December 22, 2022 Order given that he has repeatedly harassed, berated, demeaned, threatened and used abusive language toward defense counsel—a far cry from the civility the Court's Order called for. (ECF No. 61, PageID.863). Plaintiff also directly contacted named Defendant Christopher Wren (**Exhibit C**) in violation of the Court's Order. Given Plaintiff's clear violation of this Court's Order, the first two factors weigh heavily in favor of terminating sanctions.

### (3) The risk of prejudice to the Defendants weighs in favor of dismissal;

"To prove prejudice, a defendant must establish that plaintiff's actions impaired defendant's ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). Other courts have recognized that where, as here, a plaintiff repeatedly and intentionally fails to comply with court orders, that constitutes a significant interference "with the rightful decision of the case" because those obstructive tactics unnecessarily delay litigation, burden the court, and prejudice defendants by making it very difficult to prepare for trial due to a plaintiff's lack of participation in this lawsuit. See e.g. *Gandolfo v. Avis Budget Grp., Inc.*, No. CV 22-00246 LEK-KJM, 2024 WL 3835175 (D. Haw. July 30, 2024), report and recommendation adopted, No. CV 22-00246 LEK-KJM, 2024 WL 3833597 (D. Haw. Aug. 14, 2024). This third factor weighs heavily in favor of terminating sanctions.

### (4) The public policy favoring disposition of cases on their merits weighs in favor of dismissal;

Admittedly, this factor rarely, if ever, supports the sanction of dismissal. But as noted above, these factors are not conditions precedent before dismissal can be imposed, and this factor

standing alone, "is not sufficient to outweigh the other four factors." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 960–61 (9th Cir. 2006). All factors need not weigh unwaveringly in favor of dismissal and "the key factors are prejudice and availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir.1990).

> (5) *The availability of less drastic sanctions weighs in favor of dismissal since this Plaintiff has proven no lesser sanction will alter his behavior*.

This factor generally involves consideration of three subfactors: "whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." *Valley Eng'rs*, 158 F.3d at 1057 (citation omitted). Here, all three subfactors are satisfied because the Court, through its prior warning, attempted a sanction other than dismissal. See *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1229, 1237 (9th Cir. 2006) (recognizing that a warning can satisfy the consideration of alternatives requirement) (citations omitted). That prior warning explicitly cautioned Plaintiff that failure to comply with the Order could result in dismissal. Yet despite this Court's prior warning, Plaintiff willfully and in bad faith continued to disobey this Court's order. Additional warnings would be meaningless. Finally, given Plaintiff's continued failure to cooperate or comply with court orders, it is unlikely that lesser sanctions, such as monetary sanctions, would deter similar conduct by Plaintiff in the future. See *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007).

In summary, four of the five factors courts generally consider before imposing terminating weigh heavily in favor of terminating sanctions here. Despite being previously warned that his behavior could result in dismissal, Plaintiff willfully and maliciously violated this Court's prior Order by directly contacting a named Defendant in a transparent attempt to intimidate him and by continuing to harass, berate, demean, threaten and use abusive language in his communications

with defense counsel, with escalating vitriol. He has failed to comport himself with even a modicum of civility and has instead resorted to vulgar name calling directed at both defense counsel and representatives of this Court. As acknowledged by other courts, his repeated and intentional failure to comply with court orders constitutes a significant interference with the rightful decision of this case. Defendants have been prejudiced and no lesser sanction than dismissal will teach this Plaintiff a much-needed lesson. It is insufficient for Plaintiff to seek refuge in his status as a *pro se* litigant because "[u]nfamiliarity with the legal process is no excuse for threatening physical force, disparaging counsel, [and] using profanity." *Cameron v. Lambert*, 2008 WL 4823596, at *4 (S.D.N.Y. Nov. 7, 2008) (concluding that no "lesser sanction [than dismissal] would suffice to address the misconduct" of the *pro se* plaintiff).

While scenarios like this are ostensibly, and thankfully, a rarity, there are numerous examples of courts exercising their broad authority to impose terminating sanctions where a litigant refuses to adhere to even the bare minimum standards of decency and professionalism. For example, in *Petito v. Brewster*, 562 F.3d 761 (5th Cir. 2009), a *pro se* plaintiff sent threatening emails to opposing counsel on two occasions and used vulgar and abusive language to refer to judicial officers. The district court dismissed his case with prejudice and on appeal the Fifth Circuit affirmed, finding that the district court had not abused its discretion and the plaintiff "cannot expect the protection of the very courts he abuses; nor should he expect his action to proceed after debasing judicial proceedings with vulgar insults, or, more worryingly, issuing threats to opposing counsel…" *Id*. at 763. The court went on to explain that while "[t]he right to bring claims before the courts is a sacred right in our republic…this right is not without limits" and the court "labor[s] under the duty, to protect judicial officers as well as those appearing in court on their own behalf and on behalf of others." *Id*. The court held that "[s]uch protection was required [] due to

[plaintiff's] wrongful conduct and, accordingly, his claims against the defendants, whether meritorious or not, ha[d] been forfeited." *Id.*

Similarly, in *Nguyen v. Biter*, No. 1:11-cv-00809, 2015 WL 366932 (E.D. Cal. Jan. 27, 2015), the *pro se* plaintiff engaged in an escalating pattern of abusive conduct toward opposing counsel that included opining that the defendant's case was hopeless and engaging in personal attacks. As in this case, defense counsel expressed concerns that, if unchecked, there was no telling how far the plaintiff would go with his harassment. The court found that plaintiff's letters using "inappropriate tone and content lacking any legitimacy" were intentional, that he knew what he was doing, and that "[w]hile [he] may not understand the law as an attorney does, he [was] nevertheless in full control of the behavior at issue [], and the escalation in his letters evidence[d] communication choices for which he [bore] full responsibility." *Id.* at *6. The court found that the plaintiff's fourth missive was reckless and undertaken to harass defense counsel, noting that the plaintiff was "mistaken that proceeding *pro se* shields him from the consequences of his actions or excuses misbehavior. It does not. Parties and counsel have a duty to behave civilly and respectfully toward one another, and conduct to the contrary is sanctionable where it undermines the integrity of judicial proceedings." *Id.* at *7. The court rejected the plaintiff's attempt to explain away his remarks—several of which had sexual overtones—based on his assertion that they were not explicit enough. *Id.* The court ultimately held that because the plaintiff's missive "evidence[d] inappropriate communication lacking in legitimacy and laden with sexual overtone" it constituted bad faith or was tantamount to bad faith, supporting the imposition of sanctions. *Id.* Although the court in *Nguyen* ultimately stopped short of imposing the sanction of dismissal, it did so largely because the plaintiff's conduct had not previously been the subject of sanctions scrutiny (*Id.* at *8), but the same is not true here.

In *Fathi v. Saddleback Valley Unified Sch. Dist.*, No. 8:20-cv-544-SB-DFM, 2020 WL 7315462 (C.D. Cal. Oct. 28, 2020), the *pro se* plaintiff made repeated statements to defense counsel that could be construed as threats of physical and sexual violence and that referenced counsel's family. Plaintiff's missives included the following:

- "I will give you nightmares until this case closes"

- "Give me my fucking settlement money already…I urge [you] to settle this matter asap."

- "What the fuck do you have to denfend (sic) anyways? Take you (sic) freaking ego out of this non sense (sic)."

- "I will destroy you and your reputation by publication." *Id.* at *6.

The court in *Fathi* ultimately stopped short of dismissal and instead issued an order for plaintiff "to immediately cease making threatening and harassing comments to and about Defendant's counsel", noting that "[f]ailure to comply with the Court's order may result in terminating sanctions with prejudice." *Id.* at 7. This Court has already attempted that route, and Plaintiff has ignored the Court's warning.

More recently, in *Jallow v. Geffner*, No. 23-CV-3969 (LGS) (KHP), 2025 WL 624077 (S.D. N.Y. Jan. 30, 2025), the court dismissed a *pro se* plaintiff's case after warning him to refrain from using profanity, slurs or insults in his interactions with defense counsel. Like the Plaintiff here, the plaintiff in *Jallow* refused to sit for a deposition, and sent the following vulgar and profane messages to defense counsel, which are eerily similar to Plaintiff's messages in this case:

- "I don't fuck with no dumbass bitchass Judge, you got a [inaudible] what you says, go suck a dick alright"

- "Dear Retards, Listen here. I don't care that you are such a faggot you want to pretend that people lied to you and that's the problem."

- "See get this through your homo ass heads...fuck you and your gay ass, fucking faggot ass liars."

- "I don't care what a motion to compel is. I'll come there and slap the shit out of you."

- "I don't care. Shut the fuck up."; "You'll get disbarred."; "I don't care. I'm not compelled to do shit. I don't care. I'm not doing it. What are you not getting dummy?"; "I'm not taking a deposition because you already know you stonewalled it."

The court noted that it had, on multiple occasions, informed plaintiff his conduct was inappropriate and ordered him to stop such conduct at the risk of dismissal of his case, but plaintiff failed to comply. The court dismissed the case, citing plaintiff's "bad faith conduct, contempt of judicial rules and processes, and threats to defense counsel and the Court." *Id*. at *2-3.

The vulgar language used by Plaintiff in this case is indistinguishable from that used by other plaintiffs whose claims were dismissed as a sanction for their conduct. Despite being warned by this Court that continued recalcitrance would result in dismissal, Plaintiff persisted. Specifically, this Plaintiff:

- Referred to the ADR Clerk as "retarded and incompetent" and a "dumb cunt" (**Exhibit A**);

- Used profanity in an email exchange with defense counsel regarding selection of a mediator (*Id*.);

- Referred to the County's position as indefensible and merely an exercise in defending Defendant Christopher Wren's "ego" (*Id*.);

- Threatening to make YouTube videos about defense counsel and the case every day until trial if Defendants did not settle within 7 days (*Id*.);

- Accusing defense counsel of stealing taxpayer money and lying (*Id*.);

- Threatening defense counsel with complaints to the Attorney Grievance Commission (*Id*.);

- Referring to the magistrate and district court judge as "moron judges" (**Exhibit B**);

- Directly calling Defendant Chris Wren and calling and threatening Deb Berger (**Exhibit C**);

- Calling defense counsel a "faggot" multiple times and telling him to "[e]at a dick" (**Exhibit D**);

- Refusing to sit for a deposition (*Id.*);

- Calling defense counsel a "shady piece of shit" (*Id.*);

- Acknowledging that he gave incomplete, evasive, or outright inaccurate responses to discovery requests (*Id.*);

- Calling defense counsel a "fucking cunt" and a "big pussy" (*Id.*); and

- Calling Defendants "motherfuckers" and threatening to "fukcing (sic) destroy [their] hopes and dream" (**Exhibit E**).

Again, this is how Plaintiff comports himself ***after*** being warned by this Court! Simply put, this Plaintiff does not respect this Court or the judicial process. Dismissal is warranted because no lesser sanction will do. For all of the reasons set forth above, this Court should dismiss Plaintiff's Amended Complaint with prejudice and require Plaintiff to pay Defendants' costs and attorney's fees wrongfully incurred by having to file this motion.

## II.     Dismissal is warranted pursuant to the Court's authority to dismiss a suit filed *in forma pauperis* at any time where it determines an action is malicious.

This Plaintiff was permitted to proceed *in forma pauperis* on August 17, 2022. (ECF No. 6). The *in forma pauperis* statute, 28 U.S.C. § 1915, is intended "to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). Hence, the statute permits a litigant to commence a lawsuit without paying a filing fee by filing an affidavit stating that he or she is unable to pay the costs of the suit. 28 U.S.C. § 1915(a). Because such a litigant, "whose filing fees and court costs are assumed by the public...lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits," *Neitzke*, 490 U.S. at 324, the federal courts are authorized to dismiss a suit filed *in forma pauperis* "at any time" if the Court determines that the action is "frivolous **or malicious**." 28 U.S.C. § 1915(e)(2)(B)(i)

(emphasis added). See *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998) (§ 1915(e)(2) is a "tool[ ] ... available in extreme cases to protect public officials from undue harassment").[6]

In *Nelson v. Eaves*, 140 F. Supp. 2d 319, 322 (S.D.N.Y.2001), the court dismissed the claims of a *pro se* plaintiff proceeding *in forma pauperis*, noting that "even assuming [he] ha[d] one or more meritorious claims, [he was] prosecuting th[e] case maliciously." In so concluding, the court cited letters sent to opposing counsel that were "abusive, demeaning, and threatening" and revealed "malice and an intent to harass"—noting that the plaintiff was "simply entertaining himself—and abusing the judicial system in the process." *Id*. The Court noted that the plaintiff's contemptuous behavior was not an isolated incident—it was evidenced by ten letters that spanned a period of months. The court ultimately dismissed the complaint with prejudice, citing plaintiff's "repeated inappropriate actions" and "disdain for the judicial system." *Id*. at 323.

The same outcome is warranted here. This Plaintiff, whose vulgar behavior spans many emails and phone calls over a period of years, clearly does not respect this Court or the legal process. Even assuming he has one or more meritorious claims, he is prosecuting those claims maliciously by continuing to engage with defense counsel in a manner that is abusive, demeaning, and threatening, despite this Court ordering him to refrain from doing so. Just as in *Nelson*, this Plaintiff is "simply entertaining himself—and abusing the judicial system in the process." 140 F. Supp. 2d at 322. If Plaintiff's most recent antics do not cross the line and warrant dismissal, it is

---

[6] Despite some less than clear language in the statute, this statute does not apply merely to suits brought by prisoners, as this Court has previously noted. See e.g. *Simmons v. Beardslee*, No. 1:21-CV-896, 2021 WL 5754994, at *1 (W.D. Mich. Dec. 3, 2021) (holding that § 1915(e)(2) applies to proceedings in forma pauperis in general, not just to suits filed by prisoners, and "[t]his section clearly permits courts to dismiss cases brought by plaintiffs proceeding in forma pauper, and not just to prisoners' complaints").

difficult to imagine what he could do or say that would. Enough is enough. Plaintiff's willful violation of this Court's prior Order warrants dismissal and payment of Defendants' costs and reasonable attorney's fees.

### Conclusion

This Court's December 22, 2022 is clear and unequivocal. After many documented examples of Plaintiff refusing to act with civility, this Court ordered Plaintiff to refrain from harassing, berating, demeaning, threatening or using abusive language in his communications with defense counsel. (ECF No. 61, PageID.863). The Court also ordered Plaintiff not to contact named Defendants directly. *Id*. He willfully ignored both of those admonitions, contacting Defendant Christopher Wren directly and sending several harassing, demeaning and threatening emails to the undersigned replete with abusive, vulgar, and homophobic language. This Plaintiff was warned that such actions may serve as the basis for dismissal of his claims, but he ignored that warning.

WHEREFORE, Defendants respectfully request the Court grant their Motion for Sanctions and enter an Order dismissing Plaintiff's Amended Complaint with prejudice and requiring Plaintiff to pay Defendants' reasonable expenses incurred in bringing the present motion, including attorney fees.

Respectfully submitted,

Dated: March 21, 2025

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.

Matthew W. Cross (P77526)
Attorneys for Defendants
125 Park Street, Suite 300
Traverse City, MI 49684
(231) 922-1888
mcross@cmda-law.com

{02255410-1 }

21

## <u>CERTIFICATE OF COMPLIANCE REGARDING WORD COUNT</u>

Defendants, in compliance with LCivR 7.2(b)(i), used 6,155 words in their Brief in

Support of their Motion for Sanctions seeking Dismissal Under Fed. R. Civ. P. 12(b)(6). Microsoft

Word Office is the word processing software used to generate the word count in the attached brief.

Dated: March 21, 2025

CUMMINGS, McCLOREY, DAVIS
& ACHO, P.L.C.

Matthew W. Cross (P77526)
Attorneys for Defendants
125 Park Street, Suite 300
Traverse City, MI 49684
(231) 922-1888
mcross@cmda-law.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANE MYERS,
  Plaintiff,

v

CHRISTOPHER WREN, NICHOLAS
SMITH, SGT. CHRISTOPHER FRERIKS,
NEWAYGO COUNTY,
  Defendants.

HON. PAUL L. MALONEY
U.S. WESTERN DISTRICT JUDGE

PHILLIP J. GREEN
U.S. MAGISTRATE JUDGE

CASE NO. 1:22-cv-00748-PLM-PJG

| | |
|---|---|
| Lane Myers<br>Plaintiff, *In Pro Se*<br>4583 N Sugarbush Pl<br>Tucson AZ 85749<br>(313) 587-1880<br>Meyerlansky879@gmail.com | Haider A. Kazim (P66146)<br>Matthew W. Cross (P77526)<br>Neal A. Wilds (P85924)<br>CUMMINGS, McCLOREY, DAVIS &<br>ACHO, P.L.C.<br>Attorneys for Defendants<br>125 Park Street, Suite 300<br>Traverse City, MI 49684<br>(231) 922-1888<br>hkazim@cmda-law.com<br>mcross@cmda-law.com<br>nwilds@cmda-law.com |

**PROOF OF SERVICE**

STATE OF MICHIGAN   )
          ) ss.
COUNTY OF GRAND TRAVERSE )

 Kathy Morey, being duly sworn, deposes and says that she served the DEFENDANTS' MOTION FOR SANCTIONS; DEFENDANTS' BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS; CERTIFICATE OF COMPLIANCE RE WORD COUNT; DEFENDANTS' MOTION FOR LEAVE TO FILE EXHIBIT IN THE TRADITIONAL MANNER; CERTIFICATE OF NON-CONCURRANCE; and PROOF OF SERVICE, on March 21, 2025, to the following parties, via the following methods:

**VIA ECF FILING:**
Clerk of the Court

{02261033-1 }

1

**<u>VIA EMAIL AND SHAREFILE</u>**
Lane Myers - Meyerlansky879@gmail.com
(ShareFile - Exhibit C Lane Myers Voicemails only.)

**<u>VIA FIRST CLASS MAIL</u>**
Clerk of the Court
399 Federal Bldg.
110 Michigan St NW
Grand Rapids MI 49503
(Exhibit C – to Defs' Motion for Sanctions
and Motion for Leave to file in traditional
Manner Only.)

Hon. Phillip J. Green
Magistrate Judge
482 Federal Bldg.
110 Michigan St NW
Grand Rapids MI 49503
(Judge's Courtesy Copy and
Flash Drive of Exhibit C – to Defs' Motion for Sanctions.)

Kathy Morey

{02261033-1 }

2